## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT COURT OF MASSACHUSETTS
## BOSTON DIVISION

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC,<br><br>Plaintiff,<br><br>v.<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE (HARVARD CORPORATION),<br><br>Defendant. | Civil Action No. 1:14-cv-14176-ADB |

## MEMORANDUM IN SUPPORT OF PROPOSED DEFENDANT-INTERVENORS' MOTION TO INTERVENE

Movants and Proposed Intervenors, nine minority students intending to apply for Harvard College ("applicant-Movants") and five minority Harvard College students ("current student-Movants") (collectively, "Movants"), satisfy each of the requirements for intervention as of right under Fed. R. Civ. P. 24(a). This motion is timely, having been filed before the Court has made any significant rulings or adopted a scheduling order. The applicant-Movants have significant interests in admission to Harvard, and both the applicant-Movants and the current student-Movants have present or prospective interests in living and studying in a racially diverse environment while there. These interests would unquestionably be impaired if Plaintiff prevails or Harvard settles. Movants also have legitimate concerns that Harvard's myriad interests may prevent it from adequately representing their interests. To take just one example, Harvard has an interest in defending aspects of its admissions program, such as the advantage for "legacy" applicants, Early Action, and its reliance on the SAT, that disadvantage underrepresented minorities. Movants not only have no such interest, they also will be the only party to contend

that one of the many justifications for considering race and ethnicity in college admissions is to remedy the adverse impact these admissions practices have on the diversity profile of the admitted class.

If the Court does not find that all of the Rule 24(a) elements have been met, it should grant Movants' alternative request for permissive intervention under Fed. R. Civ. P. 24(b). Movants obviously share many common defenses with Harvard. Intervention at this early stage of the litigation will cause no prejudice. And it will bring to the case the perspective of students whose daily lives and educational experiences benefit from the practices that Plaintiff seeks to invalidate.

## I.      BACKGROUND

The Complaint filed by Plaintiff Students for Fair Admissions ("SFFA") alleges that it has an Asian American member who was highly qualified for admission to Harvard College but was "denied the opportunity to compete for admission to Harvard on equal footing with other applicants" and subsequently denied admission. Compl. ¶¶ 15-22. SFFA also alleges that it has Asian American Future Applicant members who "may be denied admission to Harvard because of these discriminatory policies" and Asian American Parent members with children who likewise may be denied admission. Compl. ¶¶ 25-28.

SFFA's claims fall broadly under two categories. First, SFFA asserts that Harvard has engaged in a campaign of racial discrimination by intentionally limiting the number of Asian Americans admitted each year. Joint Statement, Docket No. 26, at 1. Second, SFFA asserts that Harvard considers the race of all applicants to an impermissible degree in violation of the Equal Protection Clause and of Title VI of the Civil Rights Act of 1964. *Id.* Plaintiff seeks a permanent injunction to prevent Harvard not only from using race as a factor in future

undergraduate admissions decisions, but also from allowing admissions officers to be aware of the race or ethnicity of any applicant. Compl. 119. In addition, it seeks a declaratory judgment that both Harvard's admissions policies and any use of race or ethnicity at all in an educational setting violate Title VI. *Id.*

Harvard denies that it attempts to achieve "racial balancing" in its admissions policy. Answer ¶ 6. Instead, it contends that "[d]iversity is fundamental" to "effective pedagogy" and that it achieves this diversity by looking at each applicant in a "holistic manner," with race or ethnicity as just one of many salient characteristics that inform an admission decision. Joint Statement, Docket No. 26, at 8. Harvard asserts that its admissions policy conforms to the requirements for public universities, as established by Supreme Court precedent, and that it is entitled to even greater deference as a private university. *Id.*

## II.    SUMMARY OF MOVANTS' POSITION

Movants wish to intervene as Defendant-Intervenors in order to ensure that Harvard retains the right to consider race in its admissions decisions to the full extent allowed by law.

Harvard College is an undergraduate school with one of the best reputations in the country and a uniquely generous financial aid program. *See* Answer ¶ 326. Accordingly, it is particularly critical to Movants that Harvard remain free to address the underrepresentation of Native American, African-American, and Latino students in its student body so as to secure for those students access to the opportunities associated with attending Harvard. If Harvard is not allowed to consider race in its admissions policy, it will not only reduce the chances that applicant-Movants have at being admitted, but will also decrease the populations of underrepresented minority groups on campus and thereby reduce the exposure of *all* Harvard

students—including the current student-Movants—to peers with different racial or ethnic experiences from their own.

