### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No:  1:14-cv-14176 |
| | ) | |
| PRESIDENT AND FELLOWS OF HARVARD | ) | |
| COLLEGE (HARVARD CORPORATION) | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION
### TO MOTION TO INTERVENE

A group of minority Harvard students and prospective applicants to Harvard ("Movants") have filed a Motion to Intervene ("Motion") in this matter under Federal Rule of Civil Procedure 24(a) as of right and, in the alternative, they seek permissive intervention under Federal Rule of Civil Procedure 24(b). For the reasons set forth below, the Motion should be denied and Movants instead should be allowed to participate as *amicus curiae*.

## I.      INTRODUCTION

The use of racial preferences at Harvard and other elite universities is an issue of national importance. Plaintiff thus has no desire to foreclose Movants from weighing in on the relevant legal issues in this case and believes the Court should exercise its discretion to allow Movants to participate in this case as *amicus curiae*. Doing so would allow Movants to be heard on the legal and policy issues they wish to raise without impairing the parties' ability to conduct discovery in an expeditious fashion.

Intervention, however, is not justified. Intervention as of right is not warranted for several reasons. First, Movants do not have a protectable legal interest in the continued use of racial

preferences. Unlike Plaintiff's members, whose Title VI rights are jeopardized by Harvard's discriminatory policies, Movants would not suffer a cognizable injury if Harvard discontinued the use of racial preferences, either voluntarily or in compliance with an order from this Court. The Supreme Court has made clear that there is no legal right to preference on the basis of race. Second, Harvard will adequately represent any conceivable interest Movants might possess. Harvard and Movants share the same ultimate goal—the rejection of Plaintiff's challenge—and Harvard is vigorously defending this challenge to its admissions system. Third, Movants' failure to seek intervention for more than five months after the Complaint was filed and more than two months after Harvard filed its Answer has prejudiced the parties. If intervention is granted, the parties will not be able to complete discovery in the timeframe the Court established; indeed the schedule would need to be extended by at least two months.

Permissive intervention should be denied for these same reasons. The Court enjoys broad discretion under Rule 24(b) to assess whether permissive intervention is appropriate under the circumstances of this case. Given Movants' lack of a protectable interest, Harvard's willingness to strongly defend its admissions system, and the discovery complexities that Movants would introduce, the Court should exercise its discretion to deny permissive intervention and allow Movants instead to participate as *amicus curiae*. That is what the district court did in *Fisher v. University of Texas at Austin* when confronted with a similar intervention motion. Following that course allowed the district court in *Fisher*, and would allow the Court here, to efficiently manage a complex case while allowing students to share their views on legal issues relevant to the case. The Court should deny the Motion.

## II.   ARGUMENT

### A.   Movants Are Not Entitled To Intervention As Of Right

"A party that desires to intervene in a civil action under Rule 24(a)(2) must satisfy four conjunctive prerequisites: (1) a timely application for intervention; (2) a demonstrated interest relating to the property or transaction that forms the basis of the ongoing action; (3) a satisfactory showing that the disposition of the action threatens to create a practical impairment or impediment to its ability to protect that interest; and (4) a satisfactory showing that existing parties inadequately represent its interest." *Pub. Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998) (citation omitted). In this Circuit, "[a]n applicant for intervention as of right must run the table and fulfill all four of these preconditions. The failure to satisfy any one of them dooms intervention." *Id*. (citation omitted). Here, Movants cannot meet any of the preconditions to intervention as of right.

### 1.   Movants lack a "demonstrated interest" in this action.

Movants lack a "demonstrated interest" in this action and hence are unable to show that denial of intervention threatens to impair their rights. "While the type of interest sufficient to sustain intervention as of right is not amenable to precise and authoritative definition, a putative intervenor must show at a bare minimum that it has a significantly protectable interest that is direct, not contingent." *Id*. at 205 (citations and internal quotations omitted); *see also United States v. Metro. Dist. Comm'n*, 761 F. Supp. 206, 207 (D. Mass. 1991) (explaining "intervention of right" is allowed only when "the putative intervenor has a direct, substantial and legally protectable interest in the subject of the action and the disposition of that action may adversely affect the ability to protect that interest") (citing *Travelers Indemnity Co. v. Dingwell,* 884 F.2d 629, 638 (1st Cir. 1989)). Furthermore, "the intervenor's claim must bear a sufficiently close

3

relationship to the dispute between the original litigants." *Travelers Indem. Co.*, 884 F.2d at 638 (citations and quotations omitted)).

