## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS
## BOSTON DIVISION

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE (HARVARD CORPORATION),<br><br>Defendant. | Civil Action No. 1:14-cv-14176-ADB |

### HARVARD'S RESPONSE TO MOTION TO INTERVENE

Fourteen individuals—five current Harvard College students and nine high school students who have expressed an intent to apply for admission to Harvard—have moved to intervene "in defense of Harvard's admissions policy."  Mot. to Intervene ("Mot.") at 1.  Harvard is confident that its admissions policies and practices, including its commitment to the diversity of its student body, are consistent with Title VI of the Civil Rights Act.  Harvard is mounting a vigorous defense of those policies and practices, and it looks forward to a successful and expeditious resolution of this case.

Harvard recognizes the important and valuable perspective that its students may offer on the policies and practices challenged in this litigation and, in particular, on the benefits of diversity in the student body of Harvard College.  As discussed below, however, Movants may offer their perspective by means other than unfettered participation as parties to this litigation.

Movants are not entitled to intervene as of right, because Harvard will adequately represent their interests.  Movants' stated objective in this case—the entry of judgment against Plaintiff's Title VI claims—is the same as Harvard's.  Although Movants suggest that they may

wish to emphasize different aspects of Harvard's admissions practices than Harvard might highlight, that possible divergence of litigation strategy between Harvard and Movants is both speculative and legally insufficient to justify intervention as of right.

If the Court permits Movants to intervene, it should exercise its discretion to limit their participation to the submission of briefs, the presentation of their own declarations, and participation in any oral argument that the Court may choose to hear.  If intervention is limited in that fashion, then it should not interfere with the orderly resolution of this case.  Broader participation by Movants—including their participation in the taking of discovery from the existing parties and their presentation of expert testimony—is unwarranted here.  Given that the existing parties will fully litigate this case, there is no need for the further complications and delay that may well result from the participation of additional parties.[1]  In addition, discovery in this case may involve the production (under a protective order) of personal information about applicants to Harvard and current Harvard students.  The possibility of intervenors, themselves current Harvard students and prospective applicants, seeing information about their classmates and other confidential information would exacerbate the already significant privacy concerns that discovery in this case will entail.

During the Scheduling Hearing, the Court inquired whether Movants could participate in this case by a means other than intervention.  As an alternative to intervention, this Court could allow Movants to participate as amici curiae, with the right to present briefing and (if this Court orders argument) oral argument on any dispositive motions in this case.

---

[1]      Indeed, these Movants may not be the last to seek to intervene.  Considering the significance and public profile of the issues involved in this case, additional individuals may seek to intervene on both sides.  Allowing broad participation by additional intervenors as well as Movants would lead to even greater complication and delay.

I.      **Because Harvard Will Adequately Represent Movants' Interests, Intervention As Of Right Should Be Denied**

"To succeed on a motion to intervene as of right, a putative intervenor must establish (i) the timeliness of its motion to intervene; (ii) the existence of an interest relating to the property or transaction that forms the basis of the pending action; (iii) a realistic threat that the disposition of the action will impede its ability to protect that interest; and (iv) the lack of adequate representation of its position by any existing party." *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009).  Under that well-established test, the Court should deny intervention as of right because, at a minimum, Movants cannot satisfy the fourth requirement—the lack of adequate representation by an existing party.  Because Harvard will adequately represent Movants' position in this case, they cannot intervene as of right.  *See id.* ("The movant must fulfill each of these preconditions.").

The First Circuit has made clear that "[a] party that seeks to intervene as of right must produce some *tangible basis* to support a claim of purported inadequacy." *Pub. Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 207 (1st Cir. 1998) (emphasis added); *see also Moosehead Sanitary Dist. v. S. G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979) ("[A] petitioner must produce something more than speculation as to the purported inadequacy[.]").  Moreover, "adequate representation is *presumed* where the goals of the applicants are the same as those of the plaintiff or defendant." *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 111 (1st Cir. 1999) (emphasis added).

Given Harvard's demonstrated commitment to defending its admissions policies and practices, Harvard is properly presumed to represent the goals of the Movants.  Harvard and Movants share the goal of sustaining Harvard's holistic approach to admissions and Harvard's commitment to diversity, including racial and ethnic diversity, in its student body.  And Harvard,

like Movants, believes that Harvard's admissions practices should work to ensure "the exposure of *all* Harvard students … to peers with different racial or ethnic experiences from their own." Mem. in Support of Proposed Defendant-Intervenors' Mot. to Intervene ("Mem.") at 3-4.

