## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS
## BOSTON DIVISION

|  |  |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>PRESIDENT AND FELLOWS OF HARVARD<br>COLLEGE (HARVARD CORPORATION),<br><br>Defendant. | Civil Action No. 1:14-cv-14176-ADB |

### MEMORANDUM IN SUPPORT OF HARVARD'S MOTION TO STAY

Defendant President and Fellows of Harvard College ("Harvard") respectfully moves for a stay of this action pending the Supreme Court's decision in *Fisher v. University of Texas at Austin*, No. 14-981 (*Fisher II*). The Supreme Court granted certiorari in *Fisher II* on June 29, 2015 and will hear that case during its upcoming Term, with a decision likely no later than June 2016. The petitioner in *Fisher II*, represented by the same counsel as plaintiff in this case, Students For Fair Admissions, Inc. ("SFFA"), is raising before the Supreme Court issues that bear directly on this case. Staying proceedings in this case pending the Supreme Court's decision in *Fisher II* will promote efficient judicial administration and defer the immense burdens of discovery in this case until the Supreme Court clarifies the applicable legal framework and standards and provides material guidance regarding the law in this area that will shape the analysis of this case before the Court. After *Fisher II* is decided, discovery and the resolution of this matter can then proceed under the framework and standards articulated by the Supreme Court in its decision in that case.

1

I.        **The Disposition Of *Fisher* Has The Potential To Significantly Affect This Litigation**

Because *Fisher II* presents the Supreme Court with an opportunity to clarify the law

governing how public universities may consider race in the admissions process—as requested by

the petitioner in that case—it will almost certainly affect the standards that inform this

litigation.[1]

This is not the first time the Supreme Court has granted review in *Fisher*.  When the

Court first did so, several years ago, it clarified the standard of review for a public university's

consideration of race in the admissions process and remanded for the Fifth Circuit to apply the

standard.  *Fisher v. University of Texas at Austin*, 133 S. Ct. 2411 (2013) (*Fisher I*).  On remand,

the Fifth Circuit held (as it had before) that the University of Texas's holistic consideration of

race in admissions comported with the Equal Protection Clause.  758 F.3d 633 (5th Cir. 2014).  It

is that decision after remand that the Supreme Court has now agreed to review.  2015 WL

629286 (U.S. June 29, 2015).

The petition for certiorari in *Fisher II* (attached as Exhibit A), filed by the same counsel

as represent SFFA here, asks the Supreme Court to clarify further how public universities may

permissibly consider race in admissions and how courts should review the universities' actions.

Whatever guidance *Fisher II* provides is thus likely to inform the litigation and resolution of this

---

[1]        Because Harvard is a private institution, it is not subject to the Equal Protection Clause, which is at issue in *Fisher II*.  Harvard is a recipient of federal funds and therefore subject to Title VI of the Civil Rights Act of 1964.  SFFA in its Complaint contends that Title VI incorporates all aspects of the constitutional standard.  *See* Complaint ¶ 402 ("An institution that accepts federal funds violates Title VI when it engages in racial or ethnic discrimination that violates the Equal Protection Clause[.]").  That question—whether Title VI, as applied to private universities (which have their own rights under the First Amendment), incorporates every aspect of case law under the Equal Protection Clause—is unsettled, and Harvard reserves the right to argue that Title VI does not incorporate the Supreme Court's equal-protection jurisprudence wholesale.  For present purposes, however, that potential issue does not lessen the need for a stay of this case pending the decision in *Fisher II*, for any clarification or elaboration of the Supreme Court's constitutional standard in *Fisher II* will surely inform that question.

action, which is part of the same attack by SFFA and its counsel on the use of race-conscious policies in higher education admissions. SFFA has also sued the University of North Carolina ("UNC") in the Middle District of North Carolina, No. 1:14-cv-954, in a Complaint containing allegations comparable to those levied against Harvard here and the University of Texas in *Fisher*, similarly challenging UNC's undergraduate admissions process and claiming that process violates the Constitution and federal civil rights laws.[2] *Fisher I*, *Fisher II*, and the lawsuits against Harvard and UNC present a multi-front challenge to the current legal standards governing the consideration of race in admissions. Indeed, these lawsuits are so inextricably linked that the plaintiffs in all three suits are backed by the same individual, Edward Blum, and represented by the same counsel.

