UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> PRESIDENT AND FELLOWS OF HARVARD COLLEGE (HARVARD CORPORATION), <br><br> Defendant. | Civil Action No. 1:14-cv-14176-ADB <br><br> Leave to File Granted July 21, 2015 (Dkt. 77) |

### REPLY MEMORANDUM
### IN SUPPORT OF HARVARD'S MOTION TO STAY

In an opposition laden with more invective than analysis, Plaintiff Students for Fair Admissions, Inc. ("SFFA") portrays as radical the common-sense notion that before the parties undertake a year's worth of costly and intrusive discovery, they should wait for the Supreme Court's imminent clarification of the law—a clarification invited by SFFA's own counsel, in a suit backed by its President. In addition to misstating this Court's substantial discretion to manage its docket, SFFA overstates the prejudice its members would purportedly suffer from a temporary stay and sharply understates the relevance of *Fisher II*. By entering a stay pending the Supreme Court's resolution of that case, this Court would not be licensing "the obstructive tactics once employed to continue racial discrimination" during the Civil Rights era (Opp. 16); it would be exercising its discretion in the manner most consistent with fairness, efficiency, and judicial prudence.

I.      **SFFA Misstates The Law Governing Stays**

"It is beyond cavil that, absent a statute or rule to the contrary, federal district courts possess the inherent power to stay pending litigation when the efficacious management of court

1

dockets reasonably requires such intervention." *Marquis v. FDIC*, 965 F.2d 1148, 1154 (1st Cir. 1992). Harvard does not dispute that the power to stay litigation requires "'the exercise of judgment, which must weigh competing interests[.]'" *New Balance Athletic Shoe, Inc. v. Converse, Inc.*, No. 14-cv-14715, 2015 WL 685070, at *1 (D. Mass. Feb. 18, 2015) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254-255 (1936)).

SFFA errs, however, in suggesting that any potential prejudice to its members (which, as explained below, SFFA significantly overstates) is the *only* factor that should weigh in the Court's discretionary judgment. As SFFA's own cases establish, prejudice to the non-movant is just one factor that bears on the appropriateness of a stay. In *Alves v. Prospect Mortgage, LLC*, No. 13-cv-10985, 2013 WL 5755465, at *2 (D. Mass. Oct. 22, 2013), for example, this Court identified three factors affecting whether to stay litigation pending the outcome of related proceedings: "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party without a stay; and, (3) judicial economy" (internal quotation marks omitted). And in *Goldhammer v. Dunkin' Donuts, Inc.*, 59 F. Supp. 2d 248 (D. Mass. 1999), the Court identified six factors that courts weigh "in determining whether to grant a stay because of parallel litigation in a foreign forum," of which prejudice to a party is just one. *Id.* at 252-253. Notably, although SFFA cites *Goldhammer* for the proposition that the power to grant a stay should be exercised sparingly, the Court in that case *granted* a stay (*id.* at 253), despite finding that doing so would cause some prejudice to the non-moving parties (*id.* at 255).[1]

SFFA's suggestion that prejudice to the non-movant is at least the preponderant factor relies on the Supreme Court's statement that "the suppliant for a stay must make out a clear case

---

[1] *See also Consol. Edison Co. of New York v. United States*, 30 F. Supp. 2d 385, 389 (S.D.N.Y. 1998) (identifying "five factors courts consider in deciding whether to grant a stay" pending overseas litigation).

of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255. But that statement does not imply that where granting a stay would prejudice the non-movant and denying it would prejudice the movant, the former harm should outweigh the latter. It addresses only the fact that a movant—who bears the burden of justifying the stay—must carry that burden to demonstrate that these competing harms weigh in favor of a stay. Moreover, the Supreme Court clarified that "[c]onsiderations such as these … are counsels of moderation rather than limitations upon power." *Id.* Here, the balancing of the applicable factors weighs in favor of a delineated stay, and this Court's discretion to manage its docket authorizes it to take that action.[2]

