```
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2
       * * * * * * * * * * * * * *
 3     STUDENTS FOR FAIR            *
       ADMISSIONS, INC.,            *
 4           Plaintiff,             *
                                    *
 5            vs.                   *        CIVIL ACTION
                                    *        No. 14-14176-ADB
 6     PRESIDENT AND FELLOWS OF     *
       HARVARD COLLEGE, et al,      *
 7           Defendants.            *
       * * * * * * * * * * * * * *
 8
              BEFORE THE HONORABLE ALLISON D. BURROUGHS
 9                  UNITED STATES DISTRICT JUDGE
                         STATUS CONFERENCE
10
     A P P E A R A N C E S
11
              CONSOVOY McCARTHY PARK PLLC
12            3033 Wilson Boulevard, Suite 700
              Arlington, Virginia 22201
13            for the plaintiff
              By:  William S. Consovoy, Esq.
14

15

16            CONSOVOY McCARTHY PARK PLLC
              Ten Post Office Square, 8th Floor
17            Boston, Massachusetts 02109
              for the plaintiff
18            By: Patrick Strawbridge, Esq.

19

20

21                                  Courtroom No. 16
                                    John J. Moakley Courthouse
22                                  1 Courthouse Way
                                    Boston, Massachusetts 02210
23                                  July 21, 2015
                                    2:00 p.m.
24

25
```

1      **APPEARANCES CONTINUED**

2

3              BURNS & LEVINSON LLP
               One Citizens Plaza, Suite 1100
4              Providence, Rhode Island 02903
               for the plaintiff
5              By:  Paul M. Sanford, Esq.

6

7              WILMER CUTLER PICKERING HALE and DORR LLP
               1875 Pennsylvania Avenue, NW
8              Washington, D.C. 20006
               for the des
9              By: Seth P. Waxman, Esq.

10

               WILMER CUTLER PICKERING HALE and DORR LLP (Bos)
11             60 State Street
               Boston, Massachusetts 02109
12             for the defendants
               By: Felicia H. Ellsworth, Esq.

13

14

15     ALSO PRESENT:  Ara Gershengorn, Esq., Harvard Office of
                       General Counsel

16

17

18

19

20

21

22                    CAROL LYNN SCOTT, CSR, RMR
                        Official Court Reporter
23                    One Courthouse Way, Suite 7204
                      Boston, Massachusetts 02210
24                        (617) 330-1377

25

1                          <u>P R O C E E D I N G S</u>

2              **THE CLERK:**  All rise.  Court is in session.

3     Please be seated.

4              This is civil action 14-14176, *Students for Fair*

5     *Admissions, Inc. versus President and Fellows of Harvard.*

6              Will counsel identify themselves for the record.

7              **MR. SANFORD:**  Good afternoon, Your Honor.

8     Paul Sanford on behalf of the plaintiff Students for Fair

9     Admissions.

10             **MR. STRAWBRIDGE:**  Patrick Strawbridge from

11    Consovoy McCarthy Park, also on behalf of Students for Fair

12    Admissions.

13             **MR. CONSOVOY:**  Will Consovoy for Students for

14    Fair Admissions, Your Honor.

15             **MS. ELLSWORTH:**  Good afternoon, Your Honor.

16    Felicia Ellsworth for Harvard College.

17             **MR. WAXMAN:**  Seth Waxman, also for Harvard

18    College.

19             **MS. GERSHENGORN:**  Ara Gershengorn, good

20    afternoon, Your Honor, for Harvard College.

21             **THE COURT:**  Thank you all.  We are in this

22    little courtroom today.  I actually kind of like it.  It

23    feels a little more intimate to me.

24             So I know we set this up as sort of a routine

25    status to kind of keep this on track.  And I want to sort of

1    rule on what I am prepared to rule on today and then have

2    some discussion about sort of what is next.

3              So Harvard has filed a motion to file under seal an

4    unredacted proposed reply memo of law and supporting

5    material in support of the Motion to Stay which I have read

6    and also a Motion for Leave to File a Reply Memorandum in

7    Support of a Motion to Stay which I also have read.  Both

8    those motions appear to be unopposed and, in any case, they

9    are both granted.

10             Then I also have sort of two sets of documents

11   here.  I have Harvard's Motion to Stay, SFFA's Opposition to

12   the Motion to Stay, now Harvard's reply memo which I guess

13   under the rule you have to refile but I do have a copy in

14   front of me, and then Plaintiff's Motion to Compel

15   Production which I don't believe has been responded to yet;

16   is that right?

17             Okay.  So, and on top of that, issues one and two,

18   on top of that, as you all are no doubt aware, I ruled on

19   the motion to intervene and the intervenors have filed a

20   Notice of Appeal in that so I sort of feel like those are

21   the three general topics.

22             I have skimmed Plaintiff's Motion to Compel

23   Production and I am going to put that aside until Harvard

24   has a chance to respond to it.

