**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION**

STUDENTS FOR FAIR ADMISSIONS, INC.,

Plaintiff,

v.

PRESIDENT AND FELLOWS OF HARVARD
COLLEGE (HARVARD CORPORATION),

Defendant.

Civil Action No. 1:14-cv-14176-ADB

**HARVARD'S SUBMISSION REGARDING THE PROPOSED SCOPE OF DISCOVERY
DURING A STAY PENDING RESOLUTION OF _FISHER II_**

Harvard recognizes and appreciates the Court's interest in keeping this case moving

during the pendency of _Fisher II_.  At the same time, while it is of course impossible to anticipate

the outcome of that case, the Supreme Court is likely to provide significant guidance that would

inform the scope and content of discovery in this case.  This Court's Order of October 9, 2015

(ECF No. 110) ("Stay Order") appropriately balances these interests and enables the parties to

proceed with this case during the pendency of _Fisher II_ while also taking into account the

potentially shifting landscape and the significant privacy interests at stake.  As discussed in

Harvard's previous memoranda (ECF Nos. 59, 78, 82), the significant uncertainty surrounding

the law governing this case counsels in favor of staying discovery in this case pending the

Supreme Court's ruling in _Fisher II_.  That legal uncertainty, combined with the substantial

privacy issues implicated by the production of sensitive personal information of the tens of

thousands of students who apply to Harvard each year, should continue to guide the Court's

determination of what, if any, discovery would be appropriate pending the _Fisher II_ ruling, and

should bolster this Court's inclination to "not require Harvard to produce individual student or

applicant files" during this stage of the litigation.  ECF No. 110 at 2.  At the same time, it is

important that the case proceed expeditiously, and the Court's Stay Order providing not only the

structure of the database but two years' worth of data to SFFA enables that to occur.

At the status conference on July 21, 2015, the Court indicated its interest in allowing

SFFA to put systems and processes in place to allow it to proceed expeditiously when it does

become more clear how this case will unfold.  Tr. 14:21-25.  Importantly, the Court's Stay Order

has provided SFFA not only with enough to put its systems in place but also with two years'

worth of actual data with which to perform modeling, line up experts, and run analyses.  Under

that Order, Harvard will be producing electronic data from hundreds of fields in Harvard's

NEVO undergraduate admissions database, containing information about more than 70,000

applicants, including (among many other topics) applicants' self-identified race or ethnicity; high

school GPA; standardized test scores; and the ratings assigned to applicants by the admissions

office personnel and alumni interviewers.

In addition, Harvard already has produced more than twelve hundred pages of documents

under the Court's Order, including:

- Documents concerning Harvard's undergraduate admissions policies and
  procedures;

- Training manuals and materials for Harvard's admissions officers; and

- Information regarding Harvard's alumni interviewer program.

Harvard also has defended depositions of current or former Admissions employees, including its

Director of Admissions.[1]  Thus, even before the *Fisher II* stay begins, the discovery exchanged

---

[1]     In addition to the completed deposition of the Director of Admissions, the deposition of a
former admissions officer was two-thirds completed when the parties received the Court's Stay
Order; in accordance with the Order, the deposition was suspended upon receipt of the Order.

in this case will have far exceeded this Court's initial guidance that, pending a decision in *Fisher II*, the parties should exchange basic discovery materials and sufficient information to allow SFFA to establish processes for handling the data Harvard will ultimately produce when the litigation recommences in full.  *See* July 21, 2015 Status Conf. Tr. at 14.

These data provide ample information from which the parties can ensure that the case moves forward during the pendency of the additional stay.  SFFA itself implicitly recognized as much, when—in the parallel litigation it is pressing against the University of North Carolina at Chapel Hill ("UNC")—it agreed that until *Fisher II* is resolved, UNC need only produce certain applicant files, information from its admissions database, and admissions policies and procedures.  *See SFFA v. UNC*, No. 14-cv-954, Order (ECF No. 65, Oct. 1, 2015).  This Court has rightly recognized the important privacy interests involved in the production of applicant files, and the depositions SFFA has already taken in this case exceed what it is allowed under the UNC stipulation.

