# United States Court of Appeals
## For the First Circuit

---

No. 15-1823

STUDENTS FOR FAIR ADMISSIONS, INC.,

Plaintiff, Appellee,

v.

PRESIDENT AND FELLOWS OF HARVARD COLLEGE (HARVARD CORPORATION),

Defendant, Appellee;

SARAH COLE; FADHAL MOORE; ARJINI KUMARI NAWAL; ITZEL VASQUEZ-RODRIGUEZ; KEYANNA WIGGLESWORTH; M.B.; K.C.; Y.D.; G.E.; A.G.; I.G.; R.H.; J.L.; R.S.,

Movants, Appellants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Allison D. Burroughs, U.S. District Judge]

---

Before

Howard, Chief Judge,
Lynch and Kayatta, Circuit Judges.

---

Taylor Owings, with whom Lawrence E. Culleen, Nancy L. Perkins, Steven L. Mayer, Arnold & Porter, LLP, Jon M. Greenbaum, Lawyers' Committee for Civil Rights Under Law, Iván Espinoza-Madrigal, and Lawyers' Committee for Civil Rights and Economic Justice, were on brief, for movants-appellants.
Seth P. Waxman, with whom Felicia H. Ellsworth, Eric F. Fletcher, Paul R.Q. Wolfson, Daniel Winik, and Wilmer Cutler Pickering Hale and Dorr LLP, were on brief, for defendant-appellee.
Patrick Strawbridge, with whom Consovoy McCarthy Park

PLLC, Paul M. Sanford, and Burns & Levinson LLP, were on brief, for plaintiff-appellee.

December 9, 2015

**KAYATTA**, <u>Circuit Judge</u>.  This appeal arises out of a lawsuit brought by an organization that calls itself Students For Fair Admissions, Inc. ("SFFA") challenging Harvard College's consideration of race in its undergraduate admissions decisions. An opposing group of current and prospective Harvard students ("Students") who claim to be benefited by the school's current practice sought to intervene, over the objection of both parties, in order to advocate "vigorously" for the defeat of SFFA's claims. The district court denied Students' motion to intervene, instead granting Students leave to file amicus briefs.  <u>Students for Fair Admissions, Inc.</u> v. <u>President & Fellows of Harvard Coll.</u>, 308 F.R.D. 39, 52–53 (D. Mass. 2015).  Students now appeal, arguing that the district court either committed an error of law or abused its discretion in denying their motion to intervene.  For the following reasons, we affirm the district court's ruling.

## I. Background

The underlying lawsuit in which Students seek to intervene commenced on November 17, 2014, when SFFA filed a complaint with the district court alleging that Harvard's undergraduate admissions policy is racially and ethnically discriminatory, in violation of Title VI of the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment.  Harvard admits, indeed proclaims, that it does consider an applicant's race, among many other factors, in deciding whether

- 3 -

to admit the applicant. Harvard says that it considers race in order to increase "student body diversity, including racial diversity." It denies that this consideration is unlawful.

During the early stages of discovery, Students filed a motion under Federal Rule of Civil Procedure 24(a)(2) and (b), seeking to intervene in this lawsuit either by right or by permission of the court. The district court denied the motion to intervene, holding that although Students' motion was "timely," Students failed to satisfy the remaining requirements of Rule 24(a) and (b). Students do not appeal the denial of their motion for permissive intervention under Rule 24(b). Rather, they focus this appeal on the district court's denial of their motion to intervene by right under Rule 24(a)(2).

## II.  Analysis

Federal Rule of Civil Procedure 24(a)(2) states:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Successful intervention by right under this rule requires intervenors to demonstrate that (1) their motion is timely; (2) they have an interest related to the property or transaction that forms the foundation of the ongoing action;

- 4 -

(3) the disposition of the action threatens to impair or impede their ability to protect their interest; and (4) no existing party adequately represents their interest. Ungar v. Arafat, 634 F.3d 46, 50 (1st Cir. 2011). Failure to satisfy any one of the four requirements defeats intervention by right. Id. at 51.

Applying these requirements calls for discretion in making "a series of judgment calls--a balancing of factors that arise in highly idiosyncratic factual settings." Id. While "the district court's discretion [in the context of intervention by right] is somewhat more circumscribed than in the context of intervention generally," Negrón-Almeda v. Santiago, 528 F.3d 15, 22 (1st Cir. 2008), we will only reverse "[i]f the district court either fails to follow the general recipe provided in Rule 24(a)(2) or reaches a plainly incorrect decision." Ungar, 634 F.3d at 51.

