# WILMERHALE

January 27, 2016

**By ECF**

Felicia H. Ellsworth

+1 617 526 6687 (t)
+1 617 526 5000 (f)
felicia.ellsworth@wilmerhale.com

Honorable Allison D. Burroughs
U.S. District Court, District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

Re:  *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College (Harvard Corporation)*, No. 1:14-cv-14176

Dear Judge Burroughs:

This letter is submitted on behalf of Defendant President and Fellows of Harvard College ("Harvard") in response to the letter filed earlier today by Plaintiff Students for Fair Admissions, Inc. ("SFFA") (ECF No. 118).

As an initial matter, SFFA's submission is procedurally improper.  Under the guise of a "letter," SFFA has filed what is plainly a motion:  it has requested a court order, in writing, stating grounds, and specifying relief.  *See* Fed. R. Civ. P. 7(b); *Rogers v. Ausdal Fin. Partners, Inc.*, 2015 WL 5972423 (D. Mass. Oct. 14, 2015) (court "has the power to treat" a filing "as a motion if, despite its form, its substance is that of a motion").  This is not a matter of form over substance.  SFFA has every right to file a motion, but by the same token, Harvard has every right to its full time within which to respond.  Here, despite the scheduling of the conference over three weeks ago, SFFA has waited until one day before the conference to file its "letter" in an obvious attempt to gain a tactical advantage.  The Court should reject such gamesmanship, and afford Harvard the 14-day period authorized under Local Rule 7.1 to respond.  In the meantime, Harvard addresses some of the more extraordinary claims in SFFA's submission, in an effort to provide the Court with sufficient information to make productive use of tomorrow's conference.

I.      **Harvard's Document and Database Productions**

In the three months since this Court granted a partial stay (ECF No. 110), Harvard has complied with the Court's Order and has provided SFFA with extensive discovery.  Among other materials, Harvard has produced training binders distributed to admissions officers, reading procedures setting forth the manner in which admissions officers evaluate applicant files, instructions used in the evaluation of applications, casebooks and discussion guides regarding the evaluation of applications, and interviewer handbooks that provide guidance to Harvard's alumni volunteers before they interview candidates for admission.

WILMERHALE

Honorable Allison D. Burroughs
January 27, 2016
Page 2

Harvard has also produced voluminous electronic admissions data—information contained in over 900 fields for more than 70,000 applicants. The produced information reveals the race and ethnicity, standardized test scores, high school grade point averages, ratings assigned by Harvard's admissions officers, ratings assigned by alumni interviewers, and much more, for each applicant, and is more than sufficient to achieve this Court's goal of enabling SFFA to begin to undertake its statistical analysis.

This Court recognized the important privacy interests at stake here not only in refusing to order Harvard to produce applicant files, but in urging in its Order that the parties "resolve any disputes pertaining to potential privacy issues." In accordance with those instructions, the parties have had a lengthy dialogue, through letters, emails, and phone calls, relating to specific database fields that either play no role in the admissions decision, or for which, due to the intrusiveness of production on the privacy of applicants, students, and other third parties, such production is inappropriate, at least until the Supreme Court has clarified the governing law. Completely absent from SFFA's submission is the fact that the fields in dispute represent a fraction of the entire database.

In the face of these facts, SFFA's accusation that Harvard is "avoiding compliance with the Court's orders in an effort to obstruct and delay" this litigation is completely unfounded. Despite the fact that this litigation has been stayed for the past three months, Harvard has produced a wealth of qualitative and quantitative information that relates directly to the core of SFFA's claims and Harvard's defenses. SFFA, in contrast, has not been subjected to any discovery nor has it produced a single page.

