WILMERHALE

February 22, 2016

**By ECF**

Felicia H. Ellsworth

+1 617 526 6687 (t)
+1 617 526 5000 (f)
felicia.ellsworth@wilmerhale.com

Honorable Allison D. Burroughs
U.S. District Court, District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

Re:  *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College (Harvard Corporation)*, No. 1:14-cv-14176

Dear Judge Burroughs:

The President and Fellows of Harvard College ("Harvard") respectfully submit this response to the letter filed on February 1, 2016 by Students for Fair Admissions, Inc. ("SFFA") (ECF No. 124).

SFFA's letter requests that the Court order production of several categories of documents relating to Harvard's admissions policies and protocols that SFFA contends are responsive to SFFA's requests for production of documents ("RFPs").  As an initial matter, Harvard maintains its position that no discovery of Harvard's admissions practices should proceed before the Supreme Court's decision in *Fisher II*, as the scope of appropriate discovery in this case may be altered by that decision.  In keeping with the Court's stated preference to allow discovery of Harvard's policies and protocols to go forward, however, Harvard will agree to produce the policies, manuals, and guides identified below, insofar as they are responsive to SFFA's document requests.  Harvard notes that its production of such documents is already ongoing pursuant to the Court's October 9, 2015 order.  Harvard will also produce the application files of individuals SFFA has identified as its members, subject to receipt of appropriate authorization from those members.

As to SFFA's remaining requests, seeking emails and documents relating to Harvard's consideration of race in the admissions process and its evaluation of race-neutral alternatives to achieve its interests in diversity, neither topic is appropriate for discovery during the pendency of *Fisher II*, as this Court has recognized.  SFFA's renewed request for production of those documents is simply an attempted end-run around the stay this Court issued in October and reaffirmed at the January 28 status conference.

Harvard's specific responses to the categories of documents and RFPs included in SFFA's February 1 letter are as follows:

WilmerHale

Honorable Allison D. Burroughs
February 22, 2016
Page 2

**Policies, Manuals, and Guides (Request Nos. 17 and 20).** To the extent it has not already done so, and subject to and without waiving its general and specific objections lodged in response to SFFA's First Request for Production of Documents, Harvard will produce:

- codebooks or guides associated with Harvard's electronic admissions database, if any;
- documents responsive to Request No. 17 (training manuals or formal instructional materials used to train admissions personnel); and
- documents responsive to Request No. 20 (guidelines and manuals used by the admissions office).

**Application Files for SFFA Members.** Harvard will produce application files for the individuals SFFA identified as its members in its supplemental response to Harvard's Interrogatory No. 5, subject to receipt of an appropriate consent to such disclosure from the individual applicants.

**Documents Concerning Racial Composition of the Applicant Pool (Request No. 15).** In response to SFFA's request that Harvard produce documents in response to its Request No. 15, Harvard notes that the database information already produced to SFFA allows it to ascertain the racial composition of the pool of applicants and admitted students.

**Documents Concerning Race and the Admissions Process.** Proceeding forward with discovery on the remaining RFPs listed in SFFA's February 1 letter would be inappropriate pending *Fisher II*, and inconsistent with the guidance the Court has already provided in terms of the type of discovery that could proceed forward during the stay. In particular, SFFA's request that Harvard be ordered to produce documents in response to SFFA's Request Nos. 22, 23, 32, and 33 ignores this Court's recognition that *Fisher II* may affect the proper scope of discovery into those topics, and should not be allowed.

