# EXHIBIT 2



Ten Post Office Square
8th Floor South PMB #706
Boston, MA  02109
617.227.0548
www.consovoymccarthy.com

April 1, 2016

**VIA EMAIL**

Felicia H. Ellsworth, Esq.
WilmerHale
60 State Street
Boston, MA  02109

Re:   *SFFA v. Harvard*: **Document Production, Discovery Responses, and Custodians**

Dear Felicia:

I write on behalf of Students for Fair Admissions ("SFFA") in response to your letters of February 26 and March 17, 2016, and following up on our telephone call of March 7, 2016, regarding SFFA's responses to Harvard's Requests for Production ("RFPs") and Interrogatories.

**Associational Privilege**

Before addressing the specific items below, we must first note our disagreement with Harvard's apparent view that *none* of its extremely broad requests implicates the associational privacy rights of SFFA's membership. To the contrary, Harvard is seeking the identity of *every single member* of SFFA, along with detailed information about when each member joined, their individual financial contributions, and their plans for higher education. Harvard also seeks widespread access to virtually all communications among the members and leaders of the organization.

To begin, Harvard's requests amount to a fishing expedition and do not actually seek documents relevant to assessing SFFA's associational standing. "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Here, the organizational documents SFFA has already produced, along with its interrogatory responses and other discovery SFFA has agreed to produce, provide the information necessary to resolve this question. First, those documents provide the information needed to determine whether at least one of SFFA's members would have standing

to sue in his or her own right. Second, those documents provide the information needed to determine whether this litigation is germane to SFFA's purpose. Third, it is indisputable that these statutory and constitutional claims, as well as the request for declaratory and injunctive relief, do not require participation by individual SFFA members. *See Playboy Enterprises, Inc. v. Pub. Serv. Comm'n of Puerto Rico*, 906 F.2d 25, 35 (1st Cir. 1990) (citing *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 286 (1986)). But even if this were an open issue, which it is not, those documents will provide Harvard the information needed to resolve it too.

Contrary to your claims, then, there is no basis for allowing Harvard to delve into the inner workings of the organization to answer the pertinent legal questions about standing. If Harvard believes, however, that the wide-ranging discovery it seeks is needed to resolve any of the pertinent issues regarding associational standing, it should provide authority supporting each of its requests. The conclusory assertions Harvard has made so far are woefully insufficient.

Secondly, even if some of the internal documents Harvard seeks *were* somehow relevant to the standing inquiry, they nonetheless are protected from disclosure by the First Amendment. The constitutional freedom of association ensures that groups of individuals can associate, organize, and advocate without having to disclose confidential details about the association's communications, deliberations, financial information, recruitment efforts, and other protected activities. This is precisely why the Supreme Court has emphasized that the "inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." *NAACP v. Patterson*, 357 U.S. 449, 462 (1958).

Harvard appears to believe that the associational privilege somehow has less force because SFFA's members "knew that SFFA was a litigation vehicle upon joining and should reasonably have expected that information about them could be disclosed in the course of such litigation." SFFA is aware of no legal basis for this argument, and Harvard provides none. This could be said of any number of civil rights, environmental, and other public interest organizations, but Harvard fails to identify any examples where such broad, invasive discovery was permitted into the membership and operations of such entities. Indeed, if anyone joining such an association waived their privacy rights, the associational privilege would be meaningless. The protections afforded to civil-rights groups like the NAACP also extend to SFFA.

