UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., <br><br>                          Plaintiff, <br><br> v. <br><br> PRESIDENT AND FELLOWS OF HARVARD COLLEGE (HARVARD CORPORATION), <br><br>                          Defendant. | Civil Action No. 1:14-cv-14176-ADB <br><br> <u>Oral Argument Requested</u> |

**MEMORANDUM IN SUPPORT OF HARVARD'S
<u>MOTION FOR JUDGMENT ON THE PLEADINGS ON COUNTS IV AND VI</u>**

# TABLE OF CONTENTS

BACKGROUND ..................................................................................................................1

ARGUMENT......................................................................................................................3

I.   The Supreme Court Has Strongly Reaffirmed That Universities May Promote Student Diversity By Broadly Considering Applicants' Backgrounds And Experiences, Including Race................................................................................4

II.  Count IV Fails To State A Claim Because It Depends On A Legal Theory Without Support In Bakke, Grutter, Or Fisher......................................................7

III. Count VI Fails To State A Claim Because It Asks This Court To Overrule Binding Supreme Court Precedent ...........................................................................10

IV.  Granting Judgment On The Pleadings Now Would Promote Judicial Economy ..............11

CONCLUSION................................................................................................................12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Eulitt ex rel. Eulitt v. Maine, Dep't of Educ.*,
    386 F.3d 344 (1st Cir. 2004)........................................................................................10

*Fisher v. University of Texas at Austin*,
    136 S. Ct. 2198 (2016)........................................................................................ *passim*

*Grajales v. P.R. Ports Auth.*,
    682 F.3d 40 (1st Cir. 2012)...........................................................................................3

*Gratz v. Bollinger*,
    539 U.S. 244 (2003).......................................................................................................7

*Grutter v. Bollinger*,
    539 U.S. 306 (2003)................................................................................................ *passim*

*Parker v. Hurley*,
    474 F. Supp. 2d 261 (D. Mass. 2007) ................................................................. 3-4, 11

*Regents of the University of California v. Bakke*,
    438 U.S. 265 (1978)................................................................................................ *passim*

*Segelman v. City of Springfield*,
    561 F. Supp. 2d 123 (D. Mass. 2008) .......................................................................... 10-11

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12....................................................................................................................3, 4

The Supreme Court's recent decision in *Fisher v. University of Texas at Austin*, 136 S. Ct. 2198 (2016) ("*Fisher II*"), makes clear beyond doubt that plaintiff Students for Fair Admissions, Inc. ("SFFA") cannot obtain relief on Counts IV and VI of the Complaint.

Count IV seeks to impose on Harvard a legal requirement for race-conscious admissions—that the University may consider race only for the "last few places left" in its incoming class—that appears nowhere in the case law and is inconsistent with *Fisher II* and *Grutter v. Bollinger*, 539 U.S. 306 (2003), both of which upheld race-conscious admissions policies that were not so limited.  Count VI calls for the overruling of all of the Supreme Court's decisions that have upheld the use of race-conscious admissions to advance the compelling interest in student body diversity, and seeks a ruling that race-conscious admissions policies are never permissible.  Overruling Supreme Court decisions is of course not within the power of this Court, and to the extent that Plaintiff might have sought to preserve this claim in the hope of obtaining such a reversal by the Supreme Court, that prospect has been extinguished by *Fisher II*, which decisively reaffirmed *Grutter*.  Counts IV and VI therefore do not state claims on which relief can be granted, and entering judgment now will simplify discovery and narrow the issues for the Court's ultimate adjudication of this case.[1]

## BACKGROUND

The Complaint sets forth six counts, each of which purports to claim an independent basis for relief under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.  This motion

---

[1] Concurrent with this motion, Harvard is filing a motion to dismiss for lack of subject matter jurisdiction.  If the Court allows that motion, this motion would be rendered moot.

