UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC, <br><br> Plaintiff, <br><br> v. <br><br> PRESIDENT AND FELLOWS OF HARVARD COLLEGE (HARVARD CORPORATION), <br><br> Defendant. | Civil Action No. 1:14-cv-14176-ADB |

BRIEF OF STUDENT *AMICI CURIAE*
IN SUPPORT OF DEFENDANT'S MOTION
FOR JUDGMENT ON THE PLEADINGS ON COUNTS IV AND VI

- i -

**TABLE OF CONTENTS**

ARGUMENT ............................................................................................................................... 1

I.    Counts IV and VI Each Fail to State a Claim Because They Contradict Existing U.S. Supreme Court Precedent ................................................................................................. 1

II.    The Supreme Court Has Repeatedly Rejected the "Mismatch" Theory Asserted in Count VI................................................................................................................................ 2

CONCLUSION.............................................................................................................................. 5

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Fisher v. University of Texas at Austin*,
    133 S. Ct. 2411 (2013) .................................................................................................................2

*Fisher v. University of Texas at Austin*,
    136 S. Ct. 2198 (2016) ..............................................................................................................3, 5

*Grutter v. Bollinger*,
    539 U.S. 306 (2003) .................................................................................................................1, 2

*Regents of Univ. of California v. Bakke*,
    438 U.S. 265 (1978) ....................................................................................................................2

**OTHER AUTHORITIES**

Brief of Empirical Scholars as *Amici Curiae* in Support of Respondents at 14–16,
    *Fisher v. University of Texas at Austin*, 133 S. Ct. 2411 (2013) (No. 14-981)
    ("Scholars' *Brief*") ..................................................................................................................3, 4

Brief of Richard Sander & Stuart Taylor, Jr. as Amici Curiae in Support of
    Neither Party at 6-8, 32-35, *Fisher v. University of Texas at Austin*, 133 S. Ct.
    2411 (2013) (No. 11-345) ("Sander *Fisher I* Brief") ..................................................................3

Brief of Richard Sander *as Amicus Curiae* in Support of Neither Party at 17-20,
    *Fisher v. University of Texas at Austin*, 136 S. Ct. 2198 (2016) (No. 14-981)
    ("Sander *Fisher II* Brief") ...........................................................................................................3

Richard H. Sander, *Mismeasuring the Mismatch: A Response to Ho*, 114 Yale L.J.
    2005, 2006 (2005) ........................................................................................................................4

Richard H. Sander, *A Systemic Analysis of Affirmative Action in American Law
    Schools*, 57 Stan. L. Rev. 367 (2004) ..........................................................................................3

Stacy Berg Dale & Alan B. Krueger, *Estimating the Payoff to Attending a More
    Selective College: An Application of Selection on Observables and
    Unobservables* ..............................................................................................................................4

Stacy Berg Dale & Alan B. Krueger, *Estimating the Return to College Selectivity
    over the Career Using Administrative Earnings Data* (Nat'l Bureau of Econ.
    Research, Working Paper No. 17159, June 2011), *available at*
    http://www.nber.org/papers/w17159 ............................................................................................4

Transcript of Oral Argument, *Fisher v. University of Texas at Austin*,
   136 S. Ct. 2198 (2016) (No. 14-981), *available at*
   https://www.supremecourt.gov/oral_arguments/argument_transcripts/14-981_4h25.pdf........5

*Amici curiae* ("*Amici*") are a group of current and prospective students of Harvard who value Harvard's interest in promoting diversity through race-conscious admissions. The Court granted students leave to participate in this action as *amici*, allowing students to "submit a brief or memorandum of law . . . on any dispositive motion in this case." Order at 23, June 15, 2015, ECF No. 52. As Harvard's motion for judgment on the pleadings is a dispositive motion, *amici* file this brief in support. Neither Count IV nor Count VI states a claim upon which relief can be granted. Further, the Supreme Court has soundly rejected the "mismatch" theory plaintiff asserts in Count VI. Judgment should be made for Harvard on both counts.

## ARGUMENT

### I.  Counts IV and VI Each Fail to State a Claim Because They Contradict Existing U.S. Supreme Court Precedent.

As Harvard explains, neither Count IV nor Count VI states a claim upon which relief can be granted. Mem. in Supp. of Def.'s Mot. J. on the Pleadings on Counts IV and VI, 7-11, ECF No. 186 ("Motion on Pleadings"). Count IV rests on a faulty premise. Plaintiff claims that Harvard is in violation of Title VI because it "is not using race merely to fill the last few places in the entering class." Compl. ¶ 473. The Supreme Court never established such a requirement, and it has approved admissions practices that consider the race of each member of an enrolling class. Motion on Pleadings at 7-8 (citing *Grutter v. Bollinger*, 539 U.S. 306 (2003)).

Count VI asks this Court to overturn forty years of Supreme Court decisions "holding that there is a compelling government interest in using race as a factor in admissions in pursuit of 'diversity.'" Compl. ¶ 494. The Supreme Court has repeatedly ruled, most recently in *Fisher II*, that race-conscious admissions are permissible. *Fisher v. University of Texas at Austin*, 136 S. Ct. 2198, 2210 (2016) ("*Fisher II*") ("[A] university may institute a race-conscious

admissions program as a means of obtaining 'the educational benefits that flow from student body diversity'") (citing *Fisher v. University of Texas at Austin*, 133 S. Ct. 2411, 2419 (2016) ("*Fisher I*")); *Grutter v. Bollinger*, 539 U.S. 306, 343 (2003) ("[T]he Equal Protection Clause does not prohibit the Law School's narrowly tailored use of race in admissions decisions to further a compelling interest in obtaining the educational benefits that flow from a diverse student body."); *Regents of Univ. of California v. Bakke*, 438 U.S. 265, 320 (1978) ("[t]he State has a substantial interest that legitimately may be served by a properly devised admissions program involving the competitive consideration of race and ethnic origin").

This Court is bound by Supreme Court precedent. *Fisher II* was decided this year, after this case was filed. Under *Fisher II*, race-conscious admissions practices are permissible, for the entire admissions pool or for a smaller subset. Circumstances have not changed in the four months since the *Fisher II* decision, and plaintiff has presented no basis for finding its claims in Counts IV and VI to be consistent with the outcome of *Fisher II*. Therefore, Harvard should be granted judgment on the pleadings on both counts.

## II.     The Supreme Court Has Repeatedly Rejected the "Mismatch" Theory Asserted in Count VI.

Plaintiff alleges that race-conscious admissions practices harm "the very minority students these programs are purported to benefit" and therefore such race-conscious admissions policies cannot serve a compelling state interest. Compl. ¶ 501. This allegation essentially restates the so-called "mismatch theory," a theory that was squarely rejected in both *Fisher I* and *Fisher II*. Mismatch theory posits that, when minority students are admitted to universities through race-conscious admissions programs, they have academic credentials below the level of their classmates' and, therefore, do not thrive following enrollment, opting out of difficult majors or graduate programs they would have otherwise pursued in schools better "matched" to their

skill sets.  *See* Richard H. Sander, *A Systemic Analysis of Affirmative Action in American Law Schools*, 57 Stan. L. Rev. 367 (2004); Brief of Richard Sander & Stuart Taylor, Jr. as Amici Curiae in Support of Neither Party at 6-8, 32-35, *Fisher v. University of Texas at Austin*, 133 S. Ct. 2411 (2013) (No. 11-345) ("Sander *Fisher I* Brief"); Brief of Richard Sander *as Amicus Curiae* in Support of Neither Party at 17-20, *Fisher v. University of Texas at Austin*, 136 S. Ct. 2198 (2016) (No. 14-981) ("Sander *Fisher II* Brief").

Despite its continuing allure to Plaintiff, mismatch theory has been found untenable when tested with empirical evidence.  *See* Brief of Empirical Scholars as *Amici Curiae* in Support of Respondents at 14–16, *Fisher v. University of Texas at Austin*, 133 S. Ct. 2411 (2013) (No. 14-981) ("Scholars' Brief").  Indeed, the consensus of empirical scholars over the past seventeen years is that students of color attending universities with race-conscious admissions programs achieve *higher* grades, graduate at *higher* rates, and secure greater earnings than their peers at less selective schools.  *Id.* at 14-16 (citing authorities).

Moreover, as was briefed and argued before the Supreme Court in *Fisher II,* mismatch theory is methodologically flawed, violating basic principles of causal inference.  Several notable errors in the theory and leading research the purports to support mismatch theory were shown to rely on questionable and unreliable research methods.  *Id.* at 16-23.  To show that one thing causes another, researchers must generate comparison groups whose members are as similar as possible to each other, so that different outcomes for each group may be accurately attributed to different experiences, not pre-existing characteristics.  Where they cannot fully account for pre-existing dissimilarities, researchers must try to adjust for the dissimilarities using statistically valid methods.

Studies relied upon by mismatch theory proponents fail to achieve these important research objectives.  For example, studies purporting to show that race-based admissions policies at law schools harm African Americans' bar passage rates compared bar passage rates between two dissimilar groups:  African American students at more selective schools with white students at less selective ones -- rather than comparing bar passage rates of African American students who attended more selective law schools with African American  students who attended less selective law schools.  *Id*. at 20 (citing Richard H. Sander, *Mismeasuring the Mismatch: A Response to Ho*, 114 Yale L.J. 2005, 2006 (2005)).

That erroneous conclusions are drawn by mismatch theory proponents relying on such studies has been addressed at great length by the amicus briefs filed by Empirical Scholars in the Fisher cases and need not be restated here.  Nevertheless, it is noteworthy that where researchers have corrected the basic methodological flaws of mismatch theory research, they have reached conclusions opposite to those of mismatch theory proponents.  *Id*. at 25-26 (citing Stacy Berg Dale & Alan B. Krueger, *Estimating the Payoff to Attending a More Selective College: An Application of Selection on Observables and Unobservables*, 117 Q.J. Econ. 1491 (2002); Stacy Berg Dale & Alan B. Krueger, *Estimating the Return to College Selectivity over the Career Using Administrative Earnings Data* (Nat'l Bureau of Econ. Research, Working Paper No. 17159, June 2011), *available at* http://www.nber.org/papers/w17159).  For example, a study involving tax data found that, while the selectivity of a school does not increase earnings for students as a whole, it does for black and Latino students.  *Id.*

In sum, plaintiff's mismatch theory has no place in this case or any other. If *Fisher I* did not fully put the mismatch argument to rest, *Fisher II* sounded its death knell, as it was raised, considered,[1] and in no way embraced by the Court's opinion.

This Court has correctly ruled that plaintiff's attempt to get evidence on current students' academic performance from Harvard to further its use of mismatch theory is not likely to lead to admissible evidence. Order ¶ 4, Sept. 9, 2016, ECF No. 181. Plaintiff's assertions based on mismatch theory, as *Fisher II* confirms, are not a legally sufficient basis to challenge the universities' compelling interest in using race-conscious admissions to achieve diversity.

## CONCLUSION

For the foregoing reasons, the Court should grant Harvard's motion for judgment on the pleadings on Counts IV and VI.

Respectfully submitted,

Dated: October 19, 2016

/s/ Lawrence Culleen
Lawrence Culleen (*pro hac vice*)
ARNOLD & PORTER LLP
601 Massachusetts Ave., NW
Washington, DC 20004
(Please note new address)
202-942-5477
lawrence.culleen@aporter.com

/s/ Matthew Cregor
Matthew Cregor (BBO# 673785)
LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND ECONOMIC JUSTICE
61 Batterymarch St., 5th Floor
Boston, MA 02110
617-988-0609
mcregor@lawyerscom.org

---

[1] *See* Transcript of Oral Argument at 67, *Fisher v. University of Texas at Austin*, 136 S. Ct. 2198 (2016) (No. 14-981), *available at* https://www.supremecourt.gov/oral_arguments/argument_transcripts/14-981_4h25.pdf.

/s/ Jon M. Greenbaum
Jon M. Greenbaum (*pro hac vice*)
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1401 New York Avenue, NW, Suite 400
Washington, DC 20005
Tel: (202) 662-8600
jgreenbaum@lawyerscommittee.org

ATTORNEYS FOR *AMICI CURIAE*

**CERTIFICATE OF CONFERENCE**

In accordance with Local Rule 7.1(a), I hereby certify that counsel for *Amici curiae* conferred with counsel for Plaintiff and counsel for Defendant with respect to this filing.

/s/ Lawrence Culleen
Lawrence Culleen

**CERTIFICATE OF SERVICE**

In accordance with Local Rule 5.2(b), I hereby certify that this document filed through the ECF system on October 19, 2016 will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Lawrence Culleen
Lawrence Culleen