UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC. | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 14-cv-14176-ADB |
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE (HARVARD CORPORATION), | * * * * | |
| Defendant. | * | |

## MEMORANDUM AND ORDER DENYING MOTION TO DISMISS

BURROUGHS, D.J.

### I.  INTRODUCTION

In this action, Students for Fair Admissions, Inc. ("SFFA") alleges that Harvard College ("Harvard") employs racially and ethnically discriminatory policies and procedures in administering its undergraduate admissions program, in violation of Title VI of the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Presently pending before this Court is Harvard's motion to dismiss for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1). [ECF No. 187]. Harvard filed the instant motion on September 23, 2016, and SFFA opposed it on October 21, 2016 [ECF No. 204].[1] For the reasons stated below, the motion is <u>DENIED</u>.

---

[1] Both parties also filed declarations and exhibits in support of their positions. [ECF Nos. 188, 205].

## II.  RELEVANT BACKGROUND[2]

SFFA filed its Complaint with this Court on November 17, 2014 [ECF No. 1], and Harvard filed its Answer on February 18, 2015 [ECF No. 17]. SFFA's Complaint sets forth two types of allegations. First, SFFA contends that the general manner in which Harvard considers race in its undergraduate admissions program violates the Equal Protection Clause. As opposed to using race as a mere "plus" factor in admissions decisions, SFFA claims that Harvard engages in prohibited "racial balancing." Second, SFFA alleges that Harvard's policies invidiously discriminate against Asian-American applicants in particular because, by admitting only a limited number of Asian-American applicants each year, Harvard, in effect, forces Asian-American applicants to compete against each other for those spots. Consequently, a large number of otherwise highly-qualified Asian-American applicants are allegedly denied admission to Harvard on the basis of their race or ethnicity.

SFFA is an Internal Revenue Code Section 501(c)(3) organization whose claimed mission is to defend human and civil rights secured by law, including equal protection rights, through litigation or other lawful means.[3] SFFA brings this action on behalf of its members. Its membership is composed of a coalition of applicants and prospective applicants to institutions of higher education, along with their parents and other individuals, including at least one Asian-American student member who applied for and was denied admission to Harvard's 2014 entering

---

[2] There are other motions pending before this Court, including Harvard's motion for judgment on the pleadings pursuant to Rules 12(c) and 12(h)(2) [ECF No. 185]. In this Memorandum and Order, the Court addresses only the motion to dismiss for lack of jurisdiction and tailors its discussion accordingly.

[3] The Court includes additional facts regarding SFFA's membership and organizational structure infra at 6–7.

2

class (the "Applicant"). Complaint ¶¶ 12–24.[4] According to SFFA, this Applicant intends to transfer to Harvard when the school stops using its race-based discrimination admissions policy.

The Complaint requests the following relief: declaratory judgments that Harvard's admissions policies and procedures violate Title VI of the Civil Rights Act of 1964 and that any use of race or ethnicity in the educational setting violates the Fourteenth Amendment and Title VI; permanent injunctions prohibiting Harvard from using race as a factor in future undergraduate admission decisions and requiring it to make its admissions decisions in a race-blind manner; attorneys' fees and costs; and any other relief this Court finds appropriate.

### III.   LEGAL STANDARD

Because Harvard's Rule 12(b)(1) challenge to SFFA's constitutional standing implicates this Court's subject matter jurisdiction, see P.R. Tel. Co. v. T-Mobile P.R. LLC, 678 F.3d 49, 57 (1st Cir. 2012), the Court is not restricted to the four corners of the Complaint and "may consider whatever evidence has been submitted, such as the depositions and exhibits," Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996); see also Torres-Negron v. J & N Records, LLC, 504 F.3d 151, 163 (1st Cir. 2007); Katz v. Pershing, LLC, 806 F. Supp. 2d 452, 456 (D. Mass. 2011), aff'd, 672 F.3d 64 (1st Cir. 2012) ("A court is permitted to look beyond the pleadings to determine jurisdiction on a 12(b)(1) motion, hence the formality of converting the motion to one for summary judgment need not be observed.").

---

[4] Following the filing of the Complaint, SFFA's membership continued to grow and it added additional members, including several that it identifies as "Standing Members," who have submitted signed declarations in connection with this motion. See Exhibits to [ECF No. 205]. The Standing Members include Asian-American applicants who were rejected from Harvard, Asian-American high school students who claim they will apply to Harvard, and parents of applicants and prospective applicants.

**IV. DISCUSSION**

    **A. Associational Standing**

The Constitution gives the judiciary power to hear only "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. The Supreme Court has interpreted this requirement to mean that courts may decide only "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102 (1998). A plaintiff's standing to sue is "part of the common understanding of what it takes to make a justiciable case." Id. Therefore, "the absence of standing sounds the death knell for a case." Microsystems Software, Inc.v. Scandinavia Online AB, 226 F.3d 35, 39 (1st Cir. 2000). The standing determination is "claim-specific," meaning that an individual plaintiff "must have standing to bring each and every claim that [he or] she asserts." Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012).

Article III standing requires that three conditions be satisfied. "First and foremost, there must be alleged (and ultimately proved) an 'injury in fact.'" Steel Co., 523 U.S. at 103 (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)). This injury "must be concrete in both a qualitative and temporal sense," "distinct and palpable" as opposed to "abstract," and "actual or imminent" as opposed to "conjectural or hypothetical." Whitmore, 495 U.S. at 155 (internal quotations and citations omitted). Second, standing requires causation, defined as a "fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." Steel Co., 523 U.S. at 103. Finally, standing requires "redressability—a likelihood that the requested relief will redress the alleged injury." Id.

"[A]n association may have standing solely as the representative of its members even in the absence of injury to itself, in certain circumstances." Camel Hair & Cashmere Inst. of Am.,

Inc. v. Associated Dry Goods Corp., 799 F.2d 6, 10 (1st Cir. 1986) (citing Warth v. Seldin, 422 U.S. 490, 511 (1975)). Specifically, "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977). The first two Hunt prongs are constitutional, and the third is prudential. United Food & Com. Workers Union Local 751 v. Brown Grp., Inc., 517 U.S. 544, 555–57 (1996). Only one member need have individual standing in order for an organization to satisfy the first Hunt factor. See Playboy Enters., Inc. v. Pub. Serv. Comm'n of P.R., 906 F.2d 25, 34 (1st Cir. 1990) ("[T]he Supreme Court has never required that every member of an association have standing before it can sue on behalf of its members. 'The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit.'" (quoting Warth, 422 U.S. at 511)).

The Hunt Court also held that an organization that was not "a traditional voluntary membership organization" because it did not have any formal members could still have associational standing if its constituents "possess[ed] all of the indicia of membership in an organization." Hunt, 432 U.S. at 344–45.[5] Indicia of membership, as identified by the Hunt Court, include that the purported members "alone elect the members of the Commission; they

---

[5] The Hunt Court discussed two other reasons justifying its holding that the organization at issue in that case had associational standing: that it "serves a specialized segment of the State's economic community which is the primary beneficiary of its activities, including the prosecution of this kind of litigation" and "the interests of the Commission itself may be adversely affected by the outcome of this litigation." Hunt, 432 U.S. at 344–45. Here, the parties focus only on the indicia-of-membership rationale.

alone may serve on the Commission; they alone finance its activities, including the costs of this lawsuit, through assessments levied upon them." Id. Ultimately, the Hunt Court found that the Commission at issue in that case had associational standing even though it was not a typical membership organization, at least in part because "[i]n a very real sense . . . the Commission represents the State's [apple] growers and dealers and provides the means by which they express their collective views and protect their collective interests." Id. at 345. Harvard argues that the indicia-of-membership test articulated in Hunt should be applied to all organizations, while SFFA argues that it is not applicable to membership organizations, like the SFFA.

### B. Nature of the SFFA

The SFFA, a nonstock corporation, was formed under the laws of Virginia on July 30, 2014. [ECF No. 188, Ex. A ("Blum Tr.") at 11:23–25]. According to SFFA's bylaws, as amended on June 19, 2015 (hereinafter, the "Bylaws"),[6] the organization's purpose is "to defend human and civil rights secured by law, including the right of individuals to equal protection under the law, through litigation and other lawful means." [ECF No. 188, Ex. B ("Bylaws"), art. II]. The Board of Directors, which manages the business and affairs of SFFA, is composed of four Board-Elected Directors and one Member-Elected Director. Bylaws, art. IV, §§ 4.01, 4.02. The Board-Elected Directors are elected by a majority vote of the directors then in office, and the Member-Elected Director is elected by a majority vote of the members. Id. § 4.04. Actions by the Board of Directors generally require a majority vote of the Directors present at any given meeting (where there is a quorum, defined as a majority of all Directors). Id. § 4.08.

SFFA has formal members, referred to as "General Members." According to the SFFA Bylaws, an individual qualifies as a General Member if he or she "seeks to support the purposes

---

[6] Prior to the June 19, 2015 amendment, SFFA members had no voting rights and were not required to make any financial contributions to join.

and mission of the Corporation, pays membership dues as prescribed by the Board of Directors, and meets any additional standards and procedures that may be prescribed from time to time." Bylaws, art. III, § 3.02. The Bylaws further specify that General Members are not "members" within the meaning of the Virginia Nonstock Corporation Act.[7] Bylaws, art. III, § 3.01. Initially, SFFA did not require a membership fee and a person became a member by providing their first and last name and e-mail address through the SFFA website, Blum Tr. at 130:16–133:22, but SFFA has since begun requiring an initial, one-time contribution of ten dollars, see [ECF No. 188, Ex. B at 2].

SFFA now has approximately 20,000 members, although for present purposes it only asserts associational standing based on the circumstances of thirteen of its members, most of whom have submitted signed declarations in support of SFFA's opposition to the motion to dismiss. See [ECF No. 204 at 6]; see also Exhibits to [ECF No. 205]. Seven of these 13 members are Asian-American students who applied to and were rejected from Harvard [ECF Nos. 205-26, 34, 35, 38, 39, 40, 41] and two are Asian-American high school students who intend to apply to Harvard in the future [ECF Nos. 205-36, 42]. Their declarations state that they have voluntarily joined SFFA, support its mission, have been in contact with SFFA, and had the opportunity to express their views on the direction of this litigation.

---

[7] The Virginia Nonstock Corporation Act defines a "member" as "one having a membership interest in a corporation in accordance with the provisions of its articles of incorporation or bylaws." Va. Code § 13.1-803. "Membership interest" is defined as the "interest of a member in a domestic or foreign corporation, including voting and all other rights associated with membership." Id.

7

### C. Applicability of the Indicia-of-Membership Test to SFFA

The thrust of Harvard's argument is that SFFA's General Members play no meaningful role in the organization and thus SFFA does not genuinely represent them such that it has associational standing to sue on their behalf. Harvard interprets the cases on associational standing following Hunt to require that an association's constituents exhibit "indicia of membership," in addition to the three Hunt prerequisites commonly cited in these cases, in order for the association to have standing to represent them.[8] See, e.g., [ECF Nos. 188 at 8; 220 at 7 n.5]. SFFA responds that the Court need not undertake an indicia-of-membership inquiry where an organization has actual members and satisfies the three Hunt prerequisites, but that it would nonetheless withstand such an inquiry.

Generally speaking, the indicia-of-membership test for associational standing purposes is applied when a case requires a functional analysis of whether an association has standing to sue on behalf of its constituents, often in situations when the organization does not have any actual members, such as the state agency involved in Hunt. See Hunt, 432 U.S. at 344 ("[W]hile the apple growers and dealers are not 'members' of the Commission in the traditional trade association sense, they possess all of the indicia of membership in an organization."); see also Funeral Consumers All., Inc. v. Serv. Corp. Int'l, 695 F.3d 330, 344 n.9 (5th Cir. 2012) ("If the association seeking standing does not have traditional members, as here, the association establishes its standing by proving that it has 'indicia of membership'. . . ." (citing Hunt, 432 U.S. at 344–45)); Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc., 675

---

[8] "'Individuals identified for standing purposes by an organization who are not legally 'members' [are] referred to as . . . 'constituents[.]'" Citizens Coal Council v. Matt Canestrale Contracting, Inc., 40 F. Supp. 3d 632, 639 (W.D. Pa. 2014) (quoting See Karl S. Coplan, Is Voting Necessary? Organization Standing and Non-Voting Members of Environmental Advocacy Organizations, 14 Southeastern Envtl. L.J. 47, 52 n. 26 (2005)).

F.3d 149, 159 (2d Cir. 2012) ("Hunt held that the Constitution requires that the constituents of a non-membership organization manifest the 'indicia of membership' for that organization to have associational standing to sue on their behalf."); Ball by Burba v. Kasich, No. 2:16-CV-00282, 2017 WL 1102688, at *13 (S.D. Ohio Mar. 23, 2017) ("With respect to the first [Hunt] prong, when an association lacks traditional members, the association may nonetheless have standing where its constituents 'possess all of the indicia of membership in an organization.'" (quoting Hunt, 432 U.S. at 344)); AARP v. U.S. Equal Emp't Opportunity Comm'n, No. CV 16-2113 (JDB), 2016 WL 7646358, at *5 (D.D.C. Dec. 29, 2016) ("[M]any of the cases that do discuss indicia of membership are those in which the organization at issue clearly does not have members."); Sylvia's Haven, Inc. v. Mass. Dev. Fin. Agency, 397 F. Supp. 2d 202, 207–08 (D. Mass. 2005) (conducting indicia-of-membership analysis in context of informal association, but concluding that it did not meet the other Hunt prerequisites). Thus, Hunt's indicia-of-membership test clearly applies in determining the associational standing of organizations that lack actual members.

It is less clear, however, whether Hunt's indicia-of-membership test can or should ever be undertaken in connection with associations that actually have identifiable members, such as SFFA, and, if so, under what circumstances. Several judges have noted that this issue is unresolved. See Citizens Coal Council v. Matt Canestrale Contracting, Inc., 40 F. Supp. 3d 632, 643 (W.D. Pa. 2014) ("It is questionable whether the 'indicia of membership' test applies at all where, as here, the organization is clearly a volunteer membership organization . . . ."); AARP, 2016 WL 7646358, at *5 ("There appears to be a gap in the associational standing case law about when or how the indicia of membership inquiry should be applied."). Without expressly addressing it, courts in this Circuit have routinely not applied the indicia-of-membership test, and

9

instead simply considered the three delineated Hunt prerequisites, when the associations were membership organizations. See, e.g., Merit Const. All. v. City of Quincy, 759 F.3d 122, 126–27 (1st Cir. 2014) (holding that organization had associational standing without conducting indicia-of-membership test); Camel Hair & Cashmere Inst. of Am., Inc., 799 F.2d at 10–12 (same); Sexual Minorities Uganda v. Lively, 960 F. Supp. 2d 304, 325–28 (D. Mass. 2013) (same).[9] Furthermore, several judges have explicitly noted that Hunt's indicia-of-membership test applies *only* when an organization is a non-membership organization. See Brady Campaign to Prevent Gun Violence v. Salazar, 612 F. Supp. 2d 1, 29 (D.D.C. 2009) ("The inquiry into the 'indicia of membership'. . . is necessary only when an organization is not a 'traditional membership organization.'" (quoting Gettman v. DEA, 290 F.3d 430, 435 (D.C. Cir. 2002))); Cal. Sportfishing Prot. All. v. Diablo Grande, 209 F. Supp. 2d 1059, 1066 (E.D. Ca. 2002) ("[T]he 'indicia of membership' requirement in Hunt applies only to situations in which an organization is attempting to bring suit on behalf of individuals who are not members.").[10]

Although Harvard argues that Hunt and its progeny support the application of an indicia-of-membership test to all organizations asserting associational standing, regardless of whether they formally have members, the Court is not aware of any case that explicitly stands for this proposition. Under such a formulation, associational standing would turn on a subjective

---

[9] Harvard reconciles such cases with its legal position by claiming that courts can ignore the indicia-of-membership test when the issue of whether an association is a genuine membership organization is undisputed. This view, however, is not discussed or endorsed in the case law. Further, courts have "an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." Summers v. Earth Island Inst., 555 U.S. 488, 499 (2009).

[10] Harvard argues that both these cases are inapposite because they do not involve organizations in which members had as little control as in SFFA's case. [ECF No. 220 at 5]. Even if factually distinguishable, however, the legal reasoning is relevant.

evaluation of whether "members" are "genuine" members or not, with the organization's view of its own members being only one factor in the analysis.

In Hunt, the Supreme Court concluded that the Washington State Apple Advertising Commission was "not a traditional voluntary membership organization such as a trade association, for it ha[d] no members at all." Hunt, 432 U.S. at 342. The Commission was created by statute and was "composed of 13 Washington apple growers and dealers who [we]re nominated and elected within electoral districts by their fellow growers and dealers." Id. at 337. The Hunt Court nonetheless concluded that, although the Commission had no members "in the traditional trade association sense," its constituents "possess[ed] all the indicia of membership in an organization," which permitted associational standing. Id. at 344–45. There, the indicia of membership established that "the Commission represent[ed] the State's growers and dealers and provide[d] the means by which they express[ed] their collective views and protect[ed] their collective interests." Id. at 345.

The Court reads Hunt as standing for the following propositions: (1) a membership organization has standing to sue on behalf of its members if it satisfies the three Hunt prerequisites (in short, that at least one member has a personal injury-in-fact, germaneness, and no need for individual member participation); and (2) a non-membership organization might still have associational standing provided it has sufficient indicia of membership as more fully set forth in Hunt and its progeny. In introducing the indicia-of-membership test, Hunt expanded the category of organizations that could have associational standing, rather than limiting it.

Harvard cites Wash. Legal Found. v. Leavitt, 477 F. Supp. 2d 202, 208–09 (D.D.C. 2007) and Package Shop, Inc. v. Anheuser-Busch, Inc., No. 83-513, 1984 WL 6618, at *41 (D.N.J. Sept. 25, 1986) in support of the proposition that "courts have held that organizations referring to

11

their supporters as 'members' nevertheless lacked standing to represent those members in litigation." Harvard then cites the following cases to argue that courts have applied the indicia-of-membership test in determining whether organizations should be allowed "to sue on behalf of their members:" Friends of the Earth Inc. v. Chevron Chemical Co., 129 F.3d 826, 829 (5th Cir. 1997); Playboy Enters., Inc., 906 F. 2d at 25; and Concerned Citizens Around Murphy v. Murphy Oil USA, Inc., 686 F. Supp. 2d 663, 675–76 (E.D. La. 2010).

None of these cases require or even recommend the application of the indicia-of-membership test to all associational standing cases. For example, in Washington Legal Foundation v. Leavitt, an organization tried to assert associational standing on behalf of individuals who were not formally WLF members, which led the court to undertake a functional analysis of the organization's ability to sue on behalf of those individuals. 477 F. Supp. 2d at 208. Thus, the court applied the functional indicia-of-membership analysis in determining whether the organization could assert associational standing on behalf of non-members. Here, in contrast, SFFA seeks to represent individuals who are clearly members as defined by its Bylaws. The other cases similarly do not hold that the indicia-of-membership test applies to membership organizations like SFFA and the factual circumstances triggering the indicia-of-membership analysis in those cases are not present here.[11] See Package Shop, Inc., 1984 WL 6618, at *39–40 (using indicia-of-membership analysis to determine whether organization was truly a membership organization for purposes of the lawsuit where organization had been formed long before for another purpose and members had shown no support for organization's current purpose); Friends of the Earth, Inc., 129 F.3d at 829 ("[T]he 'indicia of membership' test is the

---

[11] Playboy Enterprises is inapposite because the First Circuit did not undertake the indicia-of-membership analysis as outlined in Hunt. Playboy Enters., Inc., 906 F.2d at 34–35 (rebutting party's argument that organization was just an "empty husk" and did not represent its members' interests, but without applying the Hunt indicia-of-membership test).

correct one to apply to determine whether a purported corporation, *despite the failure to meet state law requirements*, has 'members' whose interests it can represent in federal court." (emphasis added)); Concerned Citizens Around Murphy, 686 F. Supp. 2d at 675–77 (E.D. La. 2010) (holding that organization lacking some corporate formalities and formal membership structure had associational standing because it met Hunt's indicia-of-membership test).

Thus, the key cases Harvard relies on to support the proposition that Hunt's membership test should be applied to actual membership organizations all involved organizations that, unlike SFFA, asserted standing on behalf of non-members or had factual circumstances, not present here, that called for a functional analysis of its constituents. Further, the Court's conclusion—that the indicia-of-membership inquiry should not be applied to SFFA under the circumstances of this case—is consistent with the rationale underlying associational standing. In Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock, the Supreme Court reaffirmed the principles in Hunt and rejected the Secretary of Labor's argument that litigation based on associational standing would not guarantee adequacy of representation. 477 U.S. 274, 288–89 (1986). The Supreme Court noted that "the doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others." Id. at 290. The circumstances here do not call for a functional analysis of SFFA's membership. Where SFFA has clearly stated its mission in its Bylaws and website, where it has consistently, and recently, in highly public ways, pursued efforts to end alleged racial discrimination in college admissions through litigation, and where its members voluntarily associate themselves with the organization, it can be presumed for the purposes of standing that SFFA adequately represents the interests of its current members without needing to test this further based on the indicia-of-membership factors.

### D. Hunt's Prerequisites

Therefore, it is sufficient, for associational standing in this case, if SFFA meets the three criteria outlined in Hunt: that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt, 432 U.S. at 343. Because Harvard does not dispute that the three Hunt prerequisites are met here, apart from the argument that the indicia-of-membership test should be applied to determine whether the SFFA is a membership organization in the first place, the Court addresses them only briefly.

To satisfy the first Hunt requirement, "an organization suing as representative [must] include at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association." United Food and Com. Workers Union Local, 517 U.S. at 555. SFFA has provided the affidavits of a subset of its members, referred to as Standing Members, which demonstrate that at least some of these individuals, the rejected applicants, would have standing to sue on their own.[12] See Gratz v. Bollinger, 539 U.S. 244, 262–63 (2003) (holding that rejected applicant "able and ready" to transfer "has standing to seek prospective relief with respect to the University's continued use of race in undergraduate admissions").

Second, the lawsuit is germane to SFFA's purpose because, as stated in its Bylaws, SFFA's mission is "to defend human and civil rights secured by law, including the right of individuals to equal protection under the law." Pursuing litigation to end alleged racial discrimination in higher education admission furthers that purpose.

---

[12] Because it was not raised by the parties and it is sufficient for associational standing that at least one member have standing to sue on his own, the Court does not address the issue of whether prospective college students, who have not yet applied, or the parents of applicants have standing to sue.

Finally, SFFA requests only declaratory and injunctive relief, and obtaining such relief, based on the claims in this case, would not require individual participation by its members. See Camel Hair & Cashmere Inst. of Am., Inc., 799 F.2d at 12 ("Actions for declaratory, injunctive and other forms of prospective relief have generally been held particularly suited to group representation."); see also Playboy Enters., 906 F.2d at 35 ("[J]ust because a claim may require proof specific to individual members of an association does not mean the members are required to participate as parties in the lawsuit."). Here, the injunctive and declaratory relief requested need not be tailored to or require any individualized proof from any particular member.

Although the Court disagrees with Harvard that Hunt and subsequent cases require that membership organizations be subjected to an indicia-of-membership test as a matter of course, it recognizes that there may be situations in the future in which the adequacy of an organization's representativeness is so seriously in doubt that the Court should consider Hunt's indicia-of-membership analysis or some other criteria to further evaluate the issue of associational standing. See Brock, 477 U.S. at 290 ("Should an association be deficient in this regard [*i.e.*, adequacy of representation], a judgment won against it might not preclude subsequent claims by the association's members without offending due process principles. And were we presented with evidence that such a problem existed either here or in cases of this type, we would have to consider how it might be alleviated."); see also Camel Hair & Cashmere Inst. of Am., Inc., 799 F.2d at 11. This is, however, not one of those situations. A substantial part of SFFA's mission is to end race-based admissions policies at American universities. Blum Tr. 47:16–25. SFFA clearly communicated its mission, which has stayed consistent since its founding, to prospective members through its website and in its outreach efforts. See, e.g., Blum Tr. 110:2–7. Further,

SFFA's endeavors—both here and in North Carolina—are highly public.[13] SFFA's members voluntarily join the organization, presumably knowing its purpose, by providing their name and contact information and paying a small fee.[14] See Friends of the Earth, 129 F.3d at 829. The Bylaws plainly lay out who qualifies as a member and what a member's role is and permit members to vote for one member of the Board of Directors, who participates in Board decisions, thereby granting members more direct access to SFFA's management. Further, to support the organization, members can voluntarily donate funds, in addition to the one-time, ten dollar contribution (required since June 2015) as a way of influencing the organization. Moreover, the voluntary nature of SFFA's membership constitutes a form of influence by the members that Harvard seems to underestimate. See Karl S. Coplan, Is Voting Necessary? Organization Standing and Non-Voting Members of Environmental Advocacy Organizations, 14 Southeastern Envtl. L.J. 47, 79 (2005) ("The ability of an organization's constituents to join or quit the group would appear to be a very effective means of ensuring the responsiveness of the organization's management—and also ensuring the 'concrete adverseness' required for organizational

---

[13] SFFA also initiated a case against the University of North Carolina and members of its board of governors, the University of North Carolina at Chapel Hill and members of its board of trustees and various school officials, alleging that the university's admissions process violates the Fourteenth Amendment of the U.S. Constitution and Title VI of the Federal Civil Rights Act of 1964. See Students for Fair Admissions, Inc. v. University of North Carolina, et al., No. 1:14-cv-00954 (M.D.N.C. Nov. 17, 2014), [ECF No. 1].

[14] The First Circuit has held that "[w]here . . . there are no allegations of manipulative abuse of the rule, the time-of-filing rule is inapposite to the federal question context." U.S. ex rel. Gadbois v. PharMerica Corp., 809 F.3d 1, 5 (1st Cir. 2015), cert. denied, 136 S. Ct. 2517 (2016). Although Harvard suggests that the circumstances surrounding the amendment of the Bylaws might indicate manipulation, it stops short of actually alleging that it occurred in this case. The Court notes that the Bylaws were amended over a year *before* Harvard filed its motion to dismiss for lack of standing. Finally, where SFFA could move to dismiss the lawsuit and possibly re-file it to avoid this issue, dismissal on this ground would only waste judicial and party resources. Accordingly, the Court examines SFFA's current membership structure, rather than the structure that existed at the time the Complaint was filed, although it is not at all clear that the structures are so materially different as to significantly alter the analysis.

standing." (quoting Baker v. Carr, 369 U.S. 186, 204 (1962))). The Court also notes that courts have found associational standing even in situations where members had no voting majority. See, e.g., Or. Advocacy Ctr. v. Mink, 322 F.3d 1101, 1111 (9th Cir. 2003).

Finally, SFFA has submitted declarations of certain members whom it specifically identifies for standing purposes. See Exhibits to [ECF No. 205]. Harvard attempts to minimize the relevance of these declarations by arguing that assessing the genuineness of SFFA's membership should be done with reference to the entire membership, rather than just a few select members. The Court has already highlighted certain general characteristics of SFFA that ensure its representation of its members as a whole. The individual declarations, which show that SFFA leadership communicates with members about this litigation and that the Standing Members have given input concerning the case, further bolster SFFA's claim that it is representing the interests of its members. See, e.g., [ECF No. 205-26]. Finally, the Standing Members each stated that the SFFA does in fact represent their interests. See, e.g., id.

The Court therefore finds that SFFA meets the prerequisites laid out in Hunt and has the associational standing necessary to pursue this litigation.

## V.     CONCLUSION

Accordingly, Harvard's motion to dismiss for lack of subject matter jurisdiction [ECF No. 187] is **DENIED**.[15]

**SO ORDERED.**

Dated: June 2, 2017                              /s/ Allison D. Burroughs
                                                 ALLISON D. BURROUGHS
                                                 U.S. DISTRICT JUDGE

---

[15] For substantially the same reasons presented in this Memorandum and Order and in light of the standard for a motion for reconsideration, the Court also denies Harvard's request to reconsider [ECF No. 154] its earlier discovery ruling bearing on SFFA's standing [ECF No. 151].