1              UNITED STATES DISTRICT COURT

2                DISTRICT OF MASSACHUSETTS

3    _____

4    STUDENTS FOR FAIR ADMISSIONS, INC.,

5                    Plaintiff,          Civil Action
                                         No. 14-14176-ADB
6    v.
                                         February 7, 2018
7    PRESIDENT AND FELLOWS OF HARVARD     Pages 1 to 34
     COLLEGE (HARVARD CORPORATION),
8    et al.,

9                    Defendants.

10   _____

11

12              TRANSCRIPT OF HEARING
         BEFORE THE HONORABLE ALLISON D. BURROUGHS
13           UNITED STATES DISTRICT COURT
            JOHN J. MOAKLEY U.S. COURTHOUSE
14               ONE COURTHOUSE WAY
                 BOSTON, MA  02210
15

16

17

18

19

20

21

22              JOAN M. DALY, RMR, CRR
                Official Court Reporter
23          John J. Moakley U.S. Courthouse
           One Courthouse Way, Room 5507
24               Boston, MA  02210
              joanmdaly62@gmail.com
25

1    APPEARANCES:

2

3    FOR THE PLAINTIFF:

4            JOHN MICHAEL CONNOLLY
             Consovoy McCarthy Park PLLC
             3033 Wilson Boulevard, Suite 700
5            Arlington, Virginia 22201
             703.243.9423
6            mike@consovoymccarthy.com

7            PATRICK STRAWBRIDGE
             Consovoy McCarthy Park PLLC
8            8th Floor, South, PMB #706
             Ten Post Office Square
9            Boston, Massachusetts 02109
             617.227.0548
10           patrick@consovoymccarthy.com

11           BENJAMIN C. CALDWELL
             Burns & Levinson LLP
12           One Citizens Plaza, Suite 1100
             Providence, Rhode Island 02903
13           401.831.8330
             bcaldwell@burnslev.com

14

15   FOR THE DEFENDANTS:

16           WILLIAM F. LEE
             FELICIA H. ELLSWORTH
17           ANDREW S. DULBERG
             Wilmer Cutler Pickering Hale and Dorr LLP
18           60 State Street
             Boston, Massachusetts 02109
19           617.526.6556
             william.lee@wilmerhale.com
20           felicia.ellsworth@wilmerhale.com
             andrew.dulberg@wilmerhale.com
21
             SARA M. MADGE
22           Harvard University
             Office of General Counsel
23           Smith Campus Center, Suite 980
             Cambridge, Massachusetts 02138
24           617.495.1280
             sara_madge@harvard.edu
25

<pre>
  1                    P R O C E E D I N G S
  2               (The following proceedings were held in open
  3    court before the Honorable Allison D. Burroughs, United
  4    States District Judge, United States District Court, District
  5    of Massachusetts, at the John J. Moakley United States
  6    Courthouse, 1 Courthouse Way, Boston, Massachusetts, on
  7    February 7, 2018.)
  8               THE CLERK:  All rise.  Court is in session.  Please
  9    be seated.  This is civil action 14-14176, Students for Fair
 10    Admissions versus Harvard College.  Will counsel identify
 11    yourselves for the record.
 12               MR. CONNOLLY:  Good afternoon, Your Honor.
 13    Benjamin Caldwell for the plaintiff, Students for Fair
 14    Admissions, Inc.
 15               MR. STRAWBRIDGE:  Patrick Strawbridge and Michael
 16    Connolly also for the plaintiff.
 17               MR. LEE:  Good afternoon, Your Honor.  For Harvard
 18    College, Bill Lee, Felicia Ellsworth, Drew Dulberg and Greg
 19    Schmidt from Wilmer Hale.  And from Harvard, Sara Madge at
 20    the table behind us.
 21               THE COURT:  I'm sorry.  I have your first name,
 22    Sara.  What is your last name?
 23               MS. MADGE:  Madge, M-A-D-G-E.
 24               THE COURT:  I have three at the first table.  Who
 25    else is behind you there?
</pre>

1     MR. SCHMIDT:  Greg Schmidt, S-C-H-M-I-D-T.

2     THE COURT:  All right.  So I have all the paperwork

3  on the motion.  And I have reviewed all the attachments and

4  the documents that were submitted by Harvard.  And what I

5  would like to propose is that I and the court reporter and

6  Harvard go back to my little conference room and try and hash

7  some of this out.  Acceptable?

8     MR. STRAWBRIDGE:  Obviously we won't object if

9  that's what you'd like to do.  When you come back there may

10  be need to put a ruling on the record or otherwise address

11  it.

12     THE COURT:  That's all right.  I'm going to do this

13  on the record back there, but I just have some questions

14  about some of the documents, and I wanted to talk to them

15  about that.  I could do it cryptically here, but it seems it

16  would be more productive to do it back there.

17     MR. STRAWBRIDGE:  That's fine.

18     [Hearing held in camera.  In camera hearing

19  transcript will be sealed.]

20     THE COURT:  We're back on the record.  Thank you

21  for your patience.  We went through these documents pretty

22  carefully.  I'd gone through them pretty carefully before we

23  got there with them, but I wanted to do some follow up with

24  them.  This is going to be a little awkward to do because I

25  was working out of the binders that they had provided of

1    their documents which those documents themselves aren't Bates

2    stamped.

3           So it's not like a -- I'm sure there's an easy way

4    to figure out what I was talking about in there, but I

5    haven't gotten it organized.  I did borrow from them the

6    highlighted privilege log which you had provided which is the

7    one thing I hadn't brought out on the bench with me.  I am

8    going to try and start with some of the easier ones of this

9    and then kind of back into the rest of it.

10          I'm not rejecting your motion in terms of

11   timeliness.  I think given how far we are from summary

12   judgment, that it's not an untimely request.  There are --

13   let's start with the Harvard Not Fair documents.  My

14   understanding was that there were 10 of them to begin with.

15   They produced five more in light of your objections.  You

16   identified five more which makes the balance of the ten.

17          I had trouble figuring out exactly which the five

18   were.  So I think one of the five that you identified was

19   document 193, and I don't have that.  They don't have that.

20   So I'm not sure where that reference comes from.  So am I

21   right that one of the five is 193, or do you want to tell me

22   what the five are?

23          MS. ELLSWORTH:  Your Honor, we figured it out.  I

24   can explain it.  It was mentioned in the brief, but it wasn't

25   highlighted on the privilege log.  So when we did the

1    production of in camera review, it was not included because

2    we worked off of the highlighted log.  So we can certainly

3    submit it after.

4          THE COURT:  Are you pressing your objection on 193

5    once you figure out what it is?

6          MR. CONNOLLY:  Yes.  We remain to request that.  I

7    apologize for not highlighting it.

8          THE COURT:  It's fine.  I just didn't have it.  Do

9    these numbers correspond to the numbers on the privilege log?

10         MS. ELLSWORTH:  They do, Your Honor.

11         THE COURT:  I have split these into three binders

12   A, B, and C.  C are the redactions; A is the privilege log;

13   and B is the supplemental privilege log.  The next one that

14   you identified as having to do with Harvard Not Fair is 257,

15   and that document is going to remain privileged.  It relates

16   to a contemplated lawsuit.

17         265 and 275 don't actually correspond to Harvard

18   Not Fair.  265 and 275 are documents that are part of the

19   university's response to the article at general counsel's

20   direction.  So we were trying to figure out how you

21   identified those as Harvard Not Fair.  It looks to be because

22   of the dates, but those are actually not Harvard Not Fair

23   documents.

24         MR. CONNOLLY:  The way we meant to describe it is

25   essentially a time range following Harvard Not Fair.  So we

1    weren't exactly sure whether each document related to Harvard

2    Not Fair, but that's how we were attempting to organize them

3    in categories for you.

4           THE COURT:  Just so you know, those aren't Harvard

5    Not Fair documents.  Those go to the university's response

6    basically to the article and the investigation that follows

7    from that.

8           And then 287 was the last one of the five, and that

9    is a statement on which they're running by general counsel.

10    It's clearly under the auspices of counsel.  So those are the

11    Harvard Not Fair documents.

12           I'm trying to figure out how best to get into

13    these.  Let me approach this a different way.  There was an

14    investigation after the Unz article came out.  The

15    investigation was done under the auspices of the general

16    counsel's office, and most of the documents that you refer to

17    in there are protected by the privilege under the auspices of

18    that investigation.  They don't all involve, as you point

19    out, the general counsel.  But to the extent this they don't,

20    the general counsel has sought information from people, and

21    those people have sought information from other people.  And

22    in that rubric of the investigation are covered by the

23    privilege.

24           That being said, there are some documents that

25    they've withdrawn their objection to and other documents that

1    will be produced for various other reasons.

2          In these binders one of the things that's included,

3    they include not surprisingly a document and the attachments

4    to the document.  I want to say in most instances there are

5    attachments that are not privileged that have already been

6    provided to you in other ways.  For example, the -- the

7    mission of the committee, the composition of the committee.

8    So there are things in here that I'm not ordering produced

9    now that have already been produced to you.

10          In terms of what -- in terms of this committee,

11    their position is, and I think it's correct, is that to the

12    extent that Mr. Iuliano is not giving legal advice to the

13    committee, nor is the committee giving legal advice to him,

14    but as a prelude to the committee doing its business, there

15    are things that are privileged that concern advice that

16    Mr. Iuliano is giving the university about whether to have a

17    committee, the composition of the committee, etc.  That stuff

18    will remain privileged.

19          They assure me, and it doesn't look like there's

20    anything here or much here that covers the committee

21    business.  They tell me the committee business has been

22    turned over to you already.  They're not trying to privilege

23    it.  So what is going to be turned over to you now -- of

24    course I wrote it on the back of some piece of paper.  Okay.

25          Let me start with binder C because that's the

1    easiest here.  So C are the redactions.  These are the

2    hardest ones to figure out how to reference for you.  I guess

3    they are telling me these are Bates stamped back here.  I'm

4    just going to read the last four digits.  Okay?

5         5989 they're going to produce.  24156 they're going

6    to produce the second redaction.  They're going to produce --

7    they withdrew their objection to 30556.  And on the document

8    that begins with 74737, there's three redactions, basically

9    three redactions on that document.  Let me just see what it

10   looks like on yours.  It looks on yours like there's one

11   paragraph.  There's actually three separate little

12   paragraphs.

13        They're going to produce the first sentence, the

14   third sentence.  And on that second middle paragraph, they're

15   going to produce everything but the first sentence.

16        All right.  Binder B, which is the supplemental

17   privilege.  All right.  So there were some attachments that

18   they're not sure that have been turned over, but they're

19   going to double check.  And you will get all the attachments

20   that reflect pure data.  There's some polls that look like

21   they're from the common application that are attachments.

22   They're going to turn those over.  There are two of those.

23        There's like a survey that has some handwriting on

24   it.  I have it at tab 88.  They're going to redact the

25   handwriting but produce the rest of 88.  They're going to

1    produce 101.  They're going to produce 104 with one

2    redaction.  And I think that covers it from binder B, right?

3    Eric, are you keeping track with me?  Do I have that right?

4              MS. ELLSWORTH:  I think so.  We'll cross check our

5    notes.

6              THE COURT:  I think that's right.  Binder A.  So,

7    for example, some of the statistical information, they're

8    going to give you all the purely statistical data.  But I

9    know there's one at 34.  They're going to produce 283 -- no.

10   I take that back.  283 they say they've already produced but

11   in redacted form, and the redaction is going to be allowed.

12             They're going to produce 275, and they're going to

13   produce 278 with one redaction.  And again in this binder

14   there were things like the charge of the committee, the

15   invitation to join the committee, things like that that they

16   say have already been produced that are just attachments to

17   the documents you actually referenced.  So those are my

18   rulings.

19             Again we will follow up with at least a short

20   written opinion on this.  We've been through these super

21   carefully.  I'm comfortable that what we have continued to

22   withhold is privileged.

23             Mr. Strawbridge, you look like you want to speak.

24             MR. STRAWBRIDGE:  A couple of questions.  I think

25   it would be useful for us to have some clarity as to which

1   things they are withdrawing objections on versus which things

2   are being ordered to be produced despite their continuing

3   objections.

4           THE COURT:  I'm not sure I took notes like that.

5   Did you take notes like that?  I know they withdrew on the

6   redaction at tab 10 in binder C which is -- of course tab 10

7   doesn't mean anything to you.  I told you when I was going

8   through them that they've withdrawn on them.  Did you all

9   keep notes on which you were withdrawing on?  I just didn't

10  keep my notes like that.

11          MS. ELLSWORTH:  I think we can provide some

12  information based on how these line up with the privilege log

13  and what was withdrawn versus what was ordered produced.

14          THE COURT:  There were probably I want to say like

15  three or four things that were withdrawn.  Some of them are

16  withdrawn on the legal basis that it's not worth fighting

17  about anymore.  Okay?

18          MR. STRAWBRIDGE:  We certainly could have had that

19  before today, but I understand.  The second question, I

20  suppose, is with respect to material in which there was

21  assurances provided that we've already received the document.

22  It's unclear to me whether we actually received that document

23  as an attachment to that email or we received another copy of

24  it somewhere else.  Sometimes as you know --

25          THE COURT:  I understand the question.  I will let

1    them supplement my response to that, but in most cases you

2    got it as an attachment to something else.  Maybe in all

3    cases.

4              MR. STRAWBRIDGE:  I would request that Harvard

5    actually produce it with whatever redacted version of the

6    cover email so we can actually see who got this information,

7    at what point in time because it may be important.

8              THE COURT:  Well, in some cases, for example, I

9    want to be careful here.  In some cases like the charge to

10   the committee which reflects -- the charge to the committee

11   went through several iterations and editing by the general

12   counsel's office, right, because it included their

13   reflections on what the law requires.  So some of those as

14   they were in final form were still being circulated in the

15   general counsel's office.

16             Others of them, and I'm not sure, but others of

17   them may have been outside the general counsel's office.  And

18   to the extent that there are those, you can turn over those

19   redacted emails if they're not under the rubric that we've

20   discussed.

21             MS. ELLSWORTH:  Right.  What we've produced would

22   be the final version, for in the example the charge to the

23   committee.  I understand the argument being made.  But the

24   point of the privilege log is first of all that information

25   is there, and we included the file name.  So it's clear when

1    we're talking about, again to keep on the charge to committee

2    point, it's clear who that has gone to or not based on the

3    privilege log.

4           Second of all, sometimes that information itself is

5    privileged, who it's to, etc.

6           THE COURT:  Right.  I'm not sure there are any

7    documents.  I'm looking through -- as I'm looking through

8    them, at the outset it's not entirely apparent what's an

9    attachment or what's not.  This is just an example, something

10   like the charge to the committee and I say they are entitled

11   to that.  And they're like, no, no, they've gotten that, but

12   it's an attachment to this prior email which is privileged.

13          MR. STRAWBRIDGE:  I'm still of the view that they

14   should be required to produce anything even if it's duplicate

15   to something else in the production that is not itself

16   privileged.

17          THE COURT:  In those cases you're not entitled to

18   who it went to.

19          MR. STRAWBRIDGE:  To the extent it's already

20   produced in the log, I think that may not be right.

21          THE COURT:  You're not entitled to the email that

22   transmits it I don't think.  For example, if an email says

23   we're sending this to you for legal review before we finalize

24   it.  Right?

25          MR. STRAWBRIDGE:  Right.  Just to clarify my

1    position, if the ruling is that some aspect of the

2    transmission email is privileged, that could be redacted.  My

3    concern is it sometimes matters when these attachments went

4    out and who received them.

5            THE COURT:  Don't you have that in the log?

6            MS. ELLSWORTH:  All that information is on the log.

7    It's clear on the log what's an attachment as well by the way

8    it's laid out.

9            THE COURT:  I wasn't actually working off the log.

10   I was working off the binders which is how that happens.

11           MR. STRAWBRIDGE:  Right.  I guess I'm looking at

12   the log -- you tell me where I'm supposed to look on the log.

13   I'm trying to figure out what Bates number is a duplicate of

14   this document that was sent on this date that was not

15   privileged.

16           THE COURT:  No.  She doesn't have to tell you which

17   document is a duplicate and which isn't.  But to the extent

18   that there's an attachment that's not privileged, right, I

19   wanted to make sure that you've gotten the attachment.

20           MR. STRAWBRIDGE:  Maybe I should just put this to

21   counsel.

22           THE COURT:  That's fine.

23           MR. STRAWBRIDGE:  There was discussion here.  Are

24   you representing that you have produced the attachments to

25   the documents that are logged themselves to the extent

1  they're not privileged?

2          MS. ELLSWORTH:  No.  The duplicates of the

3  attachments have already been produced to the extent that the

4  attachment is a non privileged document.

5          MR. STRAWBRIDGE:  So it's already been produced

6  perhaps because it was sent on another day to another person?

7          MS. ELLSWORTH:  Yes.  Or a non privileged context.

8          MR. STRAWBRIDGE:  So my concern stands.  I can't

9  tell who received which of these non privileged documents on

10  what date if they don't reproduce them.

11         THE COURT:  So you're not always entitled if you've

12  got it, right?

13         MR. STRAWBRIDGE:  If it's information that's on the

14  log I think we are.

15         THE COURT:  I'm not sure what you're talking about.

16  If it's on the log, you have it.  If it's not privileged,

17  you're not entitled to it.  I'm not sure what else is left.

18         MR. STRAWBRIDGE:  What I'm having a hard time

19  understanding is what's on the log that includes an

20  attachment which we have received in identical form at

21  another time.  That's the piece I can't put together.

22         MS. ELLSWORTH:  I think it's clear, Your Honor,

23  from the title of the document, the file names or the

24  subjects on the log what we're talking about here.

25         THE COURT:  Hold on.  I can give you an example.

1    So like what I'm looking at is on the supplemental privilege

2    log -- I don't know if I got this exactly right, but I think

3    that 258, 22, 51 and 53 is a document captioned Statement on

4    Asian American Admissions.  They say that you have that.  And

5    you can tell from the -- so you can see like document number

6    2 is an attachment to document number 1 to which you're not

7    entitled.

8            MR. STRAWBRIDGE:  My understanding, and maybe I'm

9    wrong from Ms. Ellsworth, is that we do not actually have

10   document number 2.  We have a different document that they

11   claim is identical in substance that was produced with

12   another email at another point in time.

13           THE COURT:  Well, if you want her to produce 258,

14   22, 51 and 53 with those numbers on top, I'm sure she'll do

15   it.

16           MS. ELLSWORTH:  It's identical to what we have.  So

17   we can produce it with a completely redacted cover email.

18   I'm not sure what the point is.

19           MR. STRAWBRIDGE:  With respect to the ones for

20   which we already have the cover emails, that's sufficient.

21   Understanding there are other documents which are attachments

22   and may have been circulated to people and the attachments

23   themselves which there's an assertion that we've received an

24   identical document.  I don't know how to check that.  I don't

25   know how to confirm that.  I don't know how to understand

1    that.

2              MS. ELLSWORTH:  I think, Your Honor, what we can

3    probably do is just provide the Bates numbers of what the

4    identical document is for this attachment and how many

5    different times it's been produced.

6              THE COURT:  I think what he's saying is say you've

7    produced a statement on Asian American admissions, he's not

8    sure it's identical to -- he doesn't have any way to figure

9    out if it's identical to 258, 22, 51, and 53.

10             MS. ELLSWORTH:  Right.

11             THE COURT:  Why don't you just reproduce them and

12   write those numbers on the top?

13             MS. ELLSWORTH:  Which numbers.

14             THE COURT:  258, 22, 51, and 53, the numbers that

15   correspond to the privilege log.

16             MS. ELLSWORTH:  That's fine, Your Honor.  We can do

17   that.

18             THE COURT:  All right.

19             MR. STRAWBRIDGE:  Okay.  I guess my understanding

20   of the conference that was had before this is that it was on

21   the record.

22             THE COURT:  Yes.

23             MR. STRAWBRIDGE:  Is it possible to request a

24   transcript of that?

25             THE COURT:  No.

1          MR. STRAWBRIDGE:  I think I'd be doing my client a

2     disservice if I didn't put a provisional objection on the

3     record about our exclusion.  We're concerned there may have

4     been factual information and/or contextual information that

5     goes to them meeting a burden on privilege that we may not

6     have had a chance to rebut.  Without the transcript, I can't

7     figure that out.

8          THE COURT:  My view of it is that normally these

9     decisions are just made on the paper here, and I had a bunch

10    of things I wanted to clarify with them.  And rather than

11    just ruling and accepting the assertions of privilege, I've

12    delved deeper into it.  So I think I have been more careful

13    than I would have been without that hearing, but you're

14    entitled to your objection.

15         I have made -- in my view I have been very careful

16    to make sure that the documents were, in fact, privileged.

17    And I was -- maybe next time I won't have a hearing if that's

18    going to be your position on it.  The hearing resulted in the

19    production of more documents than you would have otherwise

20    gotten.  Let me put it that way.  Okay?

21         MR. STRAWBRIDGE:  I'm not suggesting anything.

22    It's just for the record.

23         THE COURT:  That's fine.

24         MR. STRAWBRIDGE:  I guess I had a separate question

25    which may be set forth in the Court's rulings or could be

distilled.  I just want to make sure I understand what the
Court's feeling on this.  And that is, particularly with
respect to documents concerning the activities of any efforts
that Harvard intends to rely upon to satisfy its burden of
serious good faith consideration of race neutral
alternatives.  We certainly contest the fact that we've
gotten adequate or complete answers to our questions.

THE COURT:  Are you talking about the committee?

MR. STRAWBRIDGE:  There was discussion about the
Ryan committee?

MS. ELLSWORTH:  Yes.

THE COURT:  There was in here a -- the documents
that go to the committee, that go to the activities of the --
there are no documents that go to the substance of the
activities of the committee.  There's nothing in here in any
of these documents that takes place after the committee is
formed.  The documents that have been withheld all go -- they
predate the formation of the committee.  There is nothing --
the most recent, I think the most recent document that
pertains to the committee are the invitations.

MR. STRAWBRIDGE:  Okay.

THE COURT:  I don't know if they produced it or
not, but it's not in here.

MR. STRAWBRIDGE:  Our concern, and maybe it's not
ripe now because I don't know what Harvard is ultimately

1     going to rely on as the case proceeds forward, but our

2     concern because it's an ongoing issue and there's a new

3     committee, and there's going to be a deposition at some point

4     in the next month or two about the activities of the

5     deposition, is that both in the depositions and the documents

6     that there's been a lack of transparency as to what the

7     committee is doing which presents a conundrum with respect to

8     how we are supposed to test the assertion that the

9     consideration of race neutral alternatives was, in fact,

10    done, serious and in good faith.

11         THE COURT:  I understand why you want that.  I may

12    even venture to say that you're likely entitled to it.  It's

13    not in these documents.  These documents predate the meeting

14    of the committee.

15         MR. STRAWBRIDGE:  Okay.

16         THE COURT:  They're not being withheld on privilege

17    at least the documents that you've identified to me.

18         MR. STRAWBRIDGE:  The concern that we would have,

19    for example, and I don't know what's in the documents

20    obviously.  I'm not trying to have an argument.  I just want

21    to make sure who is selected for the committee and how

22    someone goes about being selected for the committee may, in

23    fact, reflect upon seriousness and good faith.  That is why

24    posting committee documents may not be sufficient always.

25         MR. LEE:  Just to clarify, Your Honor, he's now

1     talking about the Smith committee which was recently

2     constituted.  They know that who the members are the Smith

3     committee are the dean of the faculty of arts and sciences,

4     the dean of admissions, and the dean of the college.  All

5     three of them who I think by title are serious people.  They

6     know who they are.

7             There's going to be a deposition of the chair of

8     the committee, as Mr. Strawbridge said, in a month or two.

9     If they have considerations at that time, that's the time to

10    raise them.  They have non privileged material.  They'll be

11    able to ask the committee about its activities.  Like the

12    other committees, some of them are privileged, some of them

13    are not.  But there will be plenty to ask them about when

14    they get to the deposition.

15            MR. STRAWBRIDGE:  I was actually not actually

16    referring to the Smith committee.  I'm talking about the Ryan

17    committee.  If you guys have no intention to rely on anything

18    the Ryan committee did to --

19            THE COURT:  I don't want to step on their claims or

20    privilege here.  I will say this and I will not go any

21    further than this.  There is no discussion in these documents

22    about how anybody is chosen for the committee with the

23    exception, I'm sure you know by now, that there was some

24    student representatives on the committee and there was some

25    discussion about who those students are going to be.

1         Other than that there is no conversation like that.

2    There were conversations largely about how the students --

3    who the students were is privileged.  There's no conversation

4    beyond that on who's to be on the committee.

5         MR. STRAWBRIDGE:  Just one second.  I'm sorry.

6    That's all I have at this time.

7         THE COURT:  We're not going to do a big long

8    opinion on this, but we'll do something sufficient to have

9    something on the record for you.  All right?

10        MR. LEE:  With Your Honor's indulgence, can I raise

11   one unrelated issue?  I don't think it requires any action.

12   At some point in time, we raised with

13   Mr. Strawbridge the question of whether in a case that's

14   going to be tried to Your Honor without a jury and in a case

15   where only injunctive relief is requested, no damages,

16   whether it made sense to put Your Honor and your staff and

17   the parties through summary judgment briefing.

18        This is a case by the time we finish with rebuttal

19   reports there's going to be about a thousand pages of reports

20   from experts going in both ways.  It seems to me that going

21   directly to the trial without lots of paper and lots of

22   motions made some sense.  We raised this with

23   Mr. Strawbridge.  I think he has a different view.  And we

24   understand if he does and Your Honor's schedule has summary

25   judgment that that may be what it is.

1          I think we would just ask Your Honor to give some

2   consideration to at some point adding to the schedule a trial

3   date so that we have some sense of when it will be.

4          THE COURT:  I have been sort of thinking about

5   summary judgment myself.  I wasn't sure if the whole case

6   could be decided on summary judgment or this comes down to

7   experts needing to take the stand.  What's your views on

8   that?

9          Is this going to be resolvable on summary judgment,

10  or -- the experts themselves, are those going to be factual

11  disputes that need to be --

12         MR. LEE:  This is a place where we disagree.  So

13  I'll give you our view, Your Honor.  My view is that it's

14  inconceivable that the entire case could be resolved on

15  summary judgment.  It's probably very unlikely that the vast

16  majority of it would be resolved on summary judgment.  And

17  there will be -- there are conflicting experts who are taking

18  the same data and coming to different conclusions.

19         So the examination and cross examinations will be

20  important.  There are factual witnesses who will describe

21  this process to you.  You've gotten a window into some of it,

22  but you're going to see it in some significant detail.

23  There's going to be a whole host of factual herbs.  I think

24  it's really the combination as we thought about it of it

25  being jury waived.  Your Honor could be the decider both

1    legally and factually.  But also because it's just an

2    injunctive relief case.

3              So getting the trial closer in time to the evidence

4    rather than having it be way out from the time the evidence

5    has been generated made some sense to us.  But I think from

6    our perspective, I think I can say that I think it's

7    inconceivable that the whole case would be resolved and we

8    wouldn't have to have a trial on some issues.  I think it's

9    probably very very unlikely that a substantial majority would

10   get resolved on summary judgment.

11             MR. STRAWBRIDGE:  Well, obviously we have a

12   different point of view on that.  We do think that --

13             THE COURT:  I would hardly expect you to agree on

14   anything at this point.

15             MR. STRAWBRIDGE:  That's not entirely true.

16             THE COURT:  You have not yet.  I don't know why

17   we'd begin today.  Go ahead.

18             MR. STRAWBRIDGE:  Let me indulge the Court and

19   start with something on which we agree, which is that it may

20   be useful at some point especially once we get through the

21   expert discovery phase to set a trial date at some point in

22   the future at least as a back up if there remains some issues

23   after summary judgment.  But we do think that summary

24   judgment is going to be useful in this case to dispose of

25   some, if not all, of the claims.  And we think that there's

1    support and we can make summary judgment arguments that would

2    potentially dispose of all of the claims.

3            I'll also just simply note that the parties have

4    built in dispositive motions into their motion practice which

5    did not stop my friends on the other side from filing their

6    dispositive motions a while ago.  So I guess I'm less

7    surprised that they're now satisfied that there isn't a need

8    for further dispositive motions.  But we think it will be

9    useful to the Court.  We think it can narrow issues if not

10   completely resolve some of the claims if not all of the

11   claims.  So we'd like to stick with the schedule as is.

12           THE COURT:  Hold on.  I'm trying to pull up a

13   scheduling order.  My recollection is that summary judgment

14   motions are fully briefed at the end of this summer.

15           MS. ELLSWORTH:  We have a copy.

16           MR. LEE:  August 3, Your Honor.

17           THE COURT:  Do you want to pass that up?  My view

18   is it seems to me this is about all the experts at some

19   level, right?

20           MR. STRAWBRIDGE:  Truly not for all of the claims

21   in our view.

22           THE COURT:  How many claims are left?

23           MR. STRAWBRIDGE:  Four, I believe.

24           THE COURT:  I thought it was two.  Is it four?

25           MR. STRAWBRIDGE:  There were six claims originally.

1           THE COURT:  There were six.  And we knocked out

2     two.

3           MR. LEE:  Four is correct.

4           THE COURT:  So there's four left.  And what are the

5     four?

6           MR. STRAWBRIDGE:  So there's a claim of invidious

7     discrimination.  There's a claim of failure to achieve race

8     neutral practice.  There's a claim of too much emphasis on

9     race.  And there's a claim of inconsistency with *Grutter*.

10    I'm doing this off the top of my head.

11          THE COURT:  I know.

12          MR. LEE:  Your Honor, may I offer a suggestion?

13          THE COURT:  What of those do you think can be

14    resolved as purely a legal matter?

15          MR. STRAWBRIDGE:  All of them.

16          THE COURT:  I just don't see that.

17          MR. STRAWBRIDGE:  We're prepared to present the

18    motions.  If the Court needs to take them under advisement

19    and then proceed to fact finding, that's fine.  I'm not going

20    to stand here and condede that we won't achieve summary

21    judgment on all those claims.  Certainly some of them I think

22    you can easily understand.  Experts don't disagree, for

23    example, that at some level weight has been given to race.

24    There's an argument to be had as to what whether that level

25    of weight is consistent with what has been proved by the

1    Supreme Court.

2           Whether or not Harvard has engaged in serious

3    considerations or race neutral alternatives in and of itself

4    may not be the subject of expert testimony or may not be the

5    subject of testimony that's --

6           THE COURT:  Rather than going through the entire

7    summary judgment process, which is going to be expensive and

8    time consuming, why couldn't I just hear the evidence and

9    then rule on those issues as a matter of law?

10          MR. STRAWBRIDGE:  We think we have a right to file

11   summary judgment and we would like to submit it.  We're happy

12   to stick to the current schedule and the Court can do with

13   the motions what it wants.  We think it's important to

14   present these issues, and we intend to do so.

15          MR. LEE:  Your Honor, I don't think any party has

16   the right to the file summary judgment motions.  That's

17   completely at your discretion.  It's your docket.  Let me say

18   this:  Take Mr. Strawbridge as an example.  I can't think of

19   a good case that involves -- I was going to suggest this,

20   Your Honor.  Maybe the thing for us to do is to meet and

21   confer and talk about the issues that he thinks -- they think

22   can get resolved on summary judgment, and we can say why we

23   don't think they can.

24          And this is a procedure that some other courts have

25   followed, so this is just a suggestion.  Maybe after we do

1    that, can we each submit a letter to you that's no more than

2    four pages that says what our position is on what can get

3    resolved on summary judgment and what can't?  And then we can

4    come back and see Your Honor on the schedule if that makes

5    sense.

6           THE COURT:  That's fine.  I'm happy to have you do

7    that.  In a case that's going to be tried to me, it seems

8    like I'm as well-positioned to make the summary judgment

9    ruling at the end of evidence as I am after the whole summary

10   judgment thing.  The summary judgment motions, they're

11   expensive, they're time consuming.

12          In some ways I see it in this kind of case as

13   duplicative.  It can be made as a matter of law.  I'll make

14   it at the close of the presentation of the evidence.  So I

15   feel like you're getting everything you would get out of a

16   summary judgment motion wrapped into a bench trial, and that

17   doing the summary judgment motions first is just expensive

18   and time consuming.  But I'll hear you on it.

19          The schedule has expert discovery completed by

20   May 1 and dispositive motions by -- so really this could be

21   trial ready by May 1.  I would love to try it next summer

22   because it's impossible to get a jury for a summer trial.  So

23   I'd rather do a bench trial next summer.

24          MR. STRAWBRIDGE:  I guess our view is this is the

25   schedule that the parties agreed to.  I don't know that we'd

1    be ready to go as of May 1.

2          THE COURT:  Without minimizing my own importance,

3    which I always hate to do, I don't understand why you don't

4    want to get this case by me and onto its next place.  Right?

5    I don't understand why you want it to linger here.

6          MR. STRAWBRIDGE:  We certainly don't want it to

7    linger here, but we think that -- one thing summary judgment

8    can do, as you know, there's motions for partial summary

9    judgment.  It can narrow the issues.  It can limit the need

10   for testimony.  It can help work these things out.  I

11   understand they don't agree.

12         The parties agreed to a dispositive motion briefing

13   schedule.  We're prepared to stick to that schedule and keep

14   the case moving to the extent the Court doesn't think it can

15   dispose of some or all of the claims in summary judgment.

16   This is or our position.

17         THE COURT:  I put summary judgment in the schedule

18   to have it in the schedule.  It doesn't mean there's always

19   going to be summary judgment motions filed.  It's a

20   placeholder.  If it's apparent that it's not going to change

21   the complexion of the trial, I don't see that it's worth the

22   exercise of summary judgment motions.

23         If it can significantly change the complexion of

24   the trial and cut out days or weeks of testimony, then okay,

25   that's something different.  But why don't you all meet and

1    confer on that and we'll see where we are.  This case looks

2    like absent summary judgment motions it will be ready for

3    trial by May 1 and we can try it in the summer and then have

4    it be on its way.  Have important issues resolved in a more

5    timely manner because there's -- almost certainly it's going

6    to be delayed if I have to do the summary judgment motion.

7    There's just no way around it.

8            And I have, just for your FYI, I have a 14-week

9    trial starting in January of '19.  So you either get it tried

10   between now and basically January 1 of '19 or it's delayed

11   until, whatever, that spring.  It seems like a long time when

12   this is a case that we know -- I will certainly share my

13   wisdom with you all.  I just don't think it's going to be the

14   final say in this.  So let's just get it going.

15           MR. STRAWBRIDGE:  Again I think I set forth our

16   position.  We're happy to meet and confer and we can submit

17   written submissions on this down the road.

18           THE COURT:  That's fine.  If you're thinking about

19   a trial date, that's my schedule.  I would very much like to

20   try it next summer.  I can go as far as up until January,

21   right?

22           MR. LEE:  Summer would be terrific.

23           THE COURT:  Summer would be terrific.

24           MR. LEE:  Summer would be terrific for us.

25           THE COURT:  People vacation here.  They like it

1   here.  It's hot in Texas.

2        MR. STRAWBRIDGE:  Well, I live in Maine.  I don't

3   vacation in Massachusetts in the summer.  I understand the

4   Court's point.  We'll come back to it.  I do think that there

5   are issues that summary judgment is appropriate for.  Why

6   don't we take it up with them and see if we can submit

7   something to the Court or not.  We can circle back toward the

8   end of discovery.

9        THE COURT:  Again I'm unencumbered by a lot of

10  that.  It seems to me even if we can resolve a count or two,

11  it's not going to change the evidence.  The evidence is going

12  to be what they did, right?  The evidence of what they did

13  sort of goes to every count.  Maybe your expert is going to

14  agree with their expert, but --

15       MR. STRAWBRIDGE:  Or the other way around.  Or

16  maybe where the dispute is is ultimately not legally

17  material.  The reality is a lot of these cases in the past,

18  if not all of them, have been resolved on summary judgment.

19  I think it would be useful in this case.  I'm happy to stick

20  to the schedule.  I'm happy to have the Court take it under

21  advisement or use it to influence what evidence the Court

22  actually wants to hear from at trial.

23       THE COURT:  I'd have to do a summary judgment-type

24  opinion after the trial on those issues that are purely legal

25  issues.  It's not apparent to me what issues are going to be

1    purely legal at this point.  So why don't you two confer.

2    We'll come back to it.  If we're going to have a trial, I'd

3    love to do it next summer.  I don't have any significant

4    trials scheduled over the summer because it's so hard to get

5    a jury.

6                    MR. LEE:  We'll meet and confer.  Maybe by a week

7    from tomorrow, we can submit to Your Honor.

8                    THE COURT:  We're not in a big trial hurry on it.

9    If there was a trial as it stands right now, how long are you

10   all thinking it would be?

11                   MR. LEE:  Two to three weeks, I think, Your Honor.

12                   MR. STRAWBRIDGE:  Honestly I have not given it much

13   thought.  I don't think it would be any shorter than that.

14                   MR. LEE:  Your Honor's trial days now are --

15                   THE COURT:  My preference is to try 10 to 4.  I

16   will give you some say in that.  I find that the 9:00 is

17   tough for the jurors to get in and park and everything else.

18   I tended to move it to 10.  With just us, really whatever you

19   want.  I do basically 10 to 4 and half day on Fridays.

20                   MR. LEE:  Two to three weeks could do it.

21                   MR. STRAWBRIDGE:  Maybe less if we narrow down some

22   of the issues.  It's all premature at this point.  Expert

23   reports are still not complete at this point.

24                   MR. LEE:  The plaintiff wanted to go slower than

25   the defendant.

1          THE COURT:  I thought this trial would take longer

2     than two to three weeks to try.  Even if we knock out a bunch

3     of the issues, it's going to take me longer to knock them out

4     than it's going to be to actually do the trial.  I'm unlikely

5     to have a summary judgment opinion out two to three weeks

6     after you all file them.  We may as well just try it.

7          MR. STRAWBRIDGE:  Let's meet and confer and we'll

8     submit something.

9          MR. LEE:  Thank you, Your Honor.

10          THE COURT:  Everybody says they want trials.  Trial

11     lawyers.  Trials are fun and interesting.  Summary judgments

12     are less fun and less interesting.

13          MR. STRAWBRIDGE:  I think I've made our position

14     clear.

15          THE COURT:  You have.  So whenever you want to --

16     we don't have another status set, but if you all want to set

17     one after you get those submissions in -- I'm not going to

18     rush you.  You're still in the middle of expert discovery, we

19     don't need to resolve this in the next week.  If you want a

20     status on it or want to discuss that further.

21          MR. LEE:  We'll work it out.

22          MR. STRAWBRIDGE:  Okay.

23          MS. ELLSWORTH:  Thank you, Your Honor.

24          THE CLERK:  Court is adjourned.

25          (The Court adjourned at 4:33 p.m.)

1                       - - - - - - - - - - -

2                            CERTIFICATION

3

4          I certify that the foregoing is a correct

5    transcript of the record of proceedings in the above-entitled

6    matter to the best of my skill and ability.

7

8

9

10   /s/ Joan M. Daly                February 21, 2018

11   _____             _____

12   Joan M. Daly, RMR, CRR          Date
     Official Court Reporter
13

14

15

16

17

18

19

20

21

22

23

24

25