Movants are in the best position to advance these interests.  They are the persons whose rights, educational goals, career aspirations, and life experiences would be adversely affected if Harvard's efforts to admit a racially diverse student body are invalidated.  In contrast, if admitted to Harvard under its current policy, they would obtain access to Harvard's financial aid and would be able to study among a racially diverse student body.  These interests are an important part of the "diversity" goal the Supreme Court recognized when it upheld the use of a race-conscious admissions policy at the University of Michigan in *Grutter v. Bollinger*, 539 U.S. 306 (2003).  *See, e.g.*, *id.* at 331 ("We have repeatedly acknowledged the overriding importance of preparing students for work and citizenship, describing education as pivotal to 'sustaining our political and cultural heritage' with a fundamental role in maintaining the fabric of society." (quoting *Plyler v. Doe*, 457 U.S. 202, 221 (1982)).  Indeed, these are the precise interests that the Sixth Circuit held warranted intervention by underrepresented minority students in the very same case.  *See Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999).

Moreover, Movants' interests in defending Harvard's consideration of race are even greater than they would be in a public university setting.  First, the law is more unsettled with regard to private universities than it is with regard to the public universities at issue in *Grutter* and its progeny.  Second, Harvard has a unique reputation and a unique financial aid program that is particularly well-suited to advancing the goal of racial and ethnic diversity that Movants seek to defend.

Although Harvard, too, seeks to defend the goal of racial and ethnic diversity, as well as its current admissions practices, its interests and those of Movants are not identical.  There are at least two reasons why Harvard may not represent Movants' interests adequately.  First, Harvard

must balance diversity against all its other admissions goals.  Accordingly, it is likely to defend those aspects of its admissions program that have an adverse impact on the diversity profile of the admitted class.  Those aspects may include the preferences given to "legacy" applicants, the Early Action program, and the SAT.  Indeed, Harvard denies the adverse effect of its legacy policy in its Answer.  *See* Answer ¶ 344.  In contrast, Movants need not defend the problematic aspects of Harvard's admissions policies, nor does it agree with Plaintiff that an increased reliance upon the SAT is a solution.  Movants are in the best position, therefore, to highlight for the Court both the problems that legacy preferences, Early Action, and the SAT create for achieving diversity and the need to remedy these problems by taking race and ethnicity into account.

Second, Harvard may be reluctant to discuss its own history, ongoing problems with race relations, or the particulars of its attempts to achieve racial and ethnic diversity because of the political controversy surrounding these issues.  Harvard's position on all of these issues may be affected by concern over its public perception or by the need to serve myriad constituencies such as alumni, faculty, and the academic community, who may all have differing opinions about the propriety of the goal of achieving racial and ethnic diversity.  Movants, on the other hand, are a constituency with a definitive, concrete interest in defending zealously the ability to consider race in admissions and to ensure a critical mass of Native American, African American, and Latino students on campus.  To the extent Harvard would seek to settle or would otherwise avoid politically sensitive topics, it will be necessary to allow Movants to intervene and bring to light every consideration necessary to ensure their interests are fully represented in this litigation.[1]

---

[1] For instance, Harvard's charter indicates the school was established to "conduce to the education of the English and Indian youth of this country."  The Charter of the President and Fellows of Harvard College, Harvard University Archives, http://library.harvard.edu/university-archives/using-the-collections/online-resources/charter-of-1650.  If permitted to intervene, Movants will seek to bring to light the history associated with that obligation, where relevant.  That is not necessarily history that Harvard will highlight.

Movants therefore urge the Court to grant their intervention so they may defend their personal stake in this case.

## III.    DESCRIPTION OF MOVANTS

Movants have each submitted a signed declaration, filed separately as Exhibit 1.   To summarize:

1.    Movant and Proposed Intervenor M.B. is an African American and Caucasian high school student and intends to apply for admission to Harvard College.  *See* Ex. 1.1.

2.    Movant and Proposed Intervenor K.C. is a Native American high school student and intends to apply for admission to Harvard College.  *See* Ex. 1.2.

3.    Movant and Proposed Intervenor Y.D. is a Native American high school student and intends to apply for admission to Harvard College.  *See* Ex. 1.3.

4.    Movant and Proposed Intervenor G.E. is a Native American high school student and intends to apply for admission to Harvard College.  *See* Ex. 1.4.

5.    Movant and Proposed Intervenor A.G. is a Hispanic high school student and intends to apply for admission to Harvard College.  *See* Ex. 1.5.

6.    Movant and Proposed Intervenor I.G. is a Hispanic high school student and intends to apply for admission to Harvard College.  *See* Ex. 1.6.

7.      Movant and Proposed Intervenor R.H. is an African American high school student and intends to apply for admission to Harvard College.  *See* Ex. 1.7.

8.      Movant and Proposed Intervenor J.L. is a Native American high school student and intends to apply for admission to Harvard College.  *See* Ex. 1.8.

9.      Movant and Proposed Intervenor R.S. is a Native American high school student and intends to apply for admission to Harvard College.  *See* Ex. 1.9.

10.     Movant and Proposed Intervenor Sarah Cole is an African American student at Harvard College and feels her educational experience would be impaired by a decline in enrollment at Harvard College of Native American, African American, and Latino applicants.  *See* Ex. 1.10.

11.     Movant and Proposed Intervenor Fadhal Moore is an African American student at Harvard College and feels his educational experience would be impaired by a decline in enrollment at Harvard College of Native American, African American, and Latino applicants.  *See* Ex. 1.11.

12.     Movant and Proposed Intervenor Arjini Kumari Nawal is an Asian American student at Harvard College and feels her educational experience would be impaired by a decline in enrollment at Harvard College of Native American, African American, and Latino applicants.  *See* Ex. 1.12.

13.     Movant and Proposed Intervenor Itzel Libertad Vasquez-Rodriguez is a Native American and Latina student at Harvard College and feels her educational experience would be impaired by a decline in a enrollment at Harvard College of Native American, African American, and Latino applicants. *See* Ex. 1.13.

14.     Movant and Proposed Intervenor Keyanna Wigglesworth is an African American student at Harvard College and feels her educational experience would be impaired by a decline in enrollment at Harvard College of Native American, African American, and Latino applicants. *See* Ex. 1.14.

## IV.    LEGAL ARGUMENT

### A.    MOVANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT

Federal Rule of Civil Procedure 24(a) provides that upon timely application anyone shall be permitted to intervene in an action who:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

> To intervene as of right under Fed. R. Civ. P. 24, the movant must establish:
>
> (i) the timeliness of its motion to intervene; (ii) the existence of an interest relating to the property or transaction that forms the basis of the pending action; (iii) a realistic threat that the disposition of the action will impede its ability to protect that interest; and (iv) the lack of adequate representation of its position by any existing party.

*P.R. Tel. Co. v. Sistema de Retiro de los Empleados del Gobierno y La Judicatura*, 637 F.3d 10, 14 (1st Cir. 2011). When applying Rule 24(a), the First Circuit has explained that the "inherent imprecision of Rule 24(a)(2)'s individual elements dictates that the rule should be applied with

an eye toward the commonsense view of the overall litigation." *Ungar v. Arafat*, 634 F.3d 46, 51 (1st Cir. 2011) (citations and internal quotation marks omitted).

Movants' Motion to Intervene satisfies each of Rule 24(a)'s four criteria for intervention as of right.

### 1.    Movants' Motion To Intervene Is Timely

This case is in its infancy. Neither legal nor factual issues have been litigated. The initial scheduling conference has not yet taken place. *See* Docket No. 25. The parties have not engaged in any formal discovery and the Joint Statement including initial disclosures was filed only six days ago, on April 23, 2015. *See* Docket No. 26.

The First Circuit has emphasized that "the concept of timeliness of a petition is not measured, like a statute of limitations, in terms of specific units of time, but rather derives meaning from assessment of prejudice in the context of the particular litigation." *Puerto Rico Tel. Co.*, 637 F.3d at 15 (citing *Fiandaca v. Cunningham*, 827 F.2d 825, 834 (1st Cir. 1987)). Moreover, "the purpose of the basic requirement that the application to intervene be timely is to prevent last minute disruption of painstaking work by the parties and the court." *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1232 (1st Cir. 1992) (quoting *Culbreath v. Dukakis*, 630 F.2d 15, 22 (1st Cir. 1980)). The goal is to prevent disruption "that could have been avoided by the exercise of reasonable diligence." *R&G Mrtg. Corp. v. Fed. Home Loan Mrtg. Corp.*, 584 F.3d 1, 9 (1st Cir. 2009).

Intervention will cause no disruption in this case. Movants will accept any discovery, motion, and trial timetable that comes out of the April 30 conference. Moreover, Movants are asking to intervene as defendants as early as they could have known it would be necessary to defend their interests—just six days after Defendant Harvard made known its legal position in the Joint Statement filed April 23, 2015. Movants therefore satisfy the timeliness requirement. *See Geiger v. Foley Hoag LLP Ret. Plan*, 521 F.3d 60, 65 (1st Cir. 2008) (motion to intervene

9

brought nine months after suit's filing was timely because case had not progressed beyond the initial stages).

**2.    Movants Seek to Vindicate a Protectable Interest**

Movants also have a protectable interest in this action that would be impaired by an adverse decision.  To justify intervention as of right, a prospective intervenor must demonstrate that it has a "significantly protectable interest" in the litigation, *Donaldson v. United States*, 400 U.S. 517, 531 (1971), that is "direct, not contingent."  *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 638 (1st Cir. 1989).  However, courts have read the "property or transaction" language of Rule 24(a) broadly to recognize a variety of legal and economic interests.  *See Daggett v. Committee on Gov't Ethics and Election Practices*, 172 F.3d 104, 110 (1st Cir. 1999).  Although "there is no precise and authoritative definition of the interest required to sustain a right to intervene," courts have required that the prospective intervenor's claim at least "bear a 'sufficiently close relationship' to the dispute between the original litigants."  *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 42 (1st Cir. 1992) (citing *Dingwell*, 884 F.2d at 638).

Courts have routinely granted intervention as of right to parties seeking to protect their interests in race-conscious programs from which they benefit.  *See, e.g.*, *Grutter v. Bollinger*, 188 F.3d at 401; *Edwards v. City of Houston*, 78 F.3d 983, 1006 (5th Cir. 1996); *Black Fire Fighters Ass'n. v. City of Dallas*, 19 F.3d 992, 994 (5th Cir. 1994); *Johnson v. San Francisco Unified Sch. Dist.*, 500 F.2d 349, 353 (9th Cir. 1974) ("[F]or purposes of Rule 24(a)(2), all students and parents, whatever their race, have an interest in a sound educational system and in the operation of that system in accordance with the law.  That interest is surely no less significant where . . . it is entangled with the constitutional claims of a racially defined class.") (internal footnote omitted).

10

Movants' interests are similar to those the Sixth Circuit relied upon in *Grutter v. Bollinger*. There, the court reversed the district court and held that African American and Latino students should be allowed to intervene by right in order to defend the University of Michigan's race-conscious admissions policy. 188 F.3d at 401 ("proposed intervenors have shown that they have a substantial legal interest in the subject matter of this matter, that this interest will be impaired by an adverse determination, and that the existing defendant, the University, may not adequately represent their interest.").

Movants here have almost the identical interests as the intervenors in *Grutter*. *See id.* at 399 (allowing intervention because interest in "gaining admission to the University" was "direct and substantial"). Indeed, their interests are broader in one significant respect. The applicant-Movants have an obvious interest in gaining admission to Harvard College, just as the intervenors in *Grutter* had an interest in admission to the University of Michigan. In addition, they have a significant interest in gaining access to Harvard's uniquely generous financial aid. *See* Exs. 1.1-9. *Both* of these interests would be impaired by Harvard's inability to consider applicant-Movants' racial or ethnic backgrounds, experiences, and perspectives.

In addition, the current student-Movants have significant interests in increasing, or at least maintaining, the number of Native American, African American, and Latino perspectives in both academic and non-academic settings on campus. *See* Exs. 1.10-14. To the extent that applicant-Movants anticipate being admitted to and enrolling at Harvard, they have the same interest. Greater student diversity would enhance educational experiences and result in a more hospitable, less isolated experience for Movants at Harvard College. *Id.* Both sets of Movants also have a more general interest in defending, against a broad attack, higher education admissions policies that value the diversity that underrepresented and minority students bring to universities and civic life generally.

Movants therefore have a direct and concrete interest in the outcome of this case.

### 3.      Movants' Interests Would Be Impaired If Intervention Were Denied

Movants are "so situated that the disposition of the action may as a practical matter impair or impede [their] ability to protect [their] interest."   Fed. R. Civ. P. 24(a)(2).   The advisory committee notes to Rule 24(a) are instructive: "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."   Fed. R. Civ. P. 24, Advisory Committee Note to 1966 Amendments. In order to demonstrate "impairment," courts have held that a prospective intervenor must show only that impairment is "possible" if intervention is denied.   *Grutter*, 188 F.3d at 399 (citing *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997)).   This burden is minimal.

Precluding Harvard College from considering race as a factor in admission would unquestionably impair access to Harvard College for Native American, African American, and Latino students, including for applicant-Movants.   *See Grutter*, 188 F.3d at 400 (finding that there was "little room for doubt that access to the University for African-American and Latino/a students will be impaired to some extent" and that this probability "is more than sufficient to meet the minimal requirements of the impairment element.").   Moreover, if the applicant-Movants are not admitted to Harvard, they may not be able to attend other top universities to which they are accepted, but which do not provide as much financial aid as Harvard.   A favorable decision for Plaintiff would also impair all the Movants' interests in attending Harvard College with students who have diverse racial and ethnic background and in finding students with common racial and ethnic backgrounds at Harvard College.

Although these potential impairments would be sufficient to support intervention, the consequences for Movants go still further.   Plaintiff seeks to establish a precedent for private universities writ large and even to overturn the Supreme Court's holding in *Grutter* that allows public universities to collect information about race and to use it to achieve a "critical mass" of

racial minorities. *See Grutter*, 539 U.S. at 335-36. This result would impair Movants' access to higher education across the country—at any public or private university that receives federal funds. The consequences for their access to higher education would be catastrophic.

For the foregoing reasons, Movants satisfy the impairment requirement.

### 4.     Harvard May Not Adequately Represent Movants' Interests

In order to satisfy the last requirement for intervention by right, Movants must show that Harvard's representation of Movants' "interest 'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (citing 3B J. Moore, Federal Practice 24.09–1 (4) (1969)). However, "the burden of making that showing should be treated as minimal." *Id.*; *see also Daggett*, 172 F.3d at 114-15 ("The language of [Rule 24(a)] clearly suggests that now [the proposed intervenor] is to be allowed in, if the other conditions of the rule are satisfied, unless the court is persuaded that the representation of him is in fact adequate.") (Lynch, J., concurring) (quoting Charles Wright, Arthur Miller & Mary Kane, Federal Practice and Procedure Civil 2d § 1909 at 314-15). Because Movants and Harvard have different interests and Harvard (unlike Movants) must balance competing interests, Movants can make the "minimal" showing required by this prong of Rule 24(a)(2).

First, Movants and Harvard College have different objectives in this litigation. Harvard seeks to defend a particular admissions policy that includes considering "legacy" relationships, Early Action applications, and standardized test scores, all which may have a negative impact on Native American, African American, and Latino students, including Movants. Movants have the quite different goal of enhancing access to Harvard for Native American, African American, and Latino students and increasing student body diversity. Although Harvard may well express its support for this position, its commitment to other features of its admissions practice make it unlikely that Harvard can fully represent Movants' interests at all stages of the litigation. For example, Harvard denies in its Answer that legacy admissions have a negative effect on racial

and ethnic minorities.  Answer ¶ 344.  Movants not only disagree, they also will be the only party to argue that one justification for considering race and ethnicity in college admissions is to remedy the adverse impact that legacy preferences, Early Action, and the SAT have on the diversity profile of the admitted class.

Second, Harvard's ability and willingness to advance arguments for a race-conscious admissions policy face legitimate constraints.  Harvard, as an institution, does not have the personal experiences that Movants do with respect to race and ethnicity.  Harvard is unable to advance those experiential arguments the way that Movants will.  Additionally, so as not to offend its alumni, faculty, the academic community, or the public, among many other constituencies, Harvard may be hesitant to advance relevant arguments advocating affirmative action as a remedial step that would expose its own history of past discrimination or to address ongoing problems with race relations or dissatisfaction with racial diversity on the campus. Harvard's potential failure to advance such arguments is adequate to satisfy Movants' minimal burden that Defendant's representation "may be" inadequate.

Movants are in a fundamentally different position from Harvard.  They would bear the greatest costs under a favorable ruling for Plaintiff.  Unlike Harvard, Movants' lives will be personally impacted by the outcome of this case.  An unfavorable decision might certainly upset some of Harvard's policy objectives, but it could continue to operate without incident under a different admissions policy.  Movants should not be required to entrust their interests to Defendant who is under no duty to weigh Movants' concerns, much less proceed with Movants' arguments.

For these reasons, Movants' interests are too varied from Harvard's and too vital for them to be denied an active role in this litigation as intervenors.  For these reasons, Movants respectfully request that the Court grant them intervention as a matter of right.

**B.      MOVANTS ARE ENTITLED TO PERMISSIVE INTERVENTION**

Should the Court determine that Movants are not entitled to intervene as of right, Movants urge the Court to exercise its discretion and allow them to intervene under Fed. R. Civ. P. Rule 24(b).  Rule 24(b) provides, in relevant part:

> On timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact. . . . (3) In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. Rule 24(b).  Pursuant to Rule 24(b)(1)(B), a court may permit a timely intervention where the movant has a claim or defense that shares a common question of law or fact with the main action.  Fed. R. Civ. P. 24(b)(1)(B).  A court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.  *United States v. Metropolitan Dist. Comm'n.*, 147 F.R.D. 1, 6 (D. Mass. 1993).  In addition, "permissive intervention ordinarily must be supported by independent jurisdictional grounds." *Int'l Paper Co. v. Town of Jay*, 887 F.2d 338, 346 (1st Cir. 1989).

When these requirements are met, "the district court can consider almost any factor rationally relevant but enjoys very broad discretion in granting or denying the motion." *Daggett*, 172 F.3d at 113.  Such factors may include: whether the movants will benefit by the intervention; whether the movants' interests are adequately represented by the other parties; and whether the movants will significantly contribute to the full development of the underlying factual issues in the action and to the equitable adjudication of the legal issues presented.  *The Travelers Indem. Co. v. Bastianelli*, 250 F.R.D. 82, 85 (D. Mass. 2008) (quoting *In re Acushnet River & New Bedford Harbor*, 712 F. Supp. 1019, 1023 (D. Mass. 1989)).

Permissive intervention is warranted when a party seeks to protect its interest in a race-conscious program from which it benefits.  *See, e.g.*, *United States v. LULAC*, 793 F.2d 636, 644 (5th Cir. 1986) (holding permissive intervention was appropriate for organizations representing

African American and Latino children in a desegregation and educational access case because the intervenors raised common questions of law and fact).

First, as discussed above, Movants' motion is timely.  Second, because Movants contend that Harvard has the legal right to use a race-conscious admissions policy, they will share common questions of fact and law with the main action.  Third, intervention would not create delay or prejudice to the parties.  Adding Movants as Defendant-Intervenors at this juncture in the lawsuit will not needlessly increase cost, delay disposition of the litigation, or prejudice the existing parties.  Movants would be intervening before any discovery has taken place and would accede to any scheduling plan that is adopted at the upcoming scheduling conference.

Consideration of the other factors relevant to the Court's analysis of permissive intervention weigh in favor of intervention.  Movants' participation in this lawsuit will promote the full development of the factual issues.  They will provide the perspective of underrepresented minority students and give light to the aspects of Harvard's admissions policy and history that result in underrepresentation of highly qualified Native American, African American, and Latino students.  *See Daggett*, 172 F.3d at 113 ("The fact that the applicants may be helpful in fully developing the case is a reasonable consideration in deciding on permissive intervention.").  In addition, as discussed above, Harvard may not adequately represent the underrepresented minority students who have a direct stake in the outcome of this case.  For these reasons, Movants should be permitted to intervene in this case.

V.      CONCLUSION

For the foregoing reasons, Movants request the Court grant them intervention as a matter of right under Fed. R. Civ. P. Rule 24(a), or alternatively, permissive intervention pursuant to Rule 24(b).

DATED: April 29, 2015              Respectfully Submitted,

/s/ Rahsaan D. Hall
Rahsaan D. Hall, BBO # 645369
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
AND ECONOMIC JUSTICE
294 Washington St., Suite 443
Boston, MA 02108
Tel: (617) 988-0608
rhall@lawyerscom.org

/s/ Jon M. Greenbaum
Jon M. Greenbaum, DC Bar # 489887
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1401 New York Avenue, NW, Suite 400
Washington, DC 20005
Tel: (202) 662-8600
jgreenbaum@lawyerscommittee.org

ATTORNEYS FOR PROPOSED DEFENDANT-
INTERVENORS

## CERTIFICATE OF SERVICE

In accordance with Local Rule 5.2(b), I hereby certify that this document filed through the ECF system on April 29, 2015 will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Rahsaan D. Hall
Rahsaan D. Hall