The Supreme Court recently held that Movants have *no* protectable interest—let alone a significant and direct interest—in the continued use of racial preferences at Harvard or anywhere else. *See Schuette v. Coal. to Defend Affirmative Action, Integration & Immigrant Rights & Fight for Equal. by Any Means Necessary (BAMN)*, 134 S. Ct. 1623 (2014). The *Schuette* plaintiffs, who included "prospective applicants to Michigan public universities," filed suit claiming that a ballot initiative banning the use of racial preferences in admissions violated their legal rights. *Id*. at 1629-30. The Court disagreed. While use of racial preferences in admissions is presumptively unconstitutional and thus subject to strict scrutiny, a university's decision to refrain from using or to discontinue use of such racial preferences is *never* illegal. *See id*. at 1629-36. As the Court explained, a university's decision to shift from a race-based admissions system to a race-neutral admissions system does not cause any potential applicant "specific injury of the kind" needed to create a protectable legal interest. *Id*. at 1636. The Equal Protection Clause could never "forbid" a university "from banning a practice that the Clause barely—and only provisionally—permits." *Id*. at 1639 (Scalia, J., concurring in the judgment). Indeed, even the dissent (which objected to the particular way in which Michigan pursued the change) agreed that a university is perfectly free to eliminate racial preferences in admissions without offending the Constitution. *See id*. at 1652-53, 1669-70 (Sotomayor, J., dissenting).

Thus, *Schuette* is fatal to Movants' assertion of a significantly protectable legal interest. Movants claim to have an interest "in race-conscious programs from which they benefit." Memorandum in Support of Motion to Intervene ("Memo") at 10. Under *Schuette*, however, Movants would lack any legal interest in objecting even if Harvard voluntarily decided to

4

discontinue racial preferences. Movants' legal rights are no greater because that same question arises here in the context of a Title VI lawsuit seeking to compel Harvard to discontinue racial preferences in admissions. Whether Harvard's challenged conduct is ended voluntarily or by court order, the end result would be a race-neutral admissions system at Harvard that would in no way disparage the protectable legal rights of any applicant for undergraduate admission, including Movants.

Finally, although whether Rule 24(a)(2) requires Movants to have Article III standing to intervene as of right remains an open question, "in the ordinary case, an applicant who satisfies the 'interest' requirement of the intervention rule is almost always going to have a sufficient stake in the controversy to satisfy Article III as well." *Cotter v. Massachusetts Ass'n of Minority Law Enforcement Officers*, 219 F.3d 31, 33 (1st Cir. 2000). Movants clearly lack Article III standing given that they could not sue Harvard for discontinuing the use of racial preferences in admissions. That alone is a powerful signal that intervention as of right should be denied. But Movants' lack of injury provides an additional reason to deny intervention as of right, because standing certainly would be required to continue the case in the event Harvard declined to appeal an adverse judgment or settled the case. *See Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013) (explaining that "standing 'must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance.'" (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997)). That Movants would lack appellate standing further counsels against granting intervention as of right.

### 2. Harvard adequately represents Movants' interests.

Even assuming that Movants have a protectable interest in the continued use of racial preferences, which they do not, Harvard will adequately represent that interest. As the First

Circuit has explained, "in cases where the intervenor's ultimate objective matches that of the named party, a rebuttable presumption of adequate representation applies." *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 546 (1st Cir. 2006) (citation omitted). That presumption applies here. Movants' ultimate objective in intervening is the rejection of SFFA's claim and the continued use of racial preferences in undergraduate admissions at Harvard. *See* Memo at 12. Harvard shares that objective.

Movants claim a divergence of interests because they disagree with certain aspects of Harvard's admissions system, including legacy preferences, early action admissions, and reliance on standardized tests. *See id*. at 13. But Movants have not sought intervention to challenge these policies—nor could they. However they dress up their argument, Movants seek intervention to defend Harvard's use of race in admissions decisions. Any policy dispute between Movants and Harvard is beyond the scope of this case. At most, Movants might offer additional "arguments," Memo at 14, for why, in their view, it is important to retain racial preferences in undergraduate admissions, *i.e.*, the ultimate objective they and Harvard share. But that is not a basis for intervention as of right. *See Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*, 378 F.3d 774, 780 (8th Cir. 2004) ("It is not sufficient that the party seeking intervention merely disagrees with the litigation strategy or objectives of the party representing its interests."). It was precisely these types of arguments that led to the denial of intervention in *Fisher v. University of Texas at Austin*. *See* Order, Case No. A-08-CA-263-SS, at *2 (W.D. Tex. Aug. 11, 2008) (Doc. 83) ("Specifically, the Court finds movants' interests adequately represented by the existing parties, specifically the defendants, in this litigation. The Court also finds denial of the motions to intervene to be in the best interest of an efficient resolution of this case."). If there was adequacy of representation in *Fisher*, there is adequacy of representation here.

In fact, this is exactly the type of intervention application of which a district court should be especially wary; "piling on parties" can "result in delay as parties and court expend resources trying to overcome the centrifugal forces springing from intervention, and prejudice will take the form not only of the extra cost but also of an increased risk of error." *Mass. School of Law at Andover, Inc. v. United States*, 118 F.3d 776, 782 (D.C. Cir. 1997). A district court that grants party status to those who "only marginally satisfy the standing requirements" and are not "truly aggrieved" will be "repeatedly required to respond to vague hypotheticals and speculation rather than concrete and actual harms." *Ind. Democratic Party v. Rokita*, 458 F. Supp. 2d 775, 825 n.75 (S.D. Ind. 2006).

Finally, Movants' suggestion that Harvard is not sufficiently motivated to defend the use of racial preferences in admissions, *see* Memo at 14, is untenable. Harvard has made clear it will vigorously defend its admissions system. *See Suit Alleges Race-Based Discrimination in Harvard Admissions Practices*, The Harvard Crimson, November 18, 2014 ("University General Counsel Robert W. Iuliano … wrote in a statement that [Harvard's] 'admissions processes remain fully compliant with all legal requirements and are essential to the pedagogical objectives that underlie Harvard's educational mission.'"), *available* at http://www.thecrimson.com/article/ 2014/11/18/law-suit-admissions-alleged-discrimination. Furthermore, for decades Harvard has been at the forefront in the use of racial preferences in admissions. *See* Complaint ¶¶ 125-174. There is no basis to suppose that Harvard is going to suddenly and voluntarily abandon a practice it deems essential to its institutional mission. And, given their lack of standing, Movants would have no recourse even if they did.

3.     __Movants' application is untimely.__

Although this action was filed on November 18, 2014, Movants delayed seeking intervention until April 29, 2015—more than five months later. Movants claim they could have not sought intervention earlier because Harvard did not make "known its legal position" until "the Joint Statement [was] filed on April 23, 2015." Memo at 9. But Harvard made its position regarding this lawsuit publicly known from the outset and certainly no later than when it filed its Answer on February 18, 2015—more than two months before Movants sought intervention. Movants were obligated "to proceed with reasonable dispatch to protect [their] interests." *R & G Mortgage Corp. v. Fed. Home Loan Mortgage Corp.*, 584 F.3d 1, 9 (1st Cir. 2009). They failed to do so.

More fundamentally, the existing parties will be "prejudiced by the failure of would-be intervenors to act in a timely fashion." *Fiandaca v. Cunningham*, 827 F.2d 825, 834 (1st Cir. 1987) (citation and quotations omitted)). Between February 18, 2015 and April 23, 2015, the parties worked diligently to produce a discovery schedule that would lead to as expeditious a resolution as possible of this complex case. Although the parties were unable to agree on the length of fact discovery (a dispute the Court resolved by ordering a fact-discovery period of 11 months), they were able to agree on an expert-discovery period of approximately four and a half months. Both of these discovery periods will need to be revisited and expanded if Movants are permitted to intervene. Movants claim they will accept the established schedule. *See* Memo at 9. But they have made equally clear that they plan to participate to some degree in fact discovery and plan to participate extensively in expert discovery. As a result, the established discovery schedule likely would need to be expanded by at least two months if Movants are granted intervention to allow for extra time to review, conduct additional fact discovery (if necessary),

rebut additional expert reports, and depose those additional experts. That is reason enough to deny the request.

**B.      Movants Should Be Allowed To Participate As Amicus Curiae Instead Of Being Granted Permissive Intervention.**

"The discretion afforded to the district court under Rule 24, substantial in any event, is even broader when the issue is one of permissive intervention." *Puerto Rico Tel. Co. v. San Juan Cable, LLC*, 298 F.R.D. 28, 30 (D.P.R. 2014) (citing *R & G Mortgage Corp.,* 584 F.3d at 11-12). Permissive intervention should be denied here because, as explained above, the parties will be prejudiced by Movants' participation in discovery. *See id.* at 31 ("[A] timeliness inquiry is more rigorous when a movant is seeking permissive intervention."). Moreover, denying permissive intervention will not harm Movants because they have no protectable interest at stake in this litigation and Harvard will adequately protect any conceivable interest they do have. *See* 6 James Wm. Moore et al., Moore's Federal Practice ¶ 24.10[2][d] (2000) ("Courts are understandably reluctant to grant permissive intervention to an applicant where interests are already fully represented by one of the existing parties."). In short, Movants should be denied permissive intervention for the same reasons it should be denied intervention as of right.

Indeed, even "the existence of a common question of law or fact will not automatically entitle a movant to intervene; the court has the discretion to determine the fairest and most efficient method of handling the lawsuit." *Hopwood v. State*, No. CIV. A-92-CA-563-SS, 1994 WL 242362, at *2 (W.D. Tex. Jan. 20, 1994) (citations omitted); *see also id*. at *1 (denying intervention in part because "as a practical matter, the prospective intervenors and the Defendants have the same ultimate objective in this lawsuit—the preservation of the admissions policy and procedure currently used by the law school"). Here, the fairest and most efficient path forward is to allow Movants to participate as *amicus curiae*. Movants are chiefly concerned with

matters of law and policy; they wish to share with the Court "the perspective of underrepresented minority students and give light to the aspects of Harvard's admissions policy and history that result in underrepresentation of highly qualified Native American, and Latino students." Memo at 16. That is precisely the kind of "perspective" that can be shared through an *amicus brief. See, e.g., Fisher, supra* at *2 ("[A]t the conclusion of the trial on the merits in this case, each group of proposed interveners will be permitted to file an amicus brief no more than twenty (20) pages in length.").

## III.    CONCLUSION

For all of these reasons, Plaintiff respectfully requests that the Court deny the Movants' Motion to Intervene.

Respectfully submitted,
STUDENTS FOR FAIR ADMISSIONS, INC.


By its attorneys,


Date: May 13, 2015                    ___/s Williams S. Consovoy_____
William S. Consovoy
Thomas R. McCarthy
J. Michael Connolly
CONSOVOY MCCARTHY PLLC
3033 Wilson Boulevard
Suite 700
Arlington, Virginia 22201
(703) 243.4923
will@consovoymccarthy.com
tom@consovoymccarthy.com
mike@consovoymccarthy.com
(admitted *pro hac vice*)

Paul M. Sanford BBO #566318
Benjamin C. Caldwell BBO #675061
BURNS & LEVINSON LLP
125 Summer Street

10

Boston, MA 02110
(617) 345-3000
psanford@burnslev.com
bcaldwell@burnslev.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

_/s William S. Consovoy_____
William S. Consovoy