To overcome the presumption of adequate representation, the would-be intervenor "ordinarily must demonstrate adversity of interest, collusion, or nonfeasance." *Moosehead*, 610 F.2d at 54; *see also Daggett*, 172 F.3d at 111. Movants cannot make that showing. There is plainly no collusion here (indeed, Movants have not even alleged it), and although Movants suggest in passing that Harvard might settle this action, it would be inconceivable for Harvard to accede to SFFA's demands. *Cf. Patch*, 136 F.3d at 208 ("[W]e note that the [defendants] have launched a full-scale, uncompromising defense of their Plan. We think the likelihood that the [defendants] will capitulate cravenly to the plaintiffs' onslaught is extremely remote. This circumstance, in itself, weighs heavily in favor of denying mandatory intervention.").

Movants identify only a handful of points of potential divergence with Harvard, focusing on Harvard's consideration of standardized test scores, its use of non-binding Early Action admissions, and its consideration of whether an applicant's parents attended Harvard or Radcliffe. Those potential disagreements do not establish any "adversity of interest" between Harvard and Movants. Indeed, Movants are not asking the Court to prohibit those practices; to the contrary, they seek to "defen[d]" Harvard's admissions policy, Mot. at 1, and they are asking the Court to enter precisely the same judgment that Harvard seeks. *Compare* Movants' Proposed

Answer ¶ 506 ("Plaintiff is not entitled to any form of relief.") *with* Harvard's Answer at 62 (same).[2]

Movants argue that "Harvard's ability and willingness to advance arguments for a race-conscious admissions policy face legitimate constraints" because (a) "Harvard, as an institution, does not have the personal experiences that Movants do with respect to race and ethnicity" and (b) "Harvard may be hesitant to advance relevant arguments advocating affirmative action as a remedial step." Mem. at 14. As to the first point, Movants are wrong in assuming that Harvard cannot speak to the interests or the experiences of students who attend, or have attended, the College. To the contrary, Harvard has long sought to admit a diverse student body precisely because of the beneficial effects of diversity that it has witnessed among its students from all backgrounds. Movants' second point is legally irrelevant: The compelling interest that the Supreme Court has recognized as permitting universities to consider race in admissions is the pursuit of diversity, not the remediation of past injustices. *See Fisher v. Univ. of Texas at Austin*, 133 S. Ct. 2411, 2417 (2013); *Regents of the Univ. of Cal. v. Bakke*, 438 U.S. 265, 307-315 (1978) (opinion of Powell, J.).

Whatever minor differences (if any) may exist between Harvard's view of this case and Movants' view of this case, these differences are insufficient to create an "adversity of interest" that would overcome the presumption of adequate representation. Even if Movants would prefer to emphasize different arguments or present different evidence from that presented by Harvard, those differences in litigation judgment do not establish inadequacy of representation. *See Patch*, 136 F.3d at 208 (explaining that, as here, "[n]one of the [would-be intervenors] has

---

[2]    Further, it is likely that several of these issues, such as the alleged effect of "legacy preferences" and Early Action admissions in Harvard's admissions practices, will be raised by Plaintiff. *Compare, e.g.*, Mem. at 5 (arguing that such practices "have an adverse impact on the diversity profile of the admitted class") *with* Compl. ¶ 8 (Plaintiff alleging that those practices operate to the disadvantage of minority applicants).

propounded any legal argument that the [defendants] are unable or unwilling to make, or that subverts the [defendants'] institutional goals"); *Daggett*, 172 F.3d at 112 (stating that "the use of different arguments as a matter of litigation judgment is not inadequate representation *per se*," and that inadequacy on this ground requires an "extreme" "refusal to present obvious arguments").

Indeed, the district court in the most recent major case addressing the use of race in university admissions denied two motions to intervene that asserted grounds of inadequate representation virtually identical to those raised by Movants. *See* Mot. to Intervene of Sarah Cortez, et al. at 19, *Fisher v. Univ. of Texas at Austin*, No. 08-cv-263 (W.D. Tex. July 25, 2008), Doc. No. 72 (noting that the defendants might "be hesitant to advance any relevant arguments advocating affirmative action as a remedial step that would expose their own history of past discrimination or to address ongoing problems with race relations on the campus"); Mot. to Intervene of Chad Stanton, et al. at 18, *Fisher v. Univ. of Texas at Austin*, No. 08-cv-263 (W.D. Tex. July 23, 2008), Doc. No. 63 ("Proposed Intervenors may present evidence regarding … areas of concern that Defendants may be reluctant, if not unwilling to raise," including "the disparate impact on African-American applicants of other admissions criteria used by UT" and "existing and past racial tensions and discrimination experienced by African-American students at UT[.]").  The district court determined that the interests of the proposed intervenors were

"adequately represented by the existing parties."  Order at 2, *Fisher v. Univ. of Texas at Austin*,

No. 08-cv-263 (W.D. Tex. Aug. 11, 2008), Doc. No. 83.[3]  The same is true here.

## II.     If Permissive Intervention Is Allowed, It Should Be Subject To Significant Conditions To Prevent Delay And Complication In This Case

A district court may permit intervention by a party that "has a claim or defense that

shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).

This threshold for permissive intervention is lower than the showing required for intervention as

of right, but even if Movants have satisfied it, that is only the beginning of the analysis.  This

Court has expansive discretion to deny or limit permissive intervention, *see, e.g.*, *Daggett*, 172

F.3d at 113, and "[i]n exercising its discretion, the [C]ourt must consider whether the

intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed.

R. Civ. P. 24(b)(3).  Harvard recognizes the value of its students' voices on the issues in this

case, but their voices can be fairly heard without an expansive grant of permissive intervention

that would unnecessarily complicate and delay this litigation.  Allowing Movants to engage in

fact discovery from the current parties would certainly drive up costs and increase delay as the

numbers of interrogatories, document requests, and depositions would increase.  And allowing

Movants access to all documents exchanged in discovery between the parties would exacerbate

the privacy concerns implicated by this litigation:  Current and prospective students should not

be privy to the confidential information of other Harvard College students and applicants.

---

[3]     As Movants note, after the denial of intervention, the intervenors in *Grutter* and *Gratz* filed an interlocutory appeal from the denial of intervention.  *See Grutter v. Bollinger*, 188 F.3d 394, 400 (6th Cir. 1999).  While the Sixth Circuit did permit intervention in those actions, it did so on the basis of circuit precedent defining a far less stringent standard for inadequacy than the First Circuit has applied. *Compare id.* at 400 (explaining that in the Sixth Circuit, "'[i]t may be enough'" for a proposed intervenor "'to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments'") *with Daggett*, 172 F.3d at 112 (explaining that in the First Circuit, "the use of different arguments as a matter of litigation judgment is not inadequate representation *per se*," and only an "extreme" "refusal to present obvious arguments" qualifies as inadequacy).  The Sixth Circuit also did not apply this Circuit's rule that "adequate representation is presumed where the goals of the applicants are the same as those of the plaintiff or defendant," *id.* at 111.

Furthermore, all this added complexity would be for naught, given that Movants agree with Harvard's legal position in this case and that forms of participation short of unlimited intervention would still enable them to be heard.

If the Court grants permissive intervention, it should limit Movants' participation to briefing and argument on dispositive motions and the submission of the Movants' own declarations.  The Court should not allow Movants to take discovery or to have access to any confidential information that may be produced in discovery between the parties (including information about the workings of the Harvard College admissions process, which could unfairly advantage prospective candidates for admission).  Such limits would be well within the Court's expansive discretion.  *See, e.g.*, Wright & Miller et al., 7C Fed. Prac. & Proc. Civ. § 1922 (3d ed.) ("Since the trial court has full discretion to grant or deny an application for permissive intervention under Rule 24(b), it may if it chooses impose conditions on its grant of the application.  There are many reported instances in which conditions of this kind have been imposed." (footnotes omitted)); *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 382 n.1 (1987) (Brennan, J., concurring) ("Even highly restrictive conditions may be appropriately placed on a permissive intervenor[.]"); *United States v. AVX Corp.*, 962 F.2d 108, 111 (1st Cir. 1992) ("[T]he district court granted permissive intervention for the limited purpose of allowing [the intervenor] to brief and argue" several issues and to appeal from an adverse judgment); *Firestone Synthetic Rubber & Latex Co. v. Marshall*, 507 F. Supp. 1330, 1334 n.4 (E.D. Tex. 1981) ("Koppers Company, Inc., was granted leave to intervene for the limited purpose of filing briefs and presenting oral argument.").[4]

---

[4]     Indeed, limits of this nature would be appropriate even if the Court were to grant Movants intervention as of right.  *See* Fed. R. Civ. P. 24, advisory note ("An intervention of right … may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.").

Limits of this nature are entirely consistent with Movants' stated desire to "provide the perspective of underrepresented minority students and give light to the aspects of Harvard's admissions policy and history that," in their view, "result in underrepresentation of highly qualified Native American, African American, and Latino students."  Mem. at 16.  That is a perspective that Movants can fully provide through legal briefing and argument—which could incorporate citations to published literature on the social-science issues that Movants propose to raise—and through the declarations of Movants themselves.  It is not one that would benefit from participation in discovery or the presentation or cross-examination of witnesses.

Limiting Movants' intervention in this manner would avoid the prospect of undue complication and delay while giving them fair opportunity for their voices to be heard in the proceedings.[5]  Alternatively, the Court could allow Movants to participate as amici curiae, with the right to submit briefs at summary judgment and to participate in any oral argument that the Court might wish to hear.  This was the approach taken by the district court in *Fisher*.[6]  Order at 2, *Fisher v. Univ. of Texas at Austin*, No. 08-cv-263 (W.D. Tex. Aug. 11, 2008), Doc. No. 83. The Court could also accord Movants some form of "amicus-plus" status, subject to the limits described above.  *See State v. Dir., U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 14 (1st Cir. 2001) (recognizing amicus-plus status).  For example, in *Comfort ex rel. Neumyer v. Lynn School Committee*, an action challenging a race-conscious plan for promoting diversity in a public school district, the court denied intervention but granted counsel for the would-be intervenors the

---

[5]     As the Court is aware, Harvard's position is that any applicant files that are to be produced must be significantly redacted (even under a protective order) and that no party is entitled to discovery of the Harvard College records of matriculated students.  In Harvard's view, these limits on discovery are consistent with allowing Movants to submit their own declarations.  Harvard opposes allowing Movants to submit declarations if, in the Court's view, that would necessitate broadening discovery.  Under those circumstances, Movants would have the opportunity to have their views conveyed through briefing as amici curiae.

[6]     Although the would-be intervenors in *Fisher* could have taken an interlocutory appeal from the denial of intervention, they chose instead to participate as amici curiae.

right to receive "[n]otice and service of all documents and events" and the right to "submit pre- and post-trial memoranda … as appropriate," though *not* the right to "examine witnesses."[7] Order re:  Application for Participation as Amici Curiae at 1, *Comfort ex rel. Neumyer v. Lynn Sch. Comm.*, No. 99-cv-11811 (D. Mass. April 30, 2002), Doc. No. 140; *see also id.* (stating that the would-be intervenors' "role is limited to legal argument").  In Harvard's view, some form of amicus participation—subject to the same limitations as discussed above—would equally protect Movants' interests while enabling this litigation to progress without undue cost or delay.

*     *     *

For the reasons stated above, Harvard respectfully submits that (a) intervention as of right should be denied, (b) permissive intervention, if allowed, should be limited to the presentation of briefs, oral argument, and Movants' own declarations in order to avoid needless cost, delay, and complexity, and (c) Movants could alternatively be allowed to participate as amici curiae.

/s/ Seth P. Waxman
Seth P. Waxman (*pro hac vice*)
Paul R.Q. Wolfson (*pro hac vice*)
WILMER CUTLER PICKERING
     HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
Tel: (202) 663-6800
Fax: (202) 663-6363
seth.waxman@wilmerhale.com
paul.wolfson@wilmerhale.com

---

[7]     The court also provided that "[a]s appropriate, defendants may take full advantage of amici curiae's offers of resources, evidence, or assistance where doing so would help defendants in preparation for and during trial, subject to the Court's standard practices with respect to the conduct of trial."  Order re:  Application for Participation as Amici Curiae at 2, *Comfort ex rel. Neumyer v. Lynn Sch. Comm.*, No. 99-cv-11811 (D. Mass. April 30, 2002), Doc. No. 140.  Harvard obviously would not oppose a similar order here.

Debo P. Adegbile (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 295-6717
Fax: (212) 230-8888
debo.adegbile@wilmerhale.com

Felicia H. Ellsworth (BBO #665232)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6687
Fax: (617) 526-5000
felicia.ellsworth@wilmerhale.com

Dated:  May 13, 2015

*Counsel for Defendant President and Fellows of Harvard College*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to those indicated as non-registered participants on May 13, 2015.

/s/ Seth P. Waxman
Seth P. Waxman