Further underscoring the relevance of *Fisher II* to this action, SFFA bases its Complaint largely on the premise that Harvard's admissions policy cannot survive the standard set forth in *Fisher I*—the standard that SFFA's own counsel are now asking the Supreme Court to clarify in *Fisher II*. Not surprisingly, then, the questions before the Supreme Court in *Fisher II* are closely related to those in this case:

- The petition for certiorari in *Fisher II* argues that a university's decision to consider race in admissions must be measured against the reasons that the university expressed at the time of making that decision. Petition for Certiorari, *Fisher v. University of Texas at Austin* (U.S. Feb. 10, 2015) (No. 14-981) ("*Fisher II* Pet.") 14-19. Similarly, SFFA alleges in this case that Harvard's admissions practices violate Title VI on the theory that it did not "stud[y] all of the available race-neutral alternatives and ha[ve] a strong basis in

---

[2]      Harvard understands that UNC also intends to move for a stay of that action in light of the Supreme Court's grant of certiorari in *Fisher II*.

evidence that none would work about as well as a race-based approach *before* turning to racial preferences."  Complaint ¶ 483.

- The petition for certiorari in *Fisher II* asks the Supreme Court to reject the University of Texas's assertion of a "qualitative" interest in diversity, arguing that the attainment of diversity must be measured in a precise, quantitative manner.  *Fisher II* Pet. 19-25.  Here, SFFA similarly alleges that "Harvard is not pursuing the critical-mass interest found permissible in *Grutter*."  Complaint ¶ 427.

- The petition for certiorari in *Fisher II* argues that a university may not consider race as a factor in all of its admissions decisions but may do so only for a small subset of applicants.  *Fisher II* Pet. 25-29.  In this case, SFFA devotes an entire count of its Complaint to the allegation that Harvard "does not merely use race as a factor in filling the last 'few places' in the entering freshman class."  Complaint ¶ 467; *see id.* ¶¶ 466-476.

- Although the petition for certiorari in *Fisher II* does not ask the Supreme Court to overrule any of its precedents, it argues that if the University of Texas can prevail under those precedents, "the Court will need to rethink its endorsement of" diversity as a compelling interest sufficient to justify a public university's consideration of race in admissions.  *Fisher II* Pet. 30.  Here, SFFA urges that "[a]ny decision allowing the use of racial preferences in the educational setting should be overruled."  Complaint ¶ 502.

Thus, although Harvard is confident that its admissions process comports with Title VI and the Constitution, the Supreme Court's decision in *Fisher II* is very likely to shape the legal standards that govern SFFA's theory of this case.  That upcoming clarification of the law by the Supreme Court has at least two important consequences for the litigation of this case.

4

*First*, by clarifying the importance—or unimportance—of various facts under the constitutional standard, *Fisher II* is likely to affect both fact and expert discovery in this case. *Fisher II* may affect the discovery that the parties seek from each other to establish their claims and defenses, the issues that the parties ask their testifying experts to address, and the parties' strategies in seeking and using all that information. For example, to the extent *Fisher II* clarifies whether and how a university may define diversity in a "qualitative" manner, it will undoubtedly shape the types of discovery that SFFA will take about how Harvard defines its interest in a diverse student body and how it pursues that interest through its admissions process. SFFA has already propounded discovery requests of sweeping breadth and intrusiveness—for example, seeking 6,400 full applicant files as a *preliminary sample* and the electronically stored information of no fewer than 54 custodians over four years. Harvard does not regard the discovery that SFFA currently seeks as appropriate, but to permit even a subset of this discovery to go forward for a full year before the Supreme Court issues an opinion that will clarify the applicable legal standards—and possibly to open the door to even *more* discovery later, to account for the guidance the Supreme Court has provided—would be a monumental waste of the parties' and the Court's resources. Additionally, the Supreme Court will undoubtedly clarify the contours of narrow tailoring in *Fisher II*, providing guidance that will affect the type of evidence SFFA seeks and the evidence that Harvard may wish to present to show that it permissibly considers race in its holistic admissions process and that no race-neutral alternatives would achieve the level of diversity in its undergraduate student body required to satisfy its educational objectives.

*Second*, the Supreme Court's decision in *Fisher II* may (as requested by the petitioner) alter the legal standard for the use of race in university admissions. A change in that legal

standard—which Harvard does not believe is warranted—would require Harvard (even in the

absence of this pending litigation) to review and evaluate whether its admissions process

comports with that standard.  If that review causes Harvard to change its admissions policies and

practices in any way, the discovery SFFA currently seeks—as to Harvard's *existing* admissions

policies and practices—would become largely irrelevant.  SFFA's forward-looking claims for

injunctive and declaratory relief against Harvard's current admissions process would be moot if

Harvard were to alter that process, and SFFA does not seek retrospective relief.  SFFA could

certainly choose to pursue a new claim against Harvard's revised undergraduate admissions

process, but the fact and expert discovery in such a suit would be completely different from the

discovery in this case.  The Court should not allow the sweeping discovery that SFFA seeks to

pursue in this case to go forward at all, but it certainly should not do so before Harvard has had

the opportunity to review its admissions process in light of the Supreme Court's forthcoming

guidance and to determine whether any revision to that process is necessary.

## II.      A Stay Is Warranted Under These Circumstances

This Court "is vested with the power 'to control the disposition of the causes on its

docket with economy of time and effort for itself, for counsel, and for litigants.'"  *New Balance

Athletic Shoe, Inc. v. Converse, Inc.*, No. 14-cv-14715, 2015 WL 685070, at *1 (D. Mass. Feb.

18, 2015) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *see also, e.g.*, *Marquis v.

FDIC*, 965 F.2d 1148, 1154 (1st Cir. 1992) ("It is beyond cavil that, absent a statute or rule to the

contrary, federal district courts possess the inherent power to stay pending litigation when the

efficacious management of court dockets reasonably requires such intervention.").  The Court

may "stay proceedings in its discretion through 'the exercise of judgment, which must weigh

competing interests[.]'"  *New Balance*, 2015 WL 685070, at *1 (quoting *Landis*, 299 U.S. at

254-255); *see id.* at *2-*3 (staying action pending related proceedings).  As the First Circuit has

explained, a district court may stay a given action "pending resolution of another" even if the

other action would "'not dispose of all the questions involved,'" as long as it would "narrow the

issues in the pending cas[e] and assist in the determination of the questions of law involved.'"

*Taunton Gardens Co. v. Hills*, 557 F.2d 877, 879 (1st Cir. 1977) (quoting *Landis*, 299 U.S. at

253).

      A stay pending the Supreme Court's decision in *Fisher II* would serve the interests of

justice and of efficient judicial administration by avoiding the immense costs and burdens of

discovery until the Supreme Court has clarified the law that will shape the discovery and affect

the legal standards in this case.  A stay will not unduly prejudice SFFA in light of the early stage

of this litigation.  Numerous other courts have stayed litigation in parallel situations.  *See, e.g.*,

*Cardenas v. AmeriCredit Fin. Servs. Inc.*, No. 09-cv-4978, 2011 WL 846070, at *3 (N.D. Cal.

Mar. 8, 2011) (staying litigation pending the Supreme Court's decision in *AT&T Mobility LLC v.*

*Concepcion*, 131 S. Ct. 1740 (2011), because of the "possib[ility] that the Supreme Court

[would] provide general guidance on" the key question of law); *Cent. Valley Chrysler-Jeep, Inc.*

*v. Witherspoon*, No. 04-cv-6663, 2007 WL 135688, at *11 (E.D. Cal. Jan. 16, 2007) (staying

litigation pending the Supreme Court's decision in *Massachusetts v. EPA*, 549 U.S. 497 (2007),

on the basis "that the legal issues in this case will be greatly simplified if the Supreme Court

reaches the merits of the *Massachusetts v. EPA* case"); *In re Literary Works in Electronic*

*Databases Copyright Litigation*, No. M-21-90, 2001 WL 204212, at *3 (S.D.N.Y. Mar. 1, 2001)

("The Supreme Court's review of *Tasini* is likely to have a significant, if not dispositive, impact

on the cases here.  Proceeding with this litigation several months before the Supreme Court more

precisely defines the claims at issue would be unnecessarily wasteful of both the Court's and the

litigants' resources."); *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012) (a

court may "properly exercise its staying power when a higher court is close to settling an important issue of law bearing on the action"); *Carter v. U.S.*, No. 06-cv-225, 2007 WL 2439500, at *3 (D. Vt. Aug. 23, 2007) ("It is common practice in [the Second] Circuit to postpone the final disposition of a case pending an upcoming decision in the United States Supreme Court."). This Court should follow these examples and stay this litigation pending the Supreme Court's resolution of *Fisher II*.

*/s/ Seth P. Waxman*

Seth P. Waxman (*pro hac vice*)
Paul R.Q. Wolfson (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
Tel: (202) 663-6800
Fax: (202) 663-6363
seth.waxman@wilmerhale.com
paul.wolfson@wilmerhale.com

Debo P. Adegbile (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 295-6717
Fax: (212) 230-8888
debo.adegbile@wilmerhale.com

Felicia H. Ellsworth (BBO #665232)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6687
Fax: (617) 526-5000
felicia.ellsworth@wilmerhale.com

Dated:  July 6, 2015                                    *Counsel for Defendant President and*
                                                        *Fellows of Harvard College*

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to those indicated as non-registered participants on July 6, 2015.

                      /s/ Seth P. Waxman
                      Seth P. Waxman