Finally, SFFA argues (at 2) that "a stay 'is rarely appropriate' when the parallel litigation 'will not dispose of the entire case.'" But the case from which SFFA quotes—*Chavous v. D.C. Financial Responsibility & Management Assistance Authority*, 201 F.R.D. 1 (D.D.C. 2001)—says nothing of the sort. It says that "a stay of discovery pending determination of *a motion to dismiss* is rarely appropriate when *the pending motion* will not dispose of the entire case[.]" *Id.* at 3 (internal quotation marks omitted) (emphasis added). On the question that is actually before this Court—whether to stay this case pending related litigation—the First Circuit has said quite the opposite, holding that a district court may stay a given action "pending resolution of another" even if the other action would "'not dispose of all the questions involved,'" as long as it would "narrow the issues in the pending cas[e] and assist in the determination of the questions of law

---

[2] SFFA also argues (at 3) that "a stay is especially difficult to secure in cases where the plaintiff has 'alleged … continuing harm and sought … injunctive or declaratory relief.'" But the language that SFFA quotes from *Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005), says no such thing; it simply mentions that a prior case declined mandamus to disturb a stay in part because the plaintiff was seeking only damages.

3

involved.'" *Taunton Gardens Co. v. Hills*, 557 F.2d 877, 879 (1st Cir. 1977) (quoting *Landis*, 299 U.S. at 253).

## II. SFFA Overstates The Prejudice That A Stay Would Cause

SFFA also overstates the degree of prejudice that would actually result from a temporary stay pending the resolution of *Fisher II*.[3] There are two principal problems with SFFA's argument.

*First*, even an eleven-month delay in this litigation (from the current date to the last possible date for resolution of *Fisher II* in June 2016) would not be particularly significant, in light of the fact that (1) more than a quarter-century has elapsed since the Department of Education examined (and exonerated) Harvard's race-conscious admissions practices against essentially the same challenge SFFA now brings; (2) SFFA has taken the position that discovery in this case should extend well into 2016 in any event; and (3) this delay is the direct result of parallel litigation (in three courts at once) brought by SFFA's counsel and backed by its President.

*Second*, at most a small handful of SFFA's purported members[4]—and quite possibly none—would be affected by that delay. Although SFFA suggests (at 3) that "the 2016-2017 cycle" is "the first admissions cycle in which a judgment in SFFA's favor likely would take effect" absent a stay, that is unlikely. Summary judgment motions are not due until mid-October

---

[3] Because this is not a class action, the only prejudice alleged by SFFA that could possibly be relevant to the Court's consideration of a stay is the prejudice that a stay would cause to SFFA's own members.

[4] Harvard refers to SFFA's purported members as "members" for purposes of this motion, but reserves the right to argue that SFFA lacks standing to pursue this litigation because its purported members lack any genuine membership relationship with the organization, and further reserves the right to argue that the only members whose individual standing can be attributed to SFFA are those who joined prior to the filing of this action.

2016, with briefing through late November 2016. Even if the Court were to rule quickly on the motions, any judgment in SFFA's favor would be unlikely to issue before Harvard was already well into its regular admissions cycle for 2016-2017. Thus, the earliest admissions cycle to which any judgment in SFFA's favor could apply would be 2017-2018.

The proposed stay would therefore not affect any of SFFA's rejected-applicant members ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (*see* Declaration of Felicia H. Ellsworth ("Ellsworth Decl."), Ex. B), as those members would by that point be ineligible to apply for transfer admission.[5] And it would not affect the ability of all but three of SFFA's future-applicant members to apply for freshman admission. The only three members who intend to apply for admission in 2017-2018 or subsequent cycles plan to apply in three different years (▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, *see* Ellsworth Decl., Ex. B), so a temporary stay of no more than a year could affect at most a single one of them.

Moreover, Harvard would have ample grounds to seek a stay pending appeal of any adverse judgment—and given the typical timeline of proceedings in the First Circuit and the Supreme Court, it is far likelier that the first admissions cycle affected by any decision would be 2019-2020, an admissions cycle in which SFFA has identified no member who plans to apply. See *id.* (identifying future-applicant members who plan to apply in ▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆). Since the ▆▆▆▆▆ applicant would not be adversely affected by delaying the effect of an adverse judgment from 2019 to 2020, the likeliest scenario is that *not one* of SFFA's members would be harmed by a stay.

---

5  *See* Harvard College Admissions & Financial Aid, Transfer Eligibility, https://college.harvard.edu/admissions/application-process/transferring-harvard-college/transfer-eligibility (last visited July 20, 2015).

SFFA thus substantially overstates the likelihood that a stay in this matter would cause any prejudice. Such a stay might well have zero effect on any of SFFA's purported members. At most, a stay could conceivably affect *one* of SFFA's three members who claim that they plan to apply for freshman admission during the ███████████████████████ admissions cycles.

The likelihood of prejudice to a non-movant is, as noted above, just one among the factors that a district court must balance in determining whether to enter a stay. Here, the speculative possibility of an adverse effect on a single hypothetical applicant does not justify allowing eleven months' worth of costly and burdensome discovery, much of which implicates serious individual privacy considerations, to proceed against a non-profit educational institution while—at the behest of SFFA's own counsel—the Supreme Court clarifies the governing law.[6]

### III.  SFFA Understates The Relevance Of *Fisher II*

SFFA seriously understates the connection between this case and *Fisher II*. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Ellsworth Decl., Ex. A. SFFA's President, who has also been heavily involved in the *Fisher* litigation, has explained publicly that he sees that case and this one as parts of an integrated litigation strategy.[7] Even aside from the fact that *Fisher II* will provide just

---

[6]  SFFA has even less basis to suggest (at 5) that a temporary stay could result in the destruction of evidence.

[7]  *See* Houston Chinese Alliance, *Edward Blum Speaks About The Legal Battle Against Harvard University*, YouTube (Apr. 26, 2015), https://www.youtube.com/watch?v=VVVuhD0KelQ ("When we filed [*Fisher*], we didn't ask the Court to [end the use of race and ethnicity in higher education], because we felt that it would take a couple of cases to develop our theories and find the right set of facts to do it. But if we

the fifth occasion in the past four decades for the Supreme Court to address the permissible consideration of race in university admissions, it strains credulity for SFFA to contend that *Fisher II* bears only marginal relevance to this case.

As Harvard's opening Memorandum explains, the petition for certiorari in *Fisher II* asks the Supreme Court to resolve a number of questions that lie at the very heart of SFFA's theory of this litigation. It asserts, for example, that a university's decision to consider race in admissions must be measured against the reasons that the university expressed at the time of making that decision, as opposed to those that the university asserts in litigation. Petition for Certiorari, *Fisher v. University of Texas at Austin* (U.S. Feb. 10, 2015) (No. 14-981) ("*Fisher II* Pet.") 14-19. It asserts (at 19-25) that a university must measure its attainment of diversity in a quantitative, not qualitative, manner. And it asserts (at 25-29) that a university may consider race only in filling the last few places in a class.

In its opposition, SFFA now claims (at 12) that these issues have all been so clearly settled that *Fisher II* cannot clarify the law. But the Fifth Circuit obviously did not regard them as settled, or SFFA's lawyers would not be asking the Supreme Court for relief. And while SFFA claims that certain of the issues are not even before the Court in *Fisher II*, that assertion is impossible to square with the petition for certiorari.[8] Despite SFFA's effort to paint the grant of

---

win again at the Supreme Court, we think the hurdle that they articulated the first time in 2013, that hurdle will be raised, it will be more fully fleshed out, and at least for the next two or three years while the Harvard lawsuit is being pursued and the UNC lawsuit is being pursued, it will be harder for universities to use race and ethnicity[.]").

[8] *Compare* Opp. 13 (arguing that *Fisher II* does not "raise the question whether 'a university's decision to consider race in admissions must be measured against the reasons that the university expressed at the time of making that decision') *and id.* ("SFFA alleges that Harvard is using race neither as a 'plus' factor in accordance with *Grutter* nor to fill the 'last few places' in the freshman class in accordance with [*Bakke*]. *Fisher II* raises none of these issues." (citations omitted)) *with Fisher II* Pet. 15 (criticizing the Fifth Circuit for having been "'persuaded' by UT's … post hoc rationalizations for its decision to reintroduce racial

certiorari in *Fisher II* as a drama-less and irrelevant affair, SFFA's own President has stated that he expects the Supreme Court's resolution of *Fisher II* to "flesh[] out" the law governing the consideration of race in admissions and to "continue[] to narrow the use of race."[9]

SFFA accuses Harvard of insufficient specificity in addressing how the Supreme Court's resolution of *Fisher II* will affect discovery in this case. It is, of course, difficult to be precise in addressing the effect of an opinion without knowing its contents. But Harvard *has* identified the issues on which *Fisher II* could well shape the law, and any clarification of the law on those issues surely would affect not only the scope of permissible fact and expert discovery, but also the parties' discovery and litigation strategies, which naturally operate under the Supreme Court's guidance on the governing standards for the use of race in university admissions. As this Court is already aware (*see* SFFA's Motion to Compel, Doc. 64), the parties disagree about whether SFFA is entitled to discovery of the massive scope it seeks. The balance the Court will need to strike on this and other disputes regarding the scope of permissible discovery will undoubtedly be influenced by the contours of the governing law.[10]

---

preferences") *and id.* at 27 ("*Bakke* never contemplated the wholesale use of race in the scoring of all applicants.").

[9]   *See supra* note 7; Tamar Lewin & Richard Pérez-Peña, *Colleges Brace for Uncertainty as Court Reviews Race in Admissions*, N.Y. Times, July 1, 2015, at A14 ("'Like most Americans, I hope this case presents the court the opportunity to end racial classifications in higher education, in total,' said Edward Blum, the president of the Project on Fair Representation, which provided counsel to Ms. Fisher …. 'But if the court just continues to narrow the use of race, we would see that as a great victory, too.'").

[10]   SFFA also derides as "absurd" (Opp. 7) the notion that *Fisher II* might cause Harvard to reexamine its admissions practices, causing this litigation to become moot and wasting the intrusion and expense of a year's worth of discovery. But SFFA's suggestion that this case would *not* be mooted by a change to Harvard's admissions practices depends on the notion that it would fall within the voluntary-cessation exception to mootness. Opp. 7 (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). That exception does not apply where it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur" (*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000)), as

\* \* \*

For the foregoing reasons and those expressed in Harvard's opening Memorandum, Harvard respectfully requests that the Court enter a temporary stay of this litigation pending the Supreme Court's forthcoming decision in *Fisher II*.[11]

/s/ *Felicia H. Ellsworth*
Felicia H. Ellsworth (BBO #665232)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6687
Fax: (617) 526-5000
felicia.ellsworth@wilmerhale.com

Seth P. Waxman (*pro hac vice*)
Paul R.Q. Wolfson (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
Tel: (202) 663-6800
Fax: (202) 663-6363
seth.waxman@wilmerhale.com
paul.wolfson@wilmerhale.com

Debo P. Adegbile (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street

---

would surely be true if the Supreme Court's ruling in *Fisher II* led Harvard to substantially revise, and perhaps abandon altogether, a practice it considers essential to its educational mission.

[11] SFFA asks (at 16 n.4) that the Court "issue a written explanation" of any decision granting the requested stay, so as "to aid the First Circuit and potentially the Supreme Court in reviewing that decision." Of course, whether or not accompanied by written reasoning, a temporary stay of litigation is not ordinarily appealable. *See, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 10 n.11 (1983) ("[A] stay is not ordinarily a final decision for purposes of § 1291, since most stays do not put the plaintiff 'effectively out of court.'").

                                                                        New York, NY 10007
Tel: (212) 295-6717
Fax: (212) 230-8888
debo.adegbile@wilmerhale.com

Dated:  July 23, 2015                                              *Counsel for Defendant President and Fellows of Harvard College*

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to those indicated as non-registered participants on July 23, 2015.

                                        /s/ Felicia H. Ellsworth
                                        Felicia H. Ellsworth