25             If anybody does have anything they want to say on

```
1        that today, that is fine but I really haven't thought hard
2        about that motion or spent any time reading it but I have
3        received it.
4              My preliminary question on the issue of the stay --
5        I know there is a lot of appellate specialists back there
6        and I am not one -- do you all have thoughts on whether or
7        not I lose jurisdiction while the motion to intervene is
8        pending, the appeal on the motion to intervene is pending?
9              I have tried to do some research on it and the
10       answer seems very unclear to me.  We will do some more on
11       that but I thought rather than spend too much on it, I know
12       you are the biggest, a big appellate specialist crew out
13       there and I thought maybe one of you might know the answer.
14       I actually had lunch with a First Circuit Judge and I said
15       just --
16             (Laughter.)
17             THE COURT:  -- an interlocutory appeal he is,
18       like, I don't know.  So I am going to throw it back out to
19       you guys.  Do you have any thoughts on about what happens to
20       my jurisdiction?
21             MR. CONSOVOY:  This is a guess, Your Honor, so
22       please don't hold me to it.  I believe their appeal is under
23       the Collateral Order Doctrine so they have an, that's how
24       they're getting up on appeal, so I believe you still have
25       jurisdiction over the remainder of the case while they are
```

1    appealing, if that's the question you're asking.  But that's

2    based on no research.

3              **THE COURT:**  Okay.

4              **MR. WAXMAN:**  I'll offer you my tentative

5    off-the-cuff view and you can hold me to it for whatever it

6    is worth.

7              I think that's correct, I think that you don't lose

8    jurisdiction.  I would be quite surprised if you did because

9    in *Grutter* as I recall there was a denial of a motion to

10   intervene and the case went forward during the pendency of

11   the appeal on the denial of a motion to intervene.  And the

12   Sixth Circuit held that intervention, that the intervenors

13   were entitled to participate, they just joined and, you

14   know, I don't know, restarted discovery but augmented

15   discovery.  So I think, as far as I know, you can continue.

16   We can all continue to talk here today.

17             **THE COURT:**  And I understand that everyone in

18   this room would probably like it to continue in some form or

19   another, just, we will just ignore those people over there.

20             Has any sort of scheduling order been set in that?

21   From the intervenors?

22             **MR. CONSOVOY:**  Not to my knowledge.  I saw the

23   notice of appeal but I have not seen a scheduling order.

24             **THE COURT:**  Okay.  So on the one hand we have

25   the intervenors and one can obviously make an argument that

1    we should go forward in the face of the motion to intervene

2    and the appeal and you can also make an argument that given

3    that what they want to do is participate fulsomely in

4    discovery that there are some counterarguments that perhaps

5    it should be stayed.

6           And then on top of that we have Harvard's motion to

7    stay and whatever the *Fisher* overlay is, I do feel like the

8    gravitational forces of the universe are sort of pushing me

9    towards a stay on this.  That being said, and this is not

10   meant to be any sort of ruling on the merits because I

11   haven't delved into it deeply enough today, and I am going

12   to give you all an opportunity to argue anything that you

13   want beyond what is in the briefs today but I really don't

14   want to stay the case in its entirety.

15          It appears to me, and, again, I will be interested

16   in your opinions on this, but whichever way *Fisher II* goes,

17   and I am not totally sure why the Supreme Court is rehearing

18   it, I am not sure exactly what their interest is, but it

19   seems unlikely to me that it will completely moot this case.

20          So if there are things that we can do during the

21   pendency of *Fisher* and the pendency of this appeal, I would

22   like to do some of those things, if there are those things

23   that we can identify will need to be done in any case.

24          And I say that understanding that Harvard wants a

25   complete stay and that SFFA wants no stay at all; but I am

1   thinking about sort of a middle ground where we get some of

2   the fundamentals of discovery done and then, so there is not

3   too much replication depending on how *Fisher* works out, how

4   the motion to intervene works out.

5        So, again, I am not going to rule on the motion

6   today.  I just got Harvard's brief.  I have read SFFA's

7   opposition but not carefully enough.  I thought we could use

8   this as sort of a hearing, quasi hearing opportunity on it.

9        Mr. Consovoy, you look like you want to speak.  You

10  can go first.

11       **MR. CONSOVOY:**  Yes.  Obviously our papers, you

12  know, you're right, Your Honor, we definitely would like the

13  whole case to go forward.  I think, I hope we can get

14  agreement today on these two basic propositions and I think

15  we will debate the rest.

16       But Count I is a claim of invidious discrimination

17  against Asian Americans.  I don't suspect Harvard will leave

18  that issue before the Supreme Court.  That has nothing to do

19  with an interest in critical mass or anything like that.  It

20  is an old fashioned, you know, under *Yick Wo* and the cases

21  that are over a century old, saying you cannot intentionally

22  discriminate against any racial group in this setting, one.

23       Two, Count II of the Complaint has to do with

24  racial balancing, that you are balancing the class in some

25  of a, you know, a quota system.  I hope and suspect that

1    Harvard will also agree that that is, that *Fisher II* will

2    never make that permissible.  That has been banned for a

3    long time, decades.  Going back to *Bakke*, it was reiterated,

4    that's been a, you know, against the rules in *Grutter* and in

5    *Fisher I* and Texas is not suggesting that they're engaging

6    in racial balancing.

7         Those are the two sort of premier claims and I

8    think they would get most of the discovery done.  And I

9    don't think there is any allegation that the Supreme Court's

10   decision no matter what it is doing will shed any more light

11   on that than we have now.

12        **THE COURT:**  Mr. Waxman or Ms. Ellsworth, do

13   you want to respond?

14        **MR. WAXMAN:**  Well, I think, I take Your

15   Honor's point that it may well be that what the Supreme

16   Court decides in *Fisher II* is anybody's guess, what the

17   Supreme Court will decide in *Fisher II*.

18        As we pointed out in our reply, and I won't

19   reiterate it here, the face of the petition for certiorari

20   and the public statements of Ms. Fisher's lawyers suggest

21   that what the Supreme Court is being asked to do is to

22   substantially affect the way in which the current rules

23   under which race is taken into account.  I mean, if all

24   *Fisher II*, if the only complaint in *Fisher II* was that there

25   was a footfall in the application of an agreed upon

1    standard, it's very, very unlikely that the Supreme Court

2    would be taking the case again.  That's not what the Supreme

3    Court does.  And it's not what it's being asked to do and so

4    we don't really know.

5            And since, I would say that on the issue of whether

6    it would render this lawsuit moot or not, No. one, I think

7    that's not the issue and I'll come back to that; but, No.

8    two, it may, in a sense, that there is no retrospective

9    relief being requested here, this is, they are seeking an

10   injunction to stop Harvard from conducting its holistic

11   admissions process the way that it currently has been doing.

12           And in the event that the Supreme Court were to do

13   any one of the things that their cert petition asks the

14   Court to do, including determining that what they call

15   "qualitative diversity" as opposed to "quantitative

16   diversity" is inappropriate, or that the consideration of

17   race should be limited to, quote, the last few spaces in a

18   class, or that race can be taken into account only for

19   reasons that were expressed by the University at the time it

20   began doing so, all of which the Supreme Court is being

21   asked to consider.

22           Harvard, independent of this lawsuit, Harvard would

23   have to reconsider whether or not it can continue to conduct

24   its admissions program the way it has been and has been long

25   since *Bakke* was decided.  That would, in fact, render the

1   Complaint in this case moot.  Harvard would consider whether

2   it had to change.  If it did change, they could bring a

3   claim saying we haven't changed it enough but there is a

4   very real prospect that if the Supreme Court does everything

5   that is being asked of it, the University will have to

6   consider on a going forward basis how it continues to

7   operate.

8           We believe that our program satisfies *Fisher I* and

9   *Grutter*, *Gratz* and *Bakke* but so did the University of Texas

10  and so did the Fifth Circuit.  And we think that the

11  University of Texas, in fact, has complied.  The Supreme

12  Court has decided to consider the question whether they have

13  and what guidelines ought to apply.  And that has bearing I

14  think in two regards, in addition to the fact that it may,

15  in fact, moot the prospective relief challenge here.

16          One is that it is going to inevitably affect the

17  scope and the magnitude of discovery in this case.  Now,

18  there is a suggestion that, well, Count I says that we're

19  intentionally discriminating against Asian Americans.  Count

20  II says we're engaging in racial balancing.

21          I don't think that the plaintiffs are prepared to

22  dismiss Count III and Count IV and, frankly, all of the

23  discovery in this case, I don't think it can be segregated.

24  We're asking about -- they're asking to examine the same

25  documents, examine the same witnesses, respond to all the

1   same contention interrogatories.  We're either going to go

2   forward with the discovery or we're not.  And no one can say

3   the extent to which the scope of permissible discovery will

4   be affected.

5          Now, their position is, well, we're not going to

6   ask for any more discovery no matter what *Fisher* decides and

7   that's because, and, you know, we'll get into this when you

8   finally adjudicate the Motion to Compel and see what we are

9   prepared to produce.  They're asking for everything.  And

10  the notion that there is going to be nothing left more for

11  us to ask for, you just give us everything and then we will

12  decide in light of *Fisher* what subset of that we need.

13         A, it is inappropriate to place on Harvard, a

14  nonprofit institution, discovery that is going to be

15  intrusive, burdensome and enormously expensive.  The types

16  of discovery that they're trying to get in this case, and

17  that if we go to the merits of the case they will be, if

18  we -- on some subset of which they would be entitled to once

19  we understand what the constitutional standard is, has

20  enormous student privacy concerns, enterprise concerns for a

21  private educational university and how it goes about making

22  decisions.

23         And I think the balance in evaluating where the

24  balance lies in terms of a stay or not stay, I think it

25  would be a mistake to think that you can segregate discovery

1    as to certain claims of the Complaint and not others.  And

2    it also would be a mistake not to consider the fact that the

3    request for a stay here is a consequence of a very

4    considered decision by the leadership, the leadership of

5    SFFA to litigate the issue of the permissible use of race in

6    university admissions in three different courts at the same

7    time.  And in light of all the circumstances, not to mention

8    the fact that the First Circuit may, in fact, conclude that

9    the intervenors indeed have a right to participate, and what

10   they want to participate in is discovery, that on balance we

11   think the Court should exercise its discretion and, in fact,

12   stay discovery in this case until the Supreme Court explains

13   what the relevance is.

14            **THE COURT:**  So -- I am going to give you

15   another chance to talk, Mr. Consovoy, you can sit -- he was

16   just about to stand.  I am just saving the wear and tear on

17   his knees for a second.

18            I am not contemplating segregating discovery by

19   count.  And I don't, I didn't actually understand that that

20   is what Mr. Consovoy was asking for.  I think what you were

21   saying is that there are two counts that are going to be

22   unaffected and we may as well do discovery since those two

23   counts will survive.  But, in any event, if I have

24   misunderstood you, I am not going to segregate discovery by

25   count.

1          And I, you know, I understand that we have the

2    intervenors and we have *Fisher II* and those two things have

3    the capability of changing the landscape significantly over

4    the next few months between the two of them.  I have not

5    decided what I am going to do on the motion.  I need to look

6    at it much more closely than I have but perhaps in an

7    overabundance of practicality, what I am wondering is if

8    there is, once the intervenors are resolved and once *Fisher*

9    *II* is resolved, I would like to have this case in a position

10   to move expeditiously forward.  And I am wondering if there

11   are things that we can do now to position ourselves for

12   that.

13          And I may be naive about this and I may not

14   understand Harvard's admissions process but what I was sort

15   of thinking was that SFFA is going to need to look at some

16   of these applications, look at some of the basic discovery,

17   figure out how they're going to load the information into a

18   computer and how they are going to do whatever analytics

19   they're going to do on it and that maybe it made sense to

20   give them some, you know, smaller sample of applications.

21   They can get their system and their processes in place so

22   that when it does become more clear what they're going to

23   get and what they're not going to get, that they can just

24   load information rather than spend the time trying to figure

25   out how to handle that information.

1        I may be completely off base about that but that is

2   what I was sort of thinking, just some way to get processes

3   in place so when all these issues resolve themselves we can

4   move forward without wasting any more time.

5        It was your turn, go ahead.

6        **MR. CONSOVOY:**  Direct, responding to your

7   question directly, we would have to talk to our experts but

8   I suspect our processes are ready to go.  We are waiting on

9   some discovery.  We haven't had any yet.  This case has been

10  pending for a long time now.  To have no documents produced

11  is I would confess frustrating.

12       I think some of the concerns we raised at the

13  initial scheduling conference have borne out, how long it

14  took to get a protective order in place, how long it took to

15  negotiate electronic discovery.

16       We represent something like over 16,000 students

17  now.  64 Asian-American organizations filed a Complaint with

18  the Department of Education.  That Complaint was dismissed

19  because the Department of Education told them that this case

20  is proceeding so, therefore, they will not review their

21  Complaint.

22       And now Harvard comes here to say stop this case

23  from proceeding, now that the Complaint is dismissed, and

24  then I gather Harvard is going to tell the Supreme Court

25  please don't do anything to change what the University of

1   Texas did but if you do, to Your Honor, please look at

2   footnote one of our stay paper where we say even if we lose

3   terribly in *Fisher II*, we're going to argue that it really

4   has an affect on us because we're a private institution

5   that's governed by Title VI and not by the Fourteenth

6   Amendment.  So if there is a concern of litigation strategy

7   here, I think it's Harvard's and not ours.

8           Second, I wrote the *Fisher* petition.  I would

9   direct Your Honor to -- I think it really solves these

10  issues more than we can debating it -- the brief in

11  opposition submitted by the University of Texas.  They said

12  everything that Mr. Waxman said.  Well, surely --

13          **THE COURT:**  Probably not as well.

14          (Laughter.)

15          **MR. CONSOVOY:**  Well, no one could.  But it is

16  a footfall case.  They're just asking for review.  And,

17  look, they have this Harvard case going.  If you really want

18  to get to the big issues, wait for that one.

19          In response we said no, you're right, you're right,

20  this is about correcting error from the Fifth Circuit and

21  you don't normally do that but this was a pretty big error

22  and this is a pretty big case.

23          And, two, this is a big issue irrespective of what

24  happened with the larger issues.  This case is about whether

25  strict scrutiny was correctly applied.  I think if you read

1    those papers you will see that almost everything Mr. Waxman

2    said about *Fisher* actually is inaccurate, that we're not

3    challenging them to limit them to *Bakke* there.  We're saying

4    that their arguments don't stand up to their own reasons.

5    And I won't go on about it more than that.

6          I agree with Your Honor that segregating discovery

7    is going to be difficult here.  I think my point was, and I

8    think you definitely grasped it, was -- and I didn't hear

9    Mr. Waxman say differently -- Counts I and II are against

10   the law now and they will be against the law after *Fisher*.

11   They are the lead count in the Complaint.  They will be

12   unaffected by the case.

13         Harvard bears the burden of saying why a stay will

14   do something here.  And their argument seems to be we might

15   lose *Fisher* so badly that we might abandon the whole thing.

16   That's an unusual reason for someone to grant a stay, to

17   seek a stay, particularly when they say that if we lose,

18   we're going to argue that *Fisher* had no application to us.

19         I really do think the case should go forward.  It

20   will eliminate the concern about destruction of evidence,

21   witnesses, God forbid, passing away or moving out of the

22   jurisdiction.  We will add another admission cycle to this

23   process.  Every year 37,000 more students go through this

24   process.

25         The reason why this case is a big deal is because

1    this is a major Civil Rights action and there is an interest

2    in justice in cases like that going forward.  It would take

3    a really big reason on Harvard's part to stay it.  And I

4    understand there are convenience issues.  And I agree, you

5    know, could *Fisher* dictate certain changes to the legal

6    standard of summary judgment briefing, maybe, but we're

7    going to be done with discovery before we ever get to that.

8    There really, there just really isn't a basis for a stay.

9        And my last point is on the intervenors.  They

10    haven't sought a stay of the discovery pending appeal yet.

11    They could.  I think that would be something everyone would

12    want to look at if they did.  And if I recall their papers,

13    they were mostly interested in expert discovery.  Their

14    appeal will likely be resolved well in advance of expert

15    discovery.  They certainly haven't suggested they're going

16    to be producing facts.  And they certainly have said to us I

17    believe in their papers, I apologize if I'm wrong, if it was

18    in an email exchange, but that they would likely let Harvard

19    take the lead on propounding discovery on us.  They're not

20    going to add fact discovery.  So, if anything, we could

21    think about this when we get to expert discovery and see

22    where the intervenors are but I wouldn't let the tail wag

23    the dog on a stay here.  This is a big, big deal.

24                    **THE COURT:**  So, again, I haven't read the

25    papers thoroughly enough, especially since I just got some

1       of them today, to rule on this; but is there a smaller

2       subset of information that were I inclined to give some sort

3       of limited stay in this, is there some smaller subset of

4       information that would, "satisfy you" would be an

5       overstatement but that would help advance the case?

6                   **MR. CONSOVOY:**  So I think if you look at the

7       Motion to Compel, the sample of application files are a

8       major centerpiece and will take a large part of our work.  I

9       think the names, and I don't want to prejudice Your Honor's

10      review of the papers, but Harvard has said we've asked for

11      the names of alumni interviewers who they concede are third

12      parties in this case and who we would like to investigate,

13      interview some and maybe depose some but, you know,

14      third-party discovery which would have no real burden on

15      Harvard, you know.  They won't even give us the names.

16              So I would say could we at least, and maybe if Your

17      Honor, you know, over opposition grants a partial stay, we

18      could perhaps submit something in writing that could more

19      clearly detail the kinds of things that would be helpful but

20      getting files would be a huge step forward.  Getting the

21      names of the alumni interviewers would be a second huge step

22      forward.  And getting just basic materials that we can start

23      reviewing, the training materials, the instructions for

24      readers, their policies on affirmative action and why they

25      use it, stuff that they have and, you know, we're six months

 1   in and, yeah, discovery, you know, of some custodians in the

 2   Admissions Office, just the basics.  As you put it, sort of

 3   the ground floor of building the case.  I mean, at a minimum

 4   we would ask for that; but, again, I don't want, you know,

 5   we would oppose any stay of course.

 6            **THE COURT:**  I understand.

 7            Mr. Waxman, in terms of -- I take the application

 8   files and put them in a separate category.  And I think

 9   there is going to need to be a more fulsome discussion about

10   those applications and how many they get.  They have, you

11   have asked for an enormous number of things and I take it it

12   is going to be a lot of work for Harvard to redact those

13   sufficiently to give those to you.

14            But he might be making a reasonable proposal which

15   is that we start with some things that don't really infringe

16   on student privacy like the alumni interviewers and the

17   training manuals and all that sort of thing.

18            What is your view on starting with those things?

19            **MR. WAXMAN:**  I am hesitating only because I am

20   wondering whether my partner Ms. Ellsworth should speak

21   because she's been negotiating the discovery issues.  On the

22   other hand -- I'm always reluctant to pass up the

23   opportunity to stand up but --

24            (Laughter.)

25            **THE COURT:**  Well, that being said, I am always

1    delighted to have a woman stand up and speak in here.  It

2    doesn't happen that often.

3         (Laughter.)

4              **MR. WAXMAN:**  Well, that's easy.

5              **MS. ELLSWORTH:**  With that said.  So in terms

6    of what Mr. Consovoy has outlined as the kind of limited

7    baseline of discovery, I mean, I think as Your Honor has

8    recognized, there is some disagreement here about what that,

9    where that baseline should begin and end.

10        Certainly things like policies and training manuals

11   we could consider.  I don't hear Mr. Consovoy asking for the

12   files right now which is, of course, you know, both the

13   subject of a dispute here as well as one of the major

14   privacy interests.

15        We also have -- and this will be in our opposition

16   motion -- we have agreed to provide to SFFA the admissions

17   database and that contains we think, and, again, you will

18   see this in our papers, but we think most, if not all, of

19   what they purport to need from this huge number of files

20   that they're requesting so, you know, there is sort of

21   information that we see in the sense of the fields that are

22   available in the database that we consider being, producing

23   now and in the event of a limited stay, depending on how

24   Your Honor rules on this.

25        There are sort of, I think there is a way that we

1    could make some progress without handling and grappling with

2    some of these privacy issues that are so important to

3    Harvard and also have, you know, major implications for our

4    students and applicants and also the need for other

5    considerations.

6         I would like to just make a quick point on the

7    status of discovery that Mr. Consovoy has raised.  It

8    certainly is not the case that discovery is not ongoing.

9    It's true that documents have not yet been produced but

10   there have been RP's and interrogatories propounded and

11   responded to on time by Harvard.  They noticed the

12   deposition of Director McGrath who is the Director of

13   Admissions and that deposition is scheduled right around the

14   date that was requested.  It went forward.  There was no

15   objection so it is not, it is not the case that discovery is

16   not going forward.  It is the case the documents have not

17   yet been produced but we certainly are collecting and will

18   be prepared to produce those expeditiously in the event that

19   Your Honor does order us to go forward.

20        But in terms of how we might limit the discovery, I

21   think we could conceivably come to a baseline but I do think

22   that what Mr. Consovoy was describing is closer to what we

23   would consider the scope of appropriate discovery for the

24   entire case would be as opposed to the more limited scope

25   that I understand Your Honor to be suggesting.

        You know, conceivably we could meet and confer with
SFFA and come up with a proposal or at least competing
proposals for how, what a limited stay might look like and
what the parties would be willing to agree to.  We certainly
haven't thought precisely what we would be willing to
propose at this point but we're happy to do that quickly if
Your Honor would like.

        **THE COURT:**  All right.  Well, let me do this.
I, as I say, I am worried about the -- I am not worried
about but we have the intervenors going to the Appellate
Court.  We have *Fisher II* out there.

        That being said, I am very reluctant to stay the
whole thing.  I will read the briefs more carefully.  I am
talking about philosophically reluctant to stay the whole
thing.  I am sort of unencumbered by, you know, really a
depth understanding of the law.  And I will go back and read
your briefs on that but I am not going to get to this, I
have some teaching obligations for the rest of this week and
won't be back in the office until next week.

        So why don't you all take, say, a week and see if
you can -- if I do come to the conclusion that some sort of
limited stay is appropriate, understanding that I would like
to in some way keep this going but without unnecessarily
risking the duplication that may come as a result of the
motion to intervene or *Fisher*, if you could come up with a

1    joint or competing proposals that if I choose the middle

2    ground, I can get that into an order and get you guys back

3    to work on this.

4         And if you can't, that is fine.  If you just want

5    me -- if you decide not to avail yourselves of the

6    opportunity and you just want me to rule on the motion in

7    its current form, I am happy to do that too.  But if there

8    are things that can be accomplished during this period, I

9    would really like to try and get some of that done.

10        **MR. SANFORD:**  If I may, Your Honor?

11        **THE COURT:**  Absolutely.

12        **MR. SANFORD:**  I understand the Court's

13   reluctance to allow the case to go forward as a whole but I

14   would suggest, Your Honor, that I cannot conceive of a

15   partial stay in this case that would make any practical

16   impact on discovery when I think it's virtually conceded by

17   Harvard that Counts I and II will go forward on invidious

18   discrimination against Asian Americans and Count II will go

19   forward on racial balancing.

20        The only standard we need to meet support for

21   discovery for those two counts is likelihood to lead to the

22   discovery of admissible evidence period.  It's a very simple

23   standard for us to meet.

24        Those two counts alone, separate and apart from

25   *Fisher II* and the intervenors who have taken an appeal, will

1    allow us to conduct the discovery that we have sought to

2    conduct so far in this case.  Unfortunately while there is

3    some good news on discovery, as Ms. Ellsworth pointed out,

4    which is we have taken the deposition of Ms. McGrath, the

5    parties have exchanged some interrogatory answers and some

6    document production responses, the reality is we are now

7    three months removed from the initial scheduling conference

8    in this case.  The only documents Harvard has produced

9    during that three-month period are about 7 to 9 pages of

10   documents from the Admissions Office which Your Honor

11   suggested they give to me because I would be entitled to

12   know the names of the Admissions Office personnel, their job

13   duties and their responsibilities.

14          In addition to those few pages which it took three

15   weeks to receive we have also received some information on

16   geographic areas or dockets for their alumni interviewers

17   but that's it.

18          So the rate of production in this case so far from

19   Harvard is equal to roughly one page per month for each

20   month that this case has been pending.  And now they come

21   before the Court seeking a stay of the entire action based

22   on *Fisher II* which when you get into *Fisher II* briefing and

23   decision, you will see it really is the U.S. Supreme Court

24   saying the Fifth Circuit apparently did not apply the

25   standard which the Supreme Court had instructed them to

1    apply.

2          The discovery in this case is going to be broad

3    sweeping.  Now, Harvard came to you at the initial status

4    conference and tried to portray this as plaintiff had the

5    temerity to request copies of 145,000 application files.

6    That was not the case.  Plaintiff has never formally

7    requested copies of every application file over the

8    four-year period.  In fact, what we had done was provide to

9    Harvard a random sampling proposal of application files

10   segregated by race for each of the four primary racial

11   categories which constitute a minimum of 10 percent of the

12   student body at Harvard.  We requested four percent of the

13   applications --

14          THE COURT:  The number is still huge.  I am

15   looking for it but it is --

16          MR. SANFORD:  It is 6400 files over a

17   four-year admission cycle to root out invidious

18   discrimination.  It is a statistically significant sampling

19   which is exactly what Harvard had offered to provide in the

20   Joint Statement filed with this Court in writing prior to

21   the initial scheduling conference that we had on April 30th.

22          Now what Harvard is doing, as we have pointed out

23   in our motion -- I'm not trying to argue the motion on its

24   merits -- is they would like to offer us one-tenth of one

25   percent which is 160 files, 80 of which they cherrypick and

1   then say we can take the others.  That is what we've been

2   facing in discovery.  They have not produced a single

3   document in response to a document production request served

4   months ago.

5          And it is unfortunate but I had pointed out to the

6   Court at the initial scheduling conference my concerns that

7   we might very well experience not only these types of delays

8   but calculated decisions not to produce enough admissions

9   files so they could attack any expert witness on the basis

10  that it was not a statistically significant sample.

11         So at this stage, given the breadth of the two, the

12  first two counts of the Complaint, I don't see any way that

13  we could possibly fashion a partial stay with Harvard

14  because the breadth of discovery is so broad and the

15  discovery is so straightforward in our request with the four

16  percent of the application files.

17         So with that, Your Honor, I would suggest we will

18  meet, we will confer with Harvard to see if it is possible;

19  but given the track record of what we've seen in

20  negotiations so far, it took us over a month after the

21  initial scheduling conference to agree on a protective

22  order.  Now we see Harvard wants to use the protective order

23  as a shield and be over-inclusive on what they designate as

24  confidential when in reality a simple Google Internet search

25  will yield the same information, either from the *Harvard*

1    *Gazette*, the *Harvard Crimson*, the *New York Times*, or the
2    *Boston Globe*.

3              So they've been extremely reluctant to produce
4    anything in this case yet publicly available the information
5    is out there.

6              So if we were to issue some kind of a partial stay
7    of discovery, we'd want to seek to limit the perimeters of
8    discovery, we wouldn't get a single document out of Harvard,
9    which is really where we are at this point in response to
10   our document production request.

11             So I would simply urge the Court please to take
12   that into consideration when trying to fashion, if the Court
13   is so inclined, some kind of a partial stay.  The discovery
14   in this case is very broad sweeping.  And I would also
15   submit that sampling four percent of the application files
16   is a very narrow directly-targeted approach that included
17   random sampling supported by an expert's affidavit and that
18   is now going to open the door for Harvard to come back and
19   reiterate what I had said at the initial scheduling
20   conference which is they will try to claim there was enough
21   of, you know, further confidentiality.

22             Thank you, Your Honor.

23             **MS. ELLSWORTH:**  May I respond briefly?

24             **THE COURT:**  Yes.

25             **MS. ELLSWORTH:**  Thank you.

1          So I would just like to, I take on the suggestion

2     that Harvard has been dragging its feet here.  As I said,

3     there has been a lot of discovery that has happened.

4     Document productions will be ready to begin, you know, in

5     the event that the Court doesn't stay all document

6     production.  It's not that we've been sitting around waiting

7     for the Court to grant *Fisher II* in the hopes that we would

8     never have to produce any documents.  At the same time the

9     documents that are being requested here, it's been referred

10    to as broad sweeping and with great breadth.  It is we think

11    for overbroad, the requests that have been made, and

12    particularly I would add, as Your Honor has commented, the

13    number of applicant files, the 6400 is in the document

14    requests proposed by plaintiff, simply a preliminary sample

15    to lead to a much larger number which Your Honor had, at the

16    initial scheduling conference had indicated a lack of

17    interest in providing.  And certainly Harvard does not agree

18    that that is necessary or appropriate, from a pure burden

19    standpoint, and also, of course, because of the very serious

20    privacy concerns.

21         We are here without any documents to produce in

22    part because Harvard in its responses which were filed well

23    over a month ago made a proposal.  We proposed 160 files, 80

24    that Harvard could choose and 80 that SFFA would be in a

25    position to choose.  That was our proposal for the files.

1          Instead of engaging in that proposal SFFA has filed

2     a Motion to Compel.  Now, that is their right and we will

3     respond in due course but that has put the brakes on any

4     ability to talk about any possible changes to that number.

5     And, again, we will respond with our own argument as to why

6     we think that number is appropriate and why we think that

7     the plaintiff will be able to do everything that its expert

8     contends that they need to do with the information that

9     Harvard has already agreed to produce.

10         Our response --

11              **THE COURT:**  Hold on a second.

12         Mr. Sanford, what are you thinking you are going to

13    get out of the actual application files that you are not

14    going to get out of the database they're offering to

15    provide?

16              **MR. SANFORD:**  Mr. Consovoy could address that

17    directly, Your Honor, if he may?

18              **MR. CONSOVOY:**  So the files are the heart of

19    the case.  And I think you'll see from our papers the answer

20    to your question, Your Honor, that if you deny a

21    statistically significant sample of files, what you're

22    denying is the right to bring expert testimony.  That's

23    essentially what the ruling is.  Because what the experts

24    are going to do, Harvard -- I'm going to speak in

25    generalities here because we're under a protective order and

1    there are things in the deposition that I can't get to in

2    open court but Harvard claims that it's a holistic system.

3    I think you heard Mr. Waxman say the word "holistic" more

4    times than I can count.   Certainly in their papers more

5    times than any of us can count.

6           And the point of that, the point of their argument

7    is that you can look at the numbers but the numbers don't

8    tell you what is actually going on overall with the choice

9    of applicants, that everyone is looked at as a whole person,

10   that it's not just the numbers, that race is a contextual

11   factor and that there is an evaluation that goes on.   That's

12   why they have training materials.   If it was just the

13   numbers that got someone into Harvard, they wouldn't have

14   readers and they wouldn't have reader training materials

15   because they're trained to read these applications as a

16   whole.

17          The fundamental question here is do the scores add

18   up to their reasons which is sort of the classic civil

19   rights question, right.   So if Walmart has, Walmart says we

20   don't deny women promotions, right, because they're women,

21   they actually just didn't do as well in their interviews.

22   And they have interview notes, right.   That is a routine

23   expert analysis to examine the files, right, and to see

24   whether the notes actually add up to a neutral examination

25   what they're saying.

1          What we have here are essays.  We have

2     recommendations.  We have review notes.  We have all the key

3     underlying material that leads to the question of what is

4     going on here.

5          Now, if Harvard wants to, and we don't want this,

6     if Harvard wants to say we'll give you the numbers and we'll

7     rise or fall with the numbers, again, we oppose, we think

8     that's not the appropriate way for the Court to build the

9     kind of record that ultimately the Appellate Courts are

10    going to ask me and Mr. Waxman at a podium about.  And we

11    won't have answers if we don't have the materials.

12              **THE COURT:**  I am not suggesting you're not

13    going to get some or all of the applications.  I am

14    wondering if there is some place we can start, in light of

15    the interveners and *Fisher II* --

16              **MR. CONSOVOY:**  Sure.

17              **THE COURT:**  -- where we can get, start getting

18    to the heart of what you are looking for.  I am not

19    suggesting you are not going to get the applications.

20              **MR. CONSOVOY:**  Oh, right.

21              **THE COURT:**  I would hate to have you up in

22    front of that podium being embarrassed that I have created

23    a --

24              (Laughter.)

25              **MR. CONSOVOY:**  And so, you know, ultimately, I

1    think, in response to our motion we would like to hear from

2    Harvard.  Harvard said to the Court please don't make us

3    give over all of the files.  We'll give a statistically

4    significant sample.  We went back to our expert and said,

5    okay, that is a somewhat reasonable request.  Can you work

6    with that, right?  And the expert said yes, we can.

7         Let us tell you, given the volume of applications,

8    it's not our fault that Harvard gets 37,000 applications a

9    year.  The experts have to tell us from an, I won't say

10   "scientific" but, you know, from a matter of expertise how

11   many they need to draw reliable statistical conclusions from

12   that.  And this is what they're telling us.

13        Now, if Harvard had an expert who can say that

14   experts can draw reliable statistical conclusions about a

15   37,000-person process based on non-randomly selected, not

16   stratified by race, 160 files, I would like to hear from

17   that expert and then I think we could have a realistic

18   conversation about their position and our position.

19        Right now their position is, well, we said

20   statistically significant but we meant representative but

21   not really representative because we want to cherrypick half

22   of them so really what we're saying is you get nothing.

23        **THE COURT:**  Okay.  So let's do this --

24   Mr. Waxman, do you want to say something?

25        **MR. WAXMAN:**  I mean, since -- I think I've

1    listened quite long enough to opposing counsel's

2    characterizations of what I had said and what we've done.

3            They have filed a Motion to Compel attaching an

4    expert's declaration in due course, on time, as we have

5    filed -- as we have responded to every single discovery

6    request in this case, we will respond with our own

7    explanation for what we think is or isn't appropriate in the

8    event that this type of discovery is permitted to go

9    forward.

10           I do want to say that this very discussion, which

11   is a small, small, small subset of the kinds of disputes

12   that will come up if and when discovery does go forward full

13   steam just underscores how important -- how pointless it is

14   to have the discussion about what is or isn't relevant or

15   what may or may not be necessary, either for them to

16   discover or for us to produce in order to prove our case

17   under whatever the standard is that the Supreme Court

18   explicates until we have that standard but Your Honor was, I

19   thought, clear that we weren't going to have an argument on

20   the Motion to Compel since our time to respond hasn't

21   occurred yet and we haven't responded.

22           And I just want to hesitate to say, if Your Honor

23   wants to hear argument about this, you know, whether 6400 is

24   right or what is representative or what our database, if and

25   when discovery proceeds, will show in advance of us filing

 1    our response, I can do it.

 2              **THE COURT:**  No, I am not going to put you in

 3    that position.  That is not fair.  That is not what I want

 4    to do today.

 5              All right.  So the Motion to Compel we'll keep

 6    under, we will hold aside until Harvard has an opportunity

 7    to respond.  I think it is an important motion, we are going

 8    to take our time with it and look at it thoroughly.

 9              That being said, if you have other motions on the

10    protective order and things that can be resolved quickly,

11    shoot them over and we will do it, okay.  I don't want this

12    hung up on those sorts of motions.  This one is more

13    substantive.  We are going to take some time with it.  But,

14    you know, the protective orders, just shoot them over and if

15    there is -- I don't have any reason to believe that they are

16    withholding information inappropriately; but if they are, we

17    will deal with it quickly.  It is not going to be that

18    public information is going to be held aside under a

19    confidentiality order or a protective order.

20              In terms of the Motion to Stay, we will review it

21    on the merits and rule on it in due course.  If anyone -- I

22    won't do anything with it for the next week and if anybody

23    wants to take that week to sort of file something jointly or

24    separately and that document will be something to the effect

25    of if you are inclined to grant the partial stay, this is

```
1    what we propose.  I will not take it to mean that anyone is

2    actually agreeing to a partial stay but if you could give me

3    some broad outlines and, again, unencumbered by too much

4    thought (ph.), my proclivity is if we can find things that

5    we can go forward on without, sort of under the Fisher cloud

6    and the intervenor's cloud without prejudicing anybody too

7    much and keeping the case moving, that is what I am

8    philosophically interested in doing.

9              Now, I may read your briefs and they may completely

10   change my mind; but in the interim if you want to submit

11   something that says if there is going to be a partial stay,

12   this is what we would like or we can live with or however

13   you want to phrase it, why don't you take a week to do that

14   and I won't rule on the motion on that.

15             Now, we did set another status three months out

16   for, I am actually sort of, I mean -- so if the case is

17   stayed, we won't need to meet.  And if we are to a point

18   where a ruling on the Motion to Compel, I assume you are

19   going to need another hearing on that so why don't we not

20   set another hearing for three months forward on the

21   assumption that we will be here in the interim on one of

22   these motions anyway.  Okay?  Is that all right with

23   everyone?

24                       MR. CONSOVOY:  Yes, Your Honor.

25                       MR. WAXMAN:  Yes, Your Honor.
```

1          **THE COURT:**  Anything else I can help you with

2    today or is that it?

3          Okay.  The case is recessed then.  Thank you.

4          **THE CLERK:**  All rise.  Court is adjourned.

5

6          (WHEREUPON, the proceedings were recessed at 2:45

7          p.m.)

C E R T I F I C A T E


        I, Carol Lynn Scott, Official Court Reporter for

the United States District Court for the District of

Massachusetts, do hereby certify that the foregoing pages

are a true and accurate transcription of my shorthand notes

taken in the aforementioned matter to the best of my skill

and ability.



                /S/CAROL LYNN SCOTT


        _____

                CAROL LYNN SCOTT
               Official Court Reporter
             John J. Moakley Courthouse
            1 Courthouse Way, Suite 7204
             Boston, Massachusetts 02210
                  (617) 330-1377



**DATE: July 30, 2015**