If this Court were looking for more avenues through which to ensure that the case continues to move forward, Harvard respectfully suggests that one area as to which there has been, to date, no discovery, is the antecedent question of SFFA's standing.  The Court has not ordered SFFA to produce any discovery, and despite SFFA's having agreed, in response to Harvard's Requests for Production, to produce documents regarding, among other things, its organizational structure, its corporate filings, its correspondence with the IRS regarding its 501(c)(3) status, and most importantly, documents "sufficient to identify and establish the standing of individual members upon whom SFFA relies for its associational standing to bring this case," SFFA has produced no such documents to date.  SFFA's standing is, of course, a threshold issue that could obviate the need for any discovery or proceedings in this case at all,

*Fisher II* notwithstanding.  Thus, during the *Fisher II* stay, SFFA should be ordered to submit to discovery, including document  productions, relating to the purported standing of the members on whom SFFA relies for its organizational standing, communications between SFFA and its members, policies and practices regarding member selection, and the membership's roles in supporting and participating in SFFA's decision-making.[2]  If appropriate in light of the discovery on these issues, the parties should also be permitted to proceed with motion practice on this threshold standing question.

If the Court were to find that Harvard should produce additional materials during this time period, on top of the substantial and sufficient amount it has already produced and will produce under the Stay Order, Harvard would propose to produce documents responsive to SFFA's Requests for Production 16, 18, 27, and 31, subject to Harvard's objections thereto, during the pendency of a *Fisher II* stay.[3]  In addition, in the event that the Proposed Intervenors prevail on appeal, Harvard will produce to the Proposed Intervenors the documents it has produced to SFFA (subject to the Proposed Intervenors' agreement to be bound by the terms of the parties' Stipulated Protected Order (ECF No. 55)).

SFFA, by contrast, has indicated to Harvard that it intends to propose that discovery during the *Fisher II* stay include substantial email records, aggregate academic performance data for admitted students, information from Harvard's NEVO database for two additional admissions cycles, and unspecified third-party discovery.  If adopted, SFFA's proposal would render any

---

[2]    This includes the documents responsive to Harvard's Requests for Production Nos. 1, 4, 5, 6, 7, 8(a), 11, 14, 15, 16, and 17, which SFFA has already agreed to produce .

[3]    This includes documents sufficient to show the identities and roles of its Admissions Office employees, forms used to evaluate applicants, documents sufficient to show how Harvard describes the race of applicants, and formal certifications or reports Harvard has submitted to the United States government or any State government regarding the use of race in its admissions process.

stay essentially meaningless.  Any discovery that proceeds during the pendency of *Fisher II* should be tailored to avoid needless burdens and intrusions on applicant privacy, the prospect of which led the Court to grant a stay in the first place.  SFFA's proposal utterly ignores that objective.

Harvard also suggests that the parties could use the *Fisher II* stay period to identify and resolve outstanding discovery disputes so that discovery can proceed expeditiously, to the extent it remains appropriate, following a ruling in *Fisher II*.  Specifically, Harvard proposes that the parties attempt to resolve (with the Court's assistance, if necessary) disputes regarding the date range for production of hard copy documents and ESI; a list of appropriate custodians for ESI discovery; and a list of appropriate search terms for ESI discovery.

Finally, in response to SFFA's apparent intention to attempt to conduct extensive third party discovery, Harvard submits that the Court should strictly limit third party discovery pending resolution of *Fisher II*.  SFFA has indicated that it intends to conduct sweeping third party discovery in this litigation, including discovery of "not only experts, but alumni interviewers, former employees, high school officials, and college admissions advisory bodies such as Princeton Review."  ECF No. 26 at 5.  There is no need to subject non-parties to the burden and expense of discovery until *Fisher II* is resolved.  In particular, as set forth more fully in Harvard's Opposition to SFFA's Motion to Compel (ECF No. 86), SFFA's continued insistence on discovery into Harvard's alumni interviewers is misplaced; the marginal relevance of any information that alumni interviewers could provide is vastly outweighed by the burden that discovery would impose on these volunteers who have done nothing more than agree to meet with a handful of students in any particular year and provide summaries to Harvard.  *See, e.g.*, Fed. R. Civ. P. 26(c); *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)

("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.").

Respectfully submitted,

/s/ Felicia H. Ellsworth
Felicia H. Ellsworth (BBO #665232)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6687
Fax: (617) 526-5000
felicia.ellsworth@wilmerhale.com

Seth P. Waxman (*pro hac vice*)
Paul R.Q. Wolfson (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
Tel: (202) 663-6800
Fax: (202) 663-6363
seth.waxman@wilmerhale.com
paul.wolfson@wilmerhale.com

Debo P. Adegbile (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 295-6717
Fax: (212) 230-8888
debo.adegbile@wilmerhale.com

Dated:  October 23, 2015

*Counsel for Defendant President and Fellows of Harvard College*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to those indicated as non-registered participants on October 23, 2015.

<u>/s/ Felicia H. Ellsworth</u>
Felicia H. Ellsworth