Rather than reviewing blow-by-blow each challenge to the district court's opinion, we train our analysis on the district court's finding that Students have failed to show that no "existing part[y] adequately represent[s] [Students'] interest." Fed. R. Civ. P. 24(a)(2). In conducting this analysis, we begin with a recognition that Students' burden of establishing inadequate representation "should be treated as minimal" and can be satisfied by showing "that representation of [the] interest 'may be' inadequate." Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n.10 (1972) (emphasis added). On the other hand, we

- 5 -

require putative intervenors to produce "something more than speculation as to the purported inadequacy" of representation. Moosehead Sanitary Dist. v. S.G. Phillips Corp., 610 F.2d 49, 54 (1st Cir. 1979).

In trying to sustain even this minimal burden, Students buckle at the outset. The interests they claim (increasing their chances of gaining admission and/or being educated "among a critical mass of students who can relate to their racial identities") lead them to adopt four-square Harvard's goals of "defend[ing] Harvard's right to consider race and [] defeat[ing] SFFA's request for declaratory judgment."[1] Given such a congruence in goals, this court presumes adequate representation. B. Fernández & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 546 (1st Cir. 2006); Daggett v. Comm'n on Governmental Ethics & Election Practices, 172 F.3d 104, 111 (1st Cir. 1999); Moosehead, 610 F.2d at 54. Adding heft to that presumption in this case are the facts that Harvard has the resources necessary to litigate the case, that it has retained counsel of whom Students offer no criticism, and that it has publicly characterized the lawsuit

---

[1] Because we affirm the district court's denial of Students' motion to intervene based on the fact that Harvard will provide adequate representation, we need not decide whether Students' interests in this case are "significantly protectable." Pub. Serv. Co. of N.H. v. Patch, 136 F.3d 197, 205 (1st Cir. 1998) (quoting Donaldson v. United States, 400 U.S. 517, 531 (1971)).

- 6 -

through its highest officials as a threat to its "most fundamental values."

With that factually reinforced presumption in mind, we next consider Students' specific arguments for why we should nevertheless find as a matter of law that Students raise "sufficient doubt about the adequacy" of Harvard's representation in pursuing the shared goal of preserving Harvard's ability to consider an applicant's race in its admissions decisions. B. Fernández, 440 F.3d at 547 (quoting Trbovich, 404 U.S. at 538). We undertake that consideration "in light of the issues at stake in the particular litigation", Pub. Serv. Co. of N.H. v. Patch, 136 F.3d 197, 208 (1st Cir. 1998), as they reveal themselves based on a "commonsense view of the overall litigation." Id. at 204 (citing United States v. Hooker Chems. & Plastics Corp., 749 F.2d 968, 983 (2d Cir. 1984)).

Students point to what they claim is "Harvard's unwillingness to recognize the need for race-conscious admissions policies to balance the adverse effect of other admissions criteria and practices . . . like the legacy policy," referring to Harvard's practice of giving some admissions preference to certain relatives of alumni. Students claim that Harvard will not discuss the effects of those policies, but that they will.

To establish that a party's representation of the intervenor's interest will be per se inadequate because the party

- 7 -

might not make a particular argument, we ask whether pursuit of the shared goal obviously calls for the argument to be made. See Daggett, 172 F.3d at 112; see also Maine v. Dir., U.S. Fish & Wildlife Serv., 262 F.3d 13, 19-20 (1st Cir. 2001). It is by no means obvious to us that the goal of defeating SFFA's claims calls for chronicling and highlighting the manner in which Harvard's other voluntary admissions practices supposedly decrease diversity. To the contrary, such an undertaking would seem to cut against Harvard's essential position that race-conscious admissions practices are necessary to increase diversity. See Fisher v. Univ. of Tex. at Austin, 133 S. Ct. 2411, 2420 (2013) (stating that a university's consideration of an applicant's race is permissible, provided that it is necessary to achieve the educational benefits of diversity). This may well be why the district court reasoned that SFFA was likely to try to show precisely what Students say they would seek to show about the effect of legacy preferences.[2] Students for Fair Admissions, 308 F.R.D. at 51. In this respect, Students' intervention in the action would seem more likely to hinder rather than to help the pursuit of the very goal they share with Harvard.

In a slightly different variation on this theme, Students argue that they will be more single-mindedly zealous than

---

[2] SFFA's complaint suggests that because Harvard could increase diversity by voluntarily eliminating legacy preferences and policies, race-conscious admissions practices are not necessary.

- 8 -

Harvard because Harvard's balancing of competing priorities may pose a "settlement risk: if Harvard prioritizes practices, like the legacy policy, that encourage donors and continued financial support of the institution and it perceives them to be at risk in this litigation, then it might modify or abandon its race-conscious policies in order to settle." Exactly how any relief ordered by the court on SFFA's complaint might require Harvard to terminate practices like the legacy policy, Students do not explain. Their argument also assumes that intervention would somehow enable Students to limit Harvard's discretion in deciding whether to settle or fight. Yet Students point to no basis for such an assumption. To the contrary, Students concede that they lack any legal basis for requiring Harvard to maintain its current practices. Therefore, if Students' theory that putting legacy practices under scrutiny during the litigation might cause Harvard to settle were correct, then once again Students would seem to be seeking intervention to do something that would work against the goal they profess to share.

Of course, we doubt that Students and their able counsel would really pursue such a counter-productive approach if they believe what they claim about Harvard's relative priorities. Nonetheless, the fact that these arguments are the best that they can offer in trying to say why Harvard will not adequately defend

- 9 -

the lawsuit suggests quite strongly that Students' participation as a party is not needed to fill in a hole in Harvard's defense.

We recognize that our holding is on the surface contrary to a holding reached sixteen years ago by the Sixth Circuit in Grutter v. Bollinger, 188 F.3d 394 (6th Cir. 1999). But see Hopwood v. Texas, 21 F.3d 603, 605-06 (5th Cir. 1994) (per curiam). Grutter, however, seemed to rely on the premise that "evidence of past discrimination by the University itself or of the disparate impact of some current admissions criteria . . . may be important and relevant factors in determining the legality of a race-conscious admissions policy." Grutter, 188 F.3d at 401. Prior and subsequent Supreme Court decisions, however, cast doubt on the relevance of such factors in sustaining a race-conscious admissions policy. See Fisher, 133 S. Ct. at 2421 (stating that the "only interest this Court has approved in" the context of higher education is "the benefits of a student body diversity that 'encompasses a . . . broa[d] array of qualifications and characteristics of which racial or ethnic origin is but a single though important element'") (quoting Regents of Univ. of Cal. v. Bakke, 438 U.S. 265, 315 (1978)). In any event, even putting to one side any question concerning Grutter's suggestion that evidence of past discrimination might justify the indefinite continuation of race-conscious admissions to a student population that rolls over every four years, we still prefer our analysis to

- 10 -

that offered by the split Grutter circuit court given that, intervention or not, Harvard could decide to settle without Students even being at the table.

Nor does our own prior decision in Cotter v. Mass. Ass'n of Minority Law Enforcement Officers, 219 F.3d 31 (1st Cir. 2000), require reversal in this case. Cotter was, by its own terms, virtually sui generis, eschewing a "simple formula" as "difficult, if not impossible, to contrive," id. at 34, and concerning itself "with matters of degree and a particular fact pattern," id. at 37. See Patch, 204 F.3d at 204 ("Because small differences in fact patterns can significantly affect the outcome, the very nature of Rule 24(a)(2) inquiry limits the utility of comparisons between and among published opinions."). The Cotter plaintiffs' claims against the defendant employer actually put at risk the existing jobs of the proposed intervenors and those whom they represented. Id. at 34-35. Unlike Harvard, the defendant in Cotter neither opposed intervention nor professed to be in a position to adequately represent intervenors' interests. Id. at 33. Most importantly, the intervenors in Cotter proposed to argue that the defendant was "in violation of law," id. at 36, and that the practices challenged in the lawsuit were defensible as a remedy for past unlawful discrimination, id. at 35, which is precisely the type of legal argument Students acknowledge their advocacy will lack because it has no toehold in this case. All in all,

- 11 -

Cotter left ample room for the district court's ruling in this materially different litigation.

We have also considered Students' argument that their inability to keep Harvard from settling does not per se defeat their motion to intervene by right, citing Conservation Law Foundation of New England, Inc. v. Franklin, 989 F.2d 54, 59 (1st Cir. 1993). In that case, though, we merely said that the fact that a party was allowed to intervene did not mean that it would later necessarily have standing to oppose entry of a consent decree. Id. Here, we simply hold that, when a party cites a fear of settlement as a reason to intervene, it is not an abuse of discretion to find that reason insufficient if the intervention will not reduce the likelihood of settlement, much less if intervention might increase the likelihood.

### III. Conclusion

For the reasons set forth above, we can find no reason to criticize the district court's thoughtful and carefully considered disposition of Students' motion, and we are confident that Students will find that amicus briefs will provide them with a fair opportunity to voice their views concerning the issues posed by the litigation.[3] Therefore, we affirm.

---

[3] In granting Students leave to participate as amici curiae, the district court permitted them to do the following: 1) "submit a brief or memorandum of law not to exceed 30 pages, exclusive of exhibits, on any dispositive motion in this case"; 2) "participate in oral argument on any dispositive motion"; and 3) "submit

- 12 -

---

personal declarations or affidavits in support of their memorandum of law, which may be accorded evidentiary weight if otherwise proper." <u>Students for Fair Admissions</u>, 308 F.R.D. at 53.

- 13 -