## II.     The Scope Of Proceedings Pending The Resolution Of *Fisher II*

Because Harvard has not had a full opportunity to respond to what is effectively a motion to compel filed by SFFA on the eve of the conference, Harvard respectfully submits that the upcoming status conference should focus on the scope of these proceedings pending the Supreme Court's decision in *Fisher II*, a decision that is expected to issue in less than five months. The parties have fully explicated their positions on this issue (*see* ECF No. 111 (Harvard's proposal); ECF No. 112 (SFFA's proposal)), and Harvard is prepared to address these proposals at tomorrow's status conference.

The appropriateness of a further stay in light of the production Harvard has already made is even more apparent today. The Supreme Court heard oral argument in *Fisher II* on December 9, 2015, and is expected to issue a decision within the next five months. It makes little sense for the parties to ramp up an extensive, expensive, and intrusive document review and production effort, burden third parties with subpoenas and depositions, and compromise sensitive personal

WilmerHale

information of applicants and students, within mere months of a decision that may meaningfully alter the scope of relevant discovery in this litigation.

### III.   Harvard's Confidentiality Designations Are Appropriate, And The Protective Order Should Not Be Modified

Harvard strongly disagrees with SFFA's attempt to rewrite the terms of the Protective Order, which the parties negotiated extensively. For the reasons noted above, Harvard will not in this submission respond to SFFA's arguments in an exhaustive manner, but it bears emphasis that the fact that much of the information SFFA is seeking in discovery falls within the agreed-upon definition of Highly Confidential information should come as no surprise—documents and information relating to how Harvard conducts its undergraduate admissions process is by its nature extremely sensitive.

Similarly, SFFA's request that the Court alter the Protective Order to give its President, Edward Blum, access to information that Harvard has designated as Highly Confidential, is without merit. As Harvard has already advised SFFA in discussions over this issue—and as SFFA neglects to mention—the Protective Order already permits counsel to "advis[e] their clients with respect to this Action based in whole or in part upon Protected Materials, provided that counsel does not disclose the Protected Materials themselves, the content of those Protected Materials, or the fact of those particular Protected Materials' existence except as provided in this Order." ECF No. 55, ¶ 5(b). Nothing in SFFA's letter explains why that common-sense provision, negotiated equally by the parties, has proven inadequate.

### IV.   Any Further Data Production Should Await *Fisher II*

As noted above, Harvard has produced voluminous database information for more than 70,000 applicants to the classes of 2018 and 2019. The produced fields contain an extraordinary array of information. They include, for example, applicants' demographic characteristics, including race or ethnicity; high-school GPA and standardized test scores; class rank; intended academic concentration; ratings assigned by Admissions Office readers and alumni interviewers; non-identifying information regarding applicants' extracurricular activities; and information about applicants' parents. At SFFA's request, Harvard identified the basis for withholding each of the fields not produced.[1]

---

[1]   SFFA's statement that it took "repeated requests" for Harvard to "eventually disclose[] that it was withholding" database fields is a canard. Harvard produced information from the database on November 6, 2015, and concurrently produced a complete list of fields in the database and a list of all fields that were produced. It was a trivial matter for SFFA to compare the two lists, and when SFFA complained about the difficulty of doing so, Harvard provided a list of withheld fields in SFFA's preferred format.

WILMERHALE

Honorable Allison D. Burroughs
January 27, 2016
Page 4


SFFA now seeks the production of an additional 296 database fields.  Harvard is prepared to respond in full to a Motion to Compel should SFFA choose to file one.  For present purposes, however, the privacy intrusion of producing the information in this subset of highly sensitive fields is not warranted while the governing law remains unsettled.  Once the Supreme Court has clarified in *Fisher II* what if any of the information in these fields will actually be relevant to the adjudication of this case, Harvard believes it would be entirely appropriate to revisit whether any of the additional fields should be produced.

*     *     *

Harvard looks forward to addressing these issues at tomorrow's conference and to submitting a further response to SFFA's letter (if the Court construes it as a motion) or to any motion SFFA files in a procedurally proper manner.

Sincerely,

/s/  Felicia H. Ellsworth


cc:  Counsel of record (via ECF)