As the Court noted at the January 28 status conference, any further inquiry into how Harvard considers race in the admissions process should await the Supreme Court's ruling in *Fisher II*, which is likely to provide important guidance into the permissible use of race in the higher education admissions process. SFFA's broad requests, which seek, among other things, "all communications" between Harvard employees regarding "the use of race in the admissions process," Harvard's "efforts to achieve a critical mass of Underrepresented Minority students," "use of race as a tiebreaker in the admissions process," and "any adjustments made to the criteria of admissions for particular racial groups or subsets," clearly fall under the umbrella of discovery that *Fisher II* might affect.[1] Indeed, SFFA's President, Edward Blum, has publicly stated his

---

[1] SFFA's requests are also inappropriate to the extent they seek discovery relating to enrolled students. For example, Request No. 33 seeks, among other things, "all documents . . . that seek to measure . . . using race or other demographic variables, the academic performance at Harvard of enrolled students, the graduate rate at Harvard of

Honorable Allison D. Burroughs
February 22, 2016
Page 3

WILMERHALE

hope that the Supreme Court will use *Fisher II* "to end racial classifications in higher education in total." Tamar Lewin & Richard Pérez-Peña, *Colleges Brace for Uncertainty as Court Reviews Race in Admissions*, N.Y. Times, July 1, 2015, at A14. If Mr. Blum's hope is realized, each of these areas of inquiry would be irrelevant.

Producing documents responsive to these requests before a decision in *Fisher II* is inappropriate not only based on the content of the information SFFA seeks, but also based on the format. To respond to the additional Requests SFFA identifies would require Harvard to conduct an extensive search and review of employee emails; there is no other way to attempt to locate "*all communications* . . . by or among [Harvard's] employees or agents regarding the use of race in the admissions process," RFP 22, "*all communications* . . . by or among [Harvard's] employees or agents regarding: [Harvard's] use of race as a tiebreaker in the admissions process," RFP 23, and "*all communications with third parties* . . . concerning the use of race in your admissions process . . . ." RFP 32. This massive undertaking would be inconsistent with the Court's indication that, other than discovery into SFFA's standing, the parties should use the present phase of the case to resolve threshold issues surrounding the appropriate custodians and search terms for the review of any responsive electronically stored information in Harvard's possession. SFFA inappropriately insists on putting the proverbial cart before the horse, and Harvard should not be ordered to provide SFFA with internal email correspondence during this stay. Instead, consistent with this Court's guidance, the parties should continue to work towards agreement on custodians and search terms.

**Documents Concerning the Availability of Race-Neutral Alternatives (Request Nos. 37 and 38).** The appropriate role and relevance of a university's consideration of race-neutral alternatives are central to the arguments advanced in *Fisher II*. For example, Ms. Fisher argues that the University of Texas failed to provide sufficient proof regarding the evaluation of race-neutral alternatives, *e.g.*, Petitioner's Br. 22, *Fisher v. University of Texas at Austin* (U.S. Sept. 3, 2015) (No. 14-981) (arguing that "UT failed to show that its pre-existing race-neutral admissions program could not achieve the desired level of diversity"), and asserts that a university must evaluate race-neutral alternatives at the same time that it decides to consider race in the admissions process. *E.g.*, *id.* at 31 ("[E]mploying race without contemporaneous evidence supporting the actual rationale indicates that the alleged interest is too amorphous, too insubstantial a basis to justify racial classifications." (internal quotation marks omitted)). Here too, the Supreme Court's decision is likely to affect the relevance of SFFA's requests concerning race-neutral alternatives, and no discovery on this topic should proceed at this time.

Ultimately, Harvard expects that once the Supreme Court issues its ruling in *Fisher II*, this Court will convene a status conference to discuss the appropriate scope of any further discovery,

---

enrolled students, or the debt levels accrued by enrolled students while at Harvard." As Harvard's objections and responses to SFFA's RFPs made clear, that information is not an appropriate subject of discovery in this action.

WILMERHALE

Honorable Allison D. Burroughs
February 22, 2016
Page 4

including the impact of *Fisher II* on SFFA's requests for documents relating to Harvard's consideration of race and race-neutral alternatives. Until that time, further discovery on these topics is unwarranted and inconsistent with the contours of the stay this Court has issued.

Respectfully submitted,

*/s/ Felicia H. Ellsworth*

Felicia H. Ellsworth


cc:  Counsel of record (via ECF)