Harvard incorrectly asserts that SFFA must make a "compelling showing" that disclosure of the requested information will result in "harassment of current members." This misstates the governing legal standard. As the First Circuit has explained, an association need only make a *prima facie* showing that the discovery

will lead to "harassment of current members, a decline in new members, *or other chilling of associational rights.*" *United States v. Comley*, 890 F.2d 539 (1st Cir. 1989) (emphasis added). This type of discovery would clearly have a chilling effect here on SFFA's membership: Harvard's knowledge of the identities of SFFA's members would reasonably lead many of them to fear retaliation when they or their family members seek to apply to Harvard in the future. Moreover, "compelled disclosure of [SFFA's] membership is likely to affect adversely the ability of [SFFA] and its members to pursue their collective effort to foster beliefs which they admittedly have the right to advocate, in that it may induce members to withdraw from the Association and dissuade others from joining it because of fear of exposure of their beliefs shown through their associations and of the consequences of this exposure." *Patterson*, 357 U.S. at 462.

Given SFFA's entirely reasonable concerns, "the burden then shifts to the [party seeking discovery] to show both a compelling need for the material sought and that there is no significantly less restrictive alternative for obtaining the information." *Id.* Here, Harvard has no basis for undertaking a fishing expedition and no need for details regarding SFFA's membership, its finances, and its internal communications. As noted above, this information simply is not relevant to assess SFFA's standing, let alone "proportional to the needs of the case, considering the importance of the issues at stake in the action." Fed. R. Civ. P. 26(b)(1).

**Harvard's Specific Requests for Production**

With respect to Harvard's request for documents that precede the incorporation of SFFA on July 28, 2014, SFFA sees no basis for such production. SFFA has no parent or corporate affiliates, and any documents predating its formal incorporation are likely to involve privileged communications. SFFA thus stands by its objections to Harvard's request for documents before that date. To the extent that Harvard seeks specific information pre-dating SFFA's existence, it should articulate what it seeks and why such material would be relevant to standing.

RFP Nos. 1-3. In response to RFP No. 1, SFFA has produced documents relating to its organizational structure. On our March 7 call, you specified that Harvard is also requesting information relating to the Project on Fair Representation ("POFR"). POFR is a separate entity from SFFA, and such documents therefore have no bearing on the issue of SFFA's standing in this case. The mere fact that Edward Blum is involved in both associations does not make such documents relevant here.

As noted previously, RFP Nos. 2-3 seek documents that are irrelevant to the standing inquiry, would be unduly burdensome to produce, and implicate the First Amendment rights of SFFA and its members. Without waiving this objection, and as part of a comprehensive resolution of discovery disputes regarding SFFA's standing,

April 1, 2016
Page 4

SFFA may be willing to search for and produce meeting documents, such as minutes, calendar invites, and the like.

RFP Nos. 4-5. As we clarified after receiving your February 26 letter, SFFA's production on February 10 included items relating to SFFA's incorporation and governance in response to these requests. Moreover, SFFA's production is ongoing, and we are confirming whether there is additional IRS correspondence, as discussed during our call on March 7.

RFP No. 7. SFFA plans to provide information regarding its standing representatives, but Harvard is not entitled to materials concerning each of SFFA's thousands of members for all of the reasons set forth above. While Harvard may test the standing of the individuals SFFA relies upon, it may not conduct a fishing expedition into SFFA's membership.

Nor is the Protective Order sufficient to address these concerns, particularly in light of Harvard's own oft-stated view that it is entitled to redact or withhold sensitive material notwithstanding that Order. SFFA is entitled to take the same cautious approach Harvard has taken with respect to its production of confidential and sensitive information.

RFP No. 8. SFFA has provided information relating to its standing representatives as identified in the Complaint, including the date they joined SFFA, the cycles in which they have or plan to apply for admission, and other identifying details. Moreover, Harvard has access to the application materials of individual applicants, which includes relevant information about their academic and other credentials. SFFA continues to believe that this request seeks documents and other information that are far afield from the standing inquiry, would be unduly burdensome to produce, and implicate the First Amendment rights of SFFA and its members.

Without waiving these objections, and as part of a comprehensive resolution of discovery disputes regarding SFFA's standing, SFFA may be willing to search for and produce additional information about its individual standing members, provided that Harvard and SFFA can reach agreement on a reasonable scope of that additional information.

RFP Nos. 10-12. The associational privilege generally protects against the disclosure of information regarding SFFA's finances (RFP No. 10), recruitment efforts (RFP No. 11), and fundraising activities (RFP No. 12)   none of which is relevant to standing notwithstanding Harvard's unsupported claim that this information is "directly relevant to any associational standing analysis." Thus, SFFA requests that Harvard identify with specificity what items it seeks pursuant to these requests and explain how such information would be relevant to standing. If Harvard can do so, without waiving this objection, and as part of a comprehensive resolution of discovery

disputes regarding SFFA's standing, SFFA may be willing to supplement its discovery responses to address any legitimate need for this information.

RFP No. 14. SFFA has agreed to produce documents and published materials relating to its mission and formation. Harvard has not explained why unpublished materials, including internal emails that predate SFFA's incorporation, are relevant to the standing inquiry. SFFA continues to believe that this request seeks documents and other information that are far afield from the standing inquiry, would be unduly burdensome to produce, and implicate the First Amendment rights of SFFA and its members. Please see SFFA's further responses regarding SFFA custodians below.

RFP No. 15. SFFA has produced organizational documents sufficient to establish its standing in this matter. To the extent that Harvard is seeking documents concerning the identities and activities of other individual members, SFFA continues to believe that this request seeks documents and other information that are far afield from the standing inquiry, would be unduly burdensome to produce, and implicate the First Amendment rights of SFFA and its members.

RFP No. 16. As discussed on March 7, SFFA is reviewing its files for non-privileged materials referenced in or relied upon by the Complaint and responsive to this request.  Production of those materials is forthcoming.

**Harvard's Interrogatories**

Interrogatory No. 2. SFFA's two new board members are JZ "Joe" Zhou and Edward Chen. SFFA will supplement its interrogatory responses to reflect its current board membership at a mutually convenient point in time prior to the close of discovery.

Interrogatory No. 6. Harvard's request for the identities of SFFA's entire membership seeks information far afield from the standing inquiry, that would be unduly burdensome to produce, and which implicates the First Amendment rights of SFFA and its members. To the extent that SFFA relies upon individual members for standing, it has provided relevant information relating to those members. Without waiving its objections, and as part of a comprehensive resolution of discovery disputes regarding SFFA's standing, SFFA may be willing to supplement its discovery responses, provided that Harvard and SFFA can reach agreement on a reasonable scope of that additional information.

**Harvard ESI and Custodians**

Your March 17 letter regarding proposed custodians for ESI discovery of Harvard's admissions process is unreasonable and fundamentally misunderstands the scope of discovery that will be necessary in this case. Harvard essentially stands by its initial proposal of eight admissions personnel and three non-admissions personnel   a

total number of custodians that represents a fraction of the number of admissions officers and other personnel with relevant information at Harvard. Such a small number of custodians is insufficient to provide an adequate record from which the Court can give the required "close analysis to the evidence of how the process works in practice." *Fisher v. Univ. of Texas at Austin*, 133 S. Ct. 2411, 2421 (2013). As a data point, we note that the University of North Carolina-Chapel Hill initially proposed *twenty-four* custodians.

Harvard's claim of the alleged burden is unpersuasive. Modern software permits electronic elimination of any duplicative e-mails, ensuring that they need only be reviewed once. And without a discussion of search terms and the number of hits they yield, it is impossible to do anything but speculate about the alleged volume of documents. We therefore do not believe that ESI can be meaningfully negotiated without discussing search terms and custodians together.

Notwithstanding Harvard's unrealistically small number of proposed custodians, SFFA is willing to adjust its proposal in an effort to negotiate the scope of discovery in good faith. We expect Harvard to do the same.

SFFA is willing to limit its request to the following additional admissions custodians, in addition to the eight Harvard has agreed to:

- **Jessica Clark Bryan**   Sr. Admissions Officer
- **Katie Claret**   Admissions Officer
- **David Evans**   Sr. Admissions Officer
- **Maxwell Dikkers**   Admissions Officer
- **Kaitlin Howrigan**   Associate Director for Recruitment/Sr. Admissions Officer
- **Niki Johnson**   Sr. Admissions Officer
- **Chris Looby**   Sr. Admissions Officer
- **Mary Magnuson**   Associate Director of Financial Aid/Sr. Admissions Officer
- **Christine Mascolo**   Associate Director of Admissions/Director of Transfer/Athletics Coordination
- **Lucerito Ortiz**   Sr. Admissions Officer/Undergraduate Minority Recruitment Program
- **Timothy Smith**   Sr. Admissions Officer
- **Meg Brooks Swift**   Associate Director of Financial Aid/Director of Student Employment/Sr. Admissions Officer
- **Kathryn Vidra**   Associate Director of Financial Aid/Sr. Admissions Officer
- **Brock Walsh**   Admissions Officer
- **Caroline Weaver**   Admissions Officer
- **Kanoe Williams**   Admissions Officer
- **Pharen Bowman**   Admissions and Financial Aid Officer
- **Amy Lavoie**   Director of Digital Communications

April 1, 2016
Page 7

> **Victoria Marzilli**   Manager of Social Media Recruitment
> **Tia Ray**   Admissions Officer/Undergraduate Minority Recruitment Program

SFFA is also willing to modify its request for non-admissions personnel, in addition to the three that Harvard has agreed to:

> **Alan M. Garber**   Provost
> **Judith D. Singer**   Sr. Vice Provost for Faculty Development and Diversity
> **Lisa Coleman**   Chief Diversity Officer and Special Assistant to the President
> **Guido Guidotti**   Member, Standing Committee on Admissions and Financial Aid
> **Joseph D. Harris**   Member, Standing Committee on Admissions and Financial Aid
> **Michael D. Mitzenmacher**   Member, Standing Committee on Admissions and Financial Aid
> **Robert M. Woollacott**   Member, Standing Committee on Admissions and Financial Aid
> **Amir Yacobi**   Member, Standing Committee on Admissions and Financial Aid
> **Tamara Rogers**   Alumni Affairs and Development
> **Philip Lovejoy**   Harvard Alumni Association

Of course, this modified proposal is made without prejudice to SFFA's ability to request additional custodians based on what is uncovered in discovery.

Finally, as to a time frame, SFFA notes that the Court has *not* held that the relevant time period for production of admissions database information is two years. Rather, it has limited Harvard's production obligations to two application cycles pending the outcome of *Fisher II*, and it has not otherwise ruled on the appropriate time frame. That said, and subject to Harvard's willingness to find common ground with respect to custodians and search terms, SFFA is willing to discuss limiting the date range of e-mail discovery from the initial four years it requested.

**SFFA ESI and Custodians**

Finally, expansive ESI discovery of SFFA custodians requested by Harvard is not appropriate at this time. Your March 17 letter states that "the Court has permitted discovery relating to SFFA's standing to proceed forward in full at this time." In fact, the Court's March 11 Order makes clear that "[t]he Court does not anticipate that responding to [requests relating to SFFA's standing] will require Plaintiff to conduct large-scale searches or productions of email communications or other electronically stored information." 3/11/16 Order at 3. We thus disagree with your characterization of the Court's March 11 Order.

As noted above, SFFA disputes that *any* ESI discovery is necessary or appropriate for determining SFFA's standing to bring this action. SFFA may be willing to supplement its discovery responses with some additional organizational documents and information about its individual standing members, provided that Harvard and SFFA can reach agreement on the scope of that information. But your expansive request for electronic discovery from all SFFA Board members plus an unknown number of SFFA members is unreasonable.

We look forward to your response and will make ourselves available for a meet and confer if necessary to advance these discussions.

Sincerely,

*/s/ Patrick Strawbridge*

cc:  William S. Consovoy, Esq.
     Michael Connolly, Esq.
     Paul Sanford, Esq.