1

concerns Counts IV and VI, both of which seek to change—and, in the case of Count VI, completely reverse—the Supreme Court's precedents on race-conscious admissions.[2]

Count IV is titled "Failure to Use Race To Merely Fill The Last 'Few Places' In The Incoming Class." Compl. p. 109. Faithful to that title, Count IV alleges that Harvard violates Title VI because it "is not using race merely to fill the last few places in the entering freshman class." Compl. ¶ 473; *see also* Compl. ¶ 467. Count IV acknowledges that the Supreme Court's decision in *Grutter* upheld a policy that "use[d] race beyond filling the remaining few places." Compl. ¶ 472. But, Count IV asserts, Harvard represented to the Supreme Court in its amicus brief in *Regents of the University of California v. Bakke*, 438 U.S. 265 (1978), that under the "Harvard Plan," Harvard considered race "only when it had 'a few places left to fill' in in the entering freshman class." Compl. ¶ 471. And Count IV further alleges that Harvard "clearly is no longer using race in this fashion." *Id.*

Count VI is titled "Any Use of Race As a Factor in Admissions." Compl. p. 114. True again to its title, Count VI alleges that all of the Supreme Court decisions that have upheld the consideration of race in admissions—which now include *Bakke*, *Grutter*, *Fisher I*, and *Fisher II*—were wrongly decided, and that the Supreme Court should now hold that diversity "is not an

---

[2]   The principal cases discussed in this brief were brought against public universities subject to the Equal Protection Clause of the Fourteenth Amendment. Because Harvard is a private institution, it is not subject to the Equal Protection Clause. Harvard is a recipient of federal funds and is therefore covered by Title VI, which prohibits discrimination on the basis of race in programs receiving federal financial assistance. SFFA in its Complaint contends that Title VI incorporates all aspects of the constitutional equal-protection standard. *See* Complaint ¶ 402 ("An institution that accepts federal funds violates Title VI when it engages in racial or ethnic discrimination that violates the Equal Protection Clause[.]"). That question—whether Title VI, as applied to private universities (which have their own rights under the First Amendment), incorporates every aspect of case law under the Equal Protection Clause—is unresolved, and Harvard reserves the right to argue that Title VI does not incorporate wholesale the case law of the Equal Protection Clause. This motion, however, assumes, for its purposes only, that equal-protection jurisprudence does apply in full under Title VI.

interest that could ever justify" any consideration of race.  Compl. ¶ 494; *see also* Compl. ¶ 502 (Supreme Court decisions upholding race-conscious admissions "were not well reasoned, were predicated on mistakes of fact, have been undermined by more recent developments, and have proven to be unworkable").  Count VI also alleges that universities' asserted interest in student-body diversity is merely a pretext—apparently engaged in by virtually every college and university that considers race in admissions—for engaging in "racial balancing," *see* Compl. ¶ 498, and that those institutions want nothing other than to increase the number of minority students in universities, *see* Compl. ¶ 499.  Count VI also asserts that race-conscious admissions policies "impose significant costs on the university community, society in general, and the very minority students these programs are purported to benefit."  Compl. ¶ 501.  In its prayer for relief, the Complaint requests a declaratory judgment that "any use of race or ethnicity in the educational setting violates the Fourteenth Amendment and Title VI."  Compl. p. 119.[3]

## ARGUMENT

Judgment on the pleadings is appropriate when a complaint, or a count within a complaint, fails to state a claim on which relief can be granted.  *See* Fed. R. Civ. P. 12(c), 12 (h)(2)(B).  "When … a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is employed as a vehicle to test the plausibility of a complaint it must be evaluated as if it were a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)."  *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012).  Thus, a motion for judgment on the pleadings, like a motion to dismiss, should be granted when the theory of recovery set forth

---

[3] Under the Amended Scheduling Order (Dkt. 180), the last day upon which SFFA could move to amend its complaint absent leave of court was September 15, 2016.  SFFA declined to amend its complaint, and with the pleadings now closed, Harvard's motion for judgment on the pleadings is ripe for resolution.  *See* Fed. R. Civ. P. 12(c) (party may move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial).

in the complaint is foreclosed by governing precedent.[4]  *Parker v. Hurley*, 474 F. Supp. 2d 261, 268 (D. Mass. 2007) ("[E]ven if proven, the allegations in the complaint would not establish a violation of plaintiffs' federal constitutional rights.  Therefore, defendant's motion to dismiss the federal claims is meritorious.").

Judgment on the pleadings is plainly warranted for Counts IV and VI.  Count IV rests on a legal standard that has no basis in the governing substantive law—indeed, it is squarely contradicted by Supreme Court decisions.  Count VI asks this Court to do the impossible—to "overrule" Supreme Court precedent.  To the extent Plaintiff might have brought those counts hoping the Supreme Court would change direction while this case was pending, that avenue is definitely closed.  The Supreme Court's decision in *Fisher II* makes clear that Counts IV and VI are without legal merit.  Accordingly, the Court should enter judgment as to Counts IV and VI for Harvard.

**I.    The Supreme Court Has Strongly Reaffirmed That Universities May Promote Student Diversity By Broadly Considering Applicants' Backgrounds And Experiences, Including Race**

In *Fisher II*, the Supreme Court reaffirmed that universities have a compelling interest in admitting a student body that is diverse along many dimensions, and that universities may consider all aspects of the applicants' background and experience, including their race or ethnicity, in doing so.  *See* 136 S. Ct. at 2210 ("[A] university may institute a race-conscious admissions program as a means of obtaining 'the educational benefits that flow from student body diversity.'"  (quoting *Fisher v. Univ. of Texas at Austin*, 133 S. Ct. 2411, 2419 (2013)

---

[4]    Plaintiff has previously suggested that Harvard's decision to answer the complaint, rather than file a pre-answer motion to dismiss under Rule 12(b)(6), constituted a concession by Harvard that the complaint states claims on which relief may be granted.  *E.g.*, Dkt. 26 at 2.  That is incorrect; a motion for judgment on the pleadings under Rule 12(c), filed after the pleadings are closed, is an entirely appropriate vehicle for arguing that the complaint is legally deficient.  *See* Fed. R. Civ. P. 12(h)(2)(B).

("*Fisher I*")). *Fisher II* involved the University of Texas at Austin's undergraduate admissions policy, under which a quarter of the class was admitted based on a consideration of applicants' academic accomplishments and "Personal Achievement Index."[5] An applicant's "Personal Achievement Index" was determined by examining all aspects of the applicant's background, including essays, letters of recommendation, leadership experience, extracurricular activities, community service, socioeconomic background, and the applicant's race. *See id.* at 2205-2206.

The Court in *Fisher II* held again, as it had held in *Bakke*, *Grutter*, and *Fisher I*, that universities have a compelling interest in "enrolling a diverse student body" because doing so "'promotes cross-racial understanding, helps to break down racial stereotypes, and enables students to better understand persons of difference races.'" *Id.* at 2210 (quoting *Grutter*, 539 U.S. at 328)). The Court further held that the University of Texas' admissions program met the narrow tailoring prong of strict scrutiny because there were no "workable" race-neutral "means for the University to attain the benefits of diversity it sought." *Id.* at 2213-2214. In particular, the Court noted, the University of Texas engaged in extensive efforts to reach potential African-American and Hispanic applicants, and had also tried to increase diversity through enhanced consideration of socioeconomic factors rather than race, but that neither of those race-neutral efforts had succeeded in achieving a diverse student body. *See id.* at 2212-2213. Rejecting the argument that the University could have "alter[ed] the weight given to "academic and socioeconomic factors," the Court also emphasized that universities are not required "to choose between a diverse student body and a reputation for academic excellence." *Id.* at 2213.

---

[5] Approximately 75 percent of the incoming class was admitted under Texas' "Top Ten Percent Law," which guaranteed admission to UT-Austin to students who graduated in the top ten percent of their high school class. *See id.* at 2205-2206.

5

The Court's decision in *Fisher II* extended a line of authority upholding the consideration of race throughout the admissions process, among many other factors, to admit a diverse student body—and put to rest any notion that the Court might abandon that precedent.  In *Regents of the University of California v. Bakke*, 438 U.S. 265 (1978), five Justices rejected the notion that the Equal Protection Clause prohibits all consideration of race in university admissions.  In *Bakke*, the Court considered an admissions policy for the University of California-Davis Medical School that expressly reserved 16 out of 100 seats for Black, Hispanic, Asian, and Native American applicants.  *Id.* at 275.  Justice Powell wrote the controlling opinion for a divided court, in which he concluded that the medical school's quota system for underrepresented minorities suffered from a "fatal flaw" due to "its disregard of individual rights as guaranteed by the Fourteenth Amendment." *Id.* at 320.  Justice Powell also concluded, however, that universities could consider the race of applicants under appropriate circumstances, and he rejected the California Supreme Court's decision that race could never be so considered.  Justice Powell explained that "the attainment of a diverse student body … clearly is a constitutionally permissible goal for an institution of higher education." *Id.* at 311-312.  He also explained that "an admissions program where race or ethnic background is simply one element—to be weighed fairly against other elements—in the selection process" was constitutionally acceptable.  *Id.* at 318.  Justice Powell specifically pointed to Harvard's admissions policy as an example of such a constitutionally permissible policy, *id.* at 316-317, and stressed that there was no "infirmity … in an admissions program where race or ethnic background is simply one element—to be weighed fairly against other elements—in the selection process," *id.* at 318.

In *Grutter v. Bollinger*, 539 U.S. 306 (2003), the Court upheld the admissions policy of the University of Michigan Law School, under which all applicants were evaluated for their

academic ability and their "talents, experiences, and potential to contribute to the learning of those around them." *Id.* at 313.  Under that "flexible" approach, admissions officials evaluated "each applicant based on all the information available in the file," with the goal of "producing classes both diverse and academically outstanding." *Id.* at 315-16.  In ruling that the Law School's flexible admissions policy satisfied equal-protection principles, the Court "endorse[d] Justice Powell's view that student body diversity is a compelling state interest that can justify the use of race in university admissions." *Id.* at 325.  The Court also emphasized that the "the Law School's admissions program, like the Harvard plan described by Justice Powell, does not operate as a quota." *Id.* at 335.  Quite the contrary, the admissions program involved "a highly individualized, holistic review of each applicant's file, giving serious consideration to all the ways an applicant might contribute to a diverse educational environment." *Id.* at 337.[6]

## II. Count IV Fails To State A Claim Because It Depends On A Legal Theory Without Support In *Bakke*, *Grutter*, Or *Fisher*

Count IV alleges a violation of Title VI because "Harvard is not using race merely to fill the last few places in the entering freshman class."  Compl. ¶ 473.  That argument has no grounding in the Supreme Court's decisions on race-conscious admissions.  The Supreme Court has never held that a university may use race only to "fill the last few places" in its entering class.  In fact, *Grutter* expressly endorsed the University of Michigan Law School's individualized, race-conscious review of "all applicants" throughout the admissions process, and *Fisher II* endorsed the individualized, race-conscious review of the one-quarter of applicants to

---

[6] In the companion case of *Gratz v. Bollinger*, 539 U.S. 244 (2003), the Court struck down the University of Michigan's undergraduate admissions program because it did "not provide … individualized consideration." *Id.* at 271.  Instead, the university mechanically awarded extra points to all minority applicants within the scoring system used to make admissions decisions. *Id.* at 271-272.  The Court specifically contrasted the University of Michigan's practice with the Harvard plan endorsed by Justice Powell in *Bakke*, noting that the University of Michigan's system "d[id] not offer applicants the individualized selection process described in Harvard's [plan]." *Id.* at 273.

the University of Texas not admitted under the Top Ten Percent plan.  Count IV thus fails to state a claim on which relief may be granted.

SFFA appears to derive its claim from a highly selective reading of Justice Powell's opinion in *Regents of University of California v. Bakke*, 438 U.S. 265 (1978).  *See* Compl. ¶¶ 471-472.  Justice Powell's opinion nowhere stated that a university could consider race only to fill the last few places of a class.  Instead, Justice Powell endorsed a "flexible" admissions program that "consider[s] all pertinent elements of diversity in light of the particular qualifications of *each applicant*."  438 U.S. at 317 (emphasis added).  Justice Powell rejected as unconstitutional an admissions system that "reserve[ed] … a specified number of seats in each class for individuals from preferred ethnic groups," *id.* at 315, but he never suggested that the consideration of race should be limited to some small subset of admissions decisions.

Justice Powell appended an excerpt from the "Harvard College Admissions Program" to his *Bakke* opinion as an example of an admissions program in which "race or ethnic background … does not insulate the individual from comparison with all other candidates for the available seats."  438 U.S. at 317.  The Harvard Plan explained that only a small number of students would be admitted principally on the basis of "extraordinary" intellectual potential—"perhaps 150 or so out of an entering class of over 1,100" at the time.  *Id.* at 322.  All other applicants would be reviewed on the basis of many factors, including interests, talents, backgrounds, and race.  *Id.*  In an effort to "illustrate the kind of significance" given to race, the Harvard Plan offered, *as an example*, a decision, "with only a few places left to fill," between an applicant who is the child of a successful physician and an applicant from an inner city, both minority candidates.  *Id.* at 324.  That hypothetical example in no way suggested that Harvard's consideration of race—or Justice Powell's endorsement thereof—was restricted to competition for only a "few places."  The rest

8

of the Harvard Plan—and Justice Powell's opinion—foreclose any effort to read a "last few places" limitation into *Bakke*, let alone subsequent Supreme Court precedent.

Had there even been any lingering uncertainty about Justice Powell's *Bakke* opinion, it was dispelled by the Court's decision in *Grutter*. That decision upheld an admissions policy that involved "a highly individualized, holistic review of each applicant's file, giving serious consideration to all the ways an applicant might contribute to a diverse educational environment." 539 U.S. at 337. Far from limiting the consideration of race to some small subset of applicants at a particular time in the admissions process, the University of Michigan Law School conducted this individualized review for "all applicants" throughout its rolling admissions process. *Id.* at 341. An admissions policy like the one in *Grutter*, which expressly considers in all admissions decisions every aspect of each applicant's background—including, potentially, race or ethnicity, cannot be characterized as a policy restricted to filling the "last few spots."

Finally, the Court in *Fisher II* considered and rejected an argument nearly identical to the premise on which Count IV rests. Fisher contended that the University of Texas's admissions policy was unconstitutional because it was not limited to "decisions between qualified applicants when there were a few places left to fill." Pet. Br. 42 (internal quotation marks omitted). It was undisputed that the university considered race when admitting applicants to fill "the remaining 25 percent or so of the incoming class" that was not admitted through the "Top Ten Percent Plan." *Fisher II*, 136 S. Ct. 2206. The Supreme Court affirmed the legality of the university's "holistic full-file review" of all applicants falling outside the top ten percent of their high school class, *id.* at 2207, rejecting Fisher's contention that the consideration of race must be limited to some small portion of applicants at a particular point in the admissions process.

These decisions make clear that there is no legal authority supporting SFFA's contention that Harvard must limit its consideration of race "to fill the last few places in the entering freshman class." Compl. ¶ 111. To the contrary, the Supreme Court has repeatedly endorsed individualized, whole-person review of *all* applicants that takes race, ethnicity, and many other attributes into account throughout the admissions process. The purported legal standard underlying Count IV—that consideration of race must be limited to the "last few spots"—does not exist. Accordingly, judgment should be entered for Harvard on Count IV.

### III.   Count VI Fails To State A Claim Because It Asks This Court To Overrule Binding Supreme Court Precedent

Count VI forthrightly calls for the "overrul[ing]" of "[t]he Supreme Court's decisions holding that there is a compelling government interest in using race as a factor in admissions in pursuit of 'diversity.'" Compl. ¶ 494. Count VI thus seeks the repudiation of nearly forty years of consistent Supreme Court precedent from *Bakke* to *Fisher II*. But *Fisher II* left no doubt that diversity remains a compelling interest, and that universities may consider race (among other factors) in a narrowly tailored way to accomplish that interest: "[A] university may institute a race-conscious admissions program as a means of obtaining 'the educational benefits that flow from student body diversity.'" 136 S. Ct. at 2210 (quoting *Fisher I*, 133 S. Ct. at 2419)).

In a recent filing, SFFA again acknowledged that Count VI "would require overruling governing Supreme Court precedent" and stated that it was "brought to preserve the issue for appellate review." SFFA Letter of July 8, 2016 at 3 n.1. That is no obstacle to this Court's dismissal of the count. Should SFFA wish to pursue this issue, it may, at the appropriate time, ask the Supreme Court to overrule *Bakke*, *Grutter*, *Fisher*, and *Fisher II*. But this Court lacks the power to act on such a request, as it is bound by the Supreme Court's precedents. *See Eulitt ex rel. Eulitt v. Maine, Dep't of Educ.*, 386 F.3d 344, 349 (1st Cir. 2004). Thus, "[o]n the face of

10

the complaint, in light of the applicable law, this count has no merit," and the Court should enter judgment for Harvard.  *Segelman v. City of Springfield*, 561 F. Supp. 2d 123, 124 (D. Mass. 2008); *see also Parker*, 474 F. Supp. 2d at 268 (holding that in light of binding precedent, "the allegations in the complaint would not establish a violation of plaintiffs' federal constitutional rights.  Therefore, defendants' motion to dismiss the federal claims is meritorious").

### IV.     Granting Judgment On The Pleadings Now Would Promote Judicial Economy

Granting judgment on the pleadings at this stage will help streamline this litigation.  In particular, Count VI suggests that Plaintiff will seek to introduce a broad array of argument and evidence, including expert testimony, to marshal a direct assault on the permissibility of race-conscious admissions at any institution of higher education.  Plaintiff alleges, for example, that universities' interest in diversity generally (*i.e.*, not just Harvard's) is merely a "clever post hoc justification for increasing the number of minority students in the student body," Compl. ¶ 497, that the federal courts have proven incapable of properly administering the requirement of strict scrutiny to ensure that universities' consideration of race is narrowly tailored, *id.* ¶ 500, and that race-conscious admissions "impose significant costs on the university community, society in general, and the very minority students these programs are purported to benefit," *id.* ¶ 501.  Thus, it appears that Plaintiff intends to use this case as a vehicle to litigate the desirability, social utility, and history of race-conscious admissions.

Granting judgment on the pleadings will make clear that these are not appropriate topics for litigation in this case, and that the parties and this Court will not have to expend resources on litigating such broad social issues.  Rather, the parties can focus their resources on Plaintiff's other allegations about *Harvard*'s specific admissions policies and practices, and can litigate this case in an efficient manner.

## CONCLUSION

The Court should grant Harvard judgment on the pleadings on Counts IV and VI of the Complaint.

Respectfully submitted,

/s/ Seth P. Waxman
Seth P. Waxman (*pro hac vice*)
Paul R.Q. Wolfson (*pro hac vice*)
Daniel Winik (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
Tel: (202) 663-6800
Fax: (202) 663-6363
seth.waxman@wilmerhale.com
paul.wolfson@wilmerhale.com
daniel.winik@wilmerhale.com

Debo P. Adegbile (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 295-6717
Fax: (212) 230-8888
debo.adegbile@wilmerhale.com

William F. Lee (BBO #291960)
Felicia H. Ellsworth (BBO #665232)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6687
Fax: (617) 526-5000
william.lee@wilmerhale.com
felicia.ellsworth@wilmerhale.com

Dated:  September 23, 2016

*Counsel for Defendant President and Fellows of Harvard College*

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Seth P. Waxman
Seth P. Waxman