

CELEBRATING
10 YEARS
OF ADVOCACY
2006-2016

EXECUTIVE DIRECTOR
**Justin Silverman, Esq.**

EXECUTIVE COMMITTEE
**Karen Bordeleau**
*NEFAC President*
The Providence Journal (formerly)
**Michael Donoghue**
*First Vice President*
Vermont Press Association
**Robert A. Bertsche, Esq.**
*Second Vice President*
Prince Lobel Tye, LLP (Mass.)
**Lynne DeLucia**
*Fundraising Chairwoman*
Connecticut Health I-Team
**David Rosen**
*Communications Chairman*
David Rosen Communications (Mass.)
**Gregory V. Sullivan, Esq.**
*Clerk*
Malloy & Sullivan (Mass.)

DIRECTORS
**Jonathan P. Albano, Esq.**
Morgan, Lewis & Bockius LLP (Mass.)
**Dan Barrett**
ACLU of Connecticut
**Dieter Bradbury**
Portland Press Herald
**Edward Cafasso**
WinnCompanies (Mass.)
**Peter Caruso, Sr., Esq.**
Caruso & Caruso, LLP (Mass.)
**William Chapman, Esq.**
Orr & Reno (N.H.)
**Linda Conway**
New England Newspaper & Press Assoc.
**Lia Ernst**
ACLU of Vermont
**Thomas Fiedler**
Boston University
**Edward Fitzpatrick**
Roger Williams University
**Richard Gagliuso, Esq.**
Gagliuso & Gagliuso (N.H.)
**George Geers**
Academy of New England Journalists
**Daniel J. Klau**
McElroy, Deutsch, Mulvaney & Carpenter (Conn.)
**Amanda Milkovits**
The Providence Journal
**Maggie Mulvihill**
Boston University
**Jennifer Peter**
The Boston Globe
**Elizabeth Ritvo, Esq.**
Brown Rudnick, LLP (Mass.)
**Walter V. Robinson**
The Boston Globe
**Sigmund D. Schutz, Esq.**
Preti Flaherty (Maine)
**James H. Smith**
Connecticut Council on FOI
**Todd Smith**
Caledonian Record (Vt.)
**Mike Stanton**
University of Connecticut
**Emily Sweeney**
The Boston Globe
**Tim White**
WPRI-TV Providence
**Yohuru Williams**
Fairfield University (Conn.)
**Janet Wu**
WCVB-TV Boston

*Affiliations appear for identification purposes only.*



**New England First Amendment Coalition**

Phone 508.983.6006 Fax 617.860.2559 Web nefac.org
Twitter @FiveFreedoms Mailing Address 111 Milk Street, Westborough MA 01581

April 6, 2018

Honorable Allison D. Burroughs
U.S. District Court, District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

    Re.  Students for Fair Admissions, Inc. v. President and Fellows of Harvard College (Harvard Corporation)
          Docket No. 1:14-cv-14176-ADB
          <u>Leave to file granted on April 6, 2018</u>

Dear Judge Burroughs:

    Because public access to records filed with the court to support or oppose disposition of civil litigation on the merits is a critical part of an open and transparent justice system, amici curiae the New England First Amendment Coalition, the Reporters Committee for Freedom of the Press, the Massachusetts Newspaper Publishers Association, and GateHouse Media, LLC respectfully request that the court allow sealed summary judgment filings only if inescapably necessary. The amici are public interest groups, an association of Massachusetts newspapers, and the owner of numerous weekly and daily newspapers in Massachusetts and throughout the United States.

    The Coalition's concern is not whether Harvard's admission process violates federal civil rights law, but instead that judicial records shedding light on this dispute—which is of exceptional public importance and community interest—remain open to the public. The presumption in favor of access to judicial records sets a high bar before any part of a summary judgment filing may be sealed. The First Circuit has held that the "presumptively paramount right of the public to know" the content of judicial records in civil cases may be overcome for "only the most compelling reasons." *Federal Trade Comm'n. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 408 n.4, 410 (1st Cir. 1987). The First Circuit has repeatedly reaffirmed the "most compelling reasons" standard. *See, e.g., United States v. Kravetz*, 706 F.3d 47, 59

MAJOR SUPPORTERS
  

12916152.1

(1st Cir. 2013). Those seeking to overcome the presumption in favor of public access to judicial documents "must carry the devoir of persuasion." *Standard Fin. Mgmt. Corp.*, 830 F.2d at 411.

This presumption protects public access to summary judgment filings and serves vital public interests. A provisional seal on summary judgment filings would be contrary to First Circuit precedent prohibiting even short-term prohibitions on access to public court records, and is not strictly necessary in this case. Less restrictive alternatives are available.

I. <u>Judicial Transparency Serves Vital Public Interests.</u>

The "strong and sturdy" presumption in favor of public access to judicial records in civil proceedings protects public interests and improves the administration of justice. *Standard Fin. Mgmt. Corp.*, 830 F.2d at 410. "Public access to judicial records and documents allows the citizenry to 'monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system.'" *Id.* (*quoting In the Matter of Continental Illinois Securities Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984)). "[T]he resolution of a dispute on the merits, whether by trial or summary judgment, is at the heart of the interest in ensuring the public's understanding of the judicial process and of significant public events." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (quotation marks omitted).

The Supreme Court has recognized the "beneficial effects of public scrutiny upon the administration of justice" borne out by the presumption of openness in judicial matters. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 593 (1980). "People in an open society do not expect infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Id.* at 572. "The presumption of access [to judicial records] is based on the need for federal courts, although independent — indeed, particularly because they are independent — to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995). "[P]rofessional and public monitoring is an essential feature of democratic control. Monitoring both provides judges with critical views of their work and deters arbitrary judicial behavior. Without monitoring, moreover, the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings." *Id.*



Referring to the "public's exercise of its common law access right in civil cases[,]" the Third Circuit recognized:

> As with other branches of government, the bright light cast upon the judicial process by public observation diminishes the possibilities for injustice, incompetence, perjury, and fraud. Furthermore, the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness.

*Republic of the Phil. V. Westinghouse Elec. Corp.*, 949 F.2d 653, 660 (3d Cir. 1991). Secrecy undermines the legitimacy of judicial action:

> What happens in the halls of government is presumptively open to public scrutiny. Judges deliberate in private but issue public decisions after public arguments based on public records. The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat; this requires rigorous justification.

*In the Matter of Grand Jury Proceedings*, 983 F.2d 74, 78 (7th Cir. 1992). To put it simply, "Litigation necessarily takes place in a public forum." *Sinclair v. Brill*, 815 F.Supp. 44, 52 (D.N.H. 1993) (denying motion to seal motion for judgment on the pleadings).

II. Summary Judgment Filings Are Presumptively Public.

The First Circuit has "rule[d]" that "relevant documents, which are submitted to, and accepted by, a court of competent jurisdiction in the course of adjudicatory proceedings, become documents to which the presumption of public access applies." *Standard Fin. Mgmt. Corp.*, 830 F.2d at 409. "Once . . . submissions come to the attention of the district judge, they can fairly be assumed to play a role in the court's deliberations." *Id.* Whether the court actually relies on specific information submitted to it when making a decision does not matter for purposes of the presumption. *See United States v. Kravetz*, 706 F.3d 47, 58-59 (1st Cir. 2013). The First Circuit has "explicitly rejected an approach to public access that would turn on whether the documents at issue actually played a role in the court's deliberations." *Id.* Because the court will unquestionably engage in an adjudicatory function concerning the litigants' substantive rights in rendering a summary judgment

Honorable Allison D. Burroughs
April 6, 2018
Page 4

decision, all filed materials relating to summary judgment are subject to the presumption in favor of public access.

### III. A Provisional Seal on Summary Judgment Filings Is Not Necessary to Protect a Compelling Interest.

Harvard has proposed a provisional seal on the parties' summary judgment provisions out of concern for two categories of records: (A) records personally identifying a student or applicant; and (B) records disclosing information about Harvard's admissions process. Harvard argues that the presence of this information among the to-be-filed summary judgment materials warrants a provisional seal on all filings. The amici disagree.

The first category of information—student and applicant identities—is a non-issue since that information can be protected without a provisional seal on all filings. SFFA commits that it will not publicly file information identifying any student or applicant. [ECF No. 388 p. 2 ("SFFA will redact the summary judgment record to ensure that the identity of any Harvard applicant or student (present or former) will not be disclosed."); p. 4 (SFFA agreed to "work with Harvard to redact any document to ensure applicants and students are not individually identifiable").] A further safeguard against public filing of such information is that Harvard says that it only produced in discovery largely, although not perfectly, de-identified information. [ECF No. 389 p. 3.]

The other category of information concerns Harvard's admissions process. The burden falls on it to show that disclosure of specific information about its process would cause harm so great that a seal is strictly necessary. *Standard Fin. Mgmt. Corp.*, 830 F.2d at 411. A difficulty with Harvard's argument is that comparable admissions information to what it describes—the inner workings of its process—has been made public in the course of other similar litigation without apparent dire consequences. One illustrative example is *Fisher v. Univ. of Texas at Austin,* 645 F. Supp. 2d 587 (W.D. Tex. 2009),[1] a high-profile challenge to the University of Texas' admissions process. There, the public docket contains not only fully accessible summary judgment briefing, but as is typical, supporting exhibits, affidavits, and deposition transcripts. That public information paints an intricately detailed picture of the University's admissions process, including that applicants seeking admission are evaluated "on an admissions matrix for their preferred

---

[1] 631 F.3d 213 (5th Cir. 2011), vacated and remanded, 570 U.S. 297 (2013).



New England First Amendment Coalition

12916152.1

programs based on their AI/PAI [Academic Index/Personal Achievement Index] scores where AI is on the X-axis and PAI is on the Y-axis[;]" that the basis of an applicant's AI computation comprises four components described in the materials; and that "[t]he equation for calculating an applicant's PAI is [(personal achievement score*4) + (mean essay score*3)]/7. Defs.' Mot. for Summ. J. Statement of Facts, ECF No. 94-2. The record contains public information about the scoring parameters and admission standards of individual programs relative to others. *See* Defs.' Cross-Mot. for Summ. J. Tab 7, Aff. of Kendra B. Ishop ¶ 12, ECF. No. 96-9 ("Ishop Aff.") (class of 2008 "A" group applicants admitted solely on AI score basis needed 3.9 AI for Liberal Arts versus 3.4 AI for Bilingual Education program; "C" group applicants were those whose 2.599 or below AI "rendered their admissions chances highly unlikely" but were nonetheless afforded file review by a senior admissions reader as a matter of protocol). Because the court is a public institution, information about the inner workings of Harvard's admission process will unavoidably be made public in this litigation, as has been true repeatedly of other institutions' admissions processes in other similar litigation.

Even if some specific information about Harvard's admissions process might warrant a seal, then only that information, and nothing more, could be sealed. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006) ("continued sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim"); *Bradford & Bigelow, Inc. v. Richardson*, 109 F. Supp. 3d 445, 449 (D. Mass. 2015) ("any sealing" must be "narrowly tailored to shield as little from public view as possible"). The presence of non-public information in a document would not justify a seal on the remaining information in the same document, much less a seal on the entire summary judgment record.

To file "provisionally under seal" all of the briefs and supporting documents, as Harvard suggests [EFF No. 389 p. 1], would be contrary to First Circuit precedent holding that blanket seals impermissibly "reverse[ ] the constitutional presumption of public access to documents." *In re Providence Journal*, 293 F.3d 1, 12 (1st Cir. 2002). A provisional seal also would be contrary to First Circuit authority holding that even short delays cannot be squared with the right to access court records. *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 507 (1st Cir. 1989) ("even a one or two day delay impermissibly burdens the First Amendment"). A provisional seal on the parties' summary judgment filings would make secret too much information for too long.

Honorable Allison D. Burroughs
April 6, 2018
Page 6

Less restrictive alternatives to a provisional seal are available.  <u>First</u>, the parties could be required to exchange to-be-filed summary judgment submissions shortly prior to the deadline for filing to allow opposing counsel to mark any information that counsel is prepared to certify merits a seal under the "most compelling reasons" standard.  Such information could then be redacted from a public version of the filing, with a complete version filed under seal.  If the parties disagree about whether requested redactions meet the standard, the court could expeditiously resolve that dispute after *in camera* review.  This is not much more work than what would take place after the parties' filings under Harvard's proposal. [*See* ECF No. 389 p. 2 (proposing a post-filing meet and confer with disagreements submitted to the court for resolution).]  Because of the exceptional nature of this case, amici suggest that the court apply an additional check on redactions by determining for itself soon once filings are made, after *in camera* review and regardless of the parties' agreement, whether redactions are justified by compelling reason.

<u>Second</u>, Harvard could identify the information that it is prepared to certify meets the "most compelling reasons" standard applicable to sealed summary judgment filings.  It has marked many documents "confidential," and further screening of those documents may be burdensome, but enough time remains before the summary judgment deadline to complete that effort.  Presumably, Harvard would only certify that a far smaller universe of information in some subset of "confidential" documents meets the "most compelling reasons" standard necessary to justify a seal.  *See Kamakana*, 447 F.3d at 1179 ("a 'good cause' showing alone will not suffice to fulfill the 'compelling reasons' standard that a party must meet to rebut the presumption of access to dispositive pleadings and attachments").  Such a review may be inevitable because SFFA may be challenging Harvard's designation of many documents as "confidential" under the far lower "good cause" standard applicable to documents exchanged for purposes of discovery, but never filed with the court.  The parties could meet and confer and, if necessary, seek a court order after *in camera* review of a representative sample of such documents prior to the deadline for filing.

<u>Third</u>, the court can determine whether Harvard's submissions so far have met its burden to show compelling reasons for a seal with respect to any specific documents or information, and enter an order.  The parties would then be guided by the court when they make their filings.  Any redactions to summary judgment filings would be made in accordance with the court's guidance, and the public would have immediate access to a public version of each filed document.

These or similar alternatives to a provisional seal on all filings would allow public access to as much information as possible as early as possible, as required by the strong presumption in favor of public access to summary judgment filings.

## Conclusion

The amici appreciate the opportunity to present their views.

Respectfully submitted,

*/s/ Sigmund D. Schutz*
*/s/ Eric G. Penley*

Sigmund D. Schutz, Bar No. 568608
Eric G. Penley, Bar No. 678920

cc: ECF Recipients



12916152.1

## CERTIFICATE OF SERVICE

I, Sigmund D. Schutz, Attorney for amici curiae, hereby certify that on the above date, I electronically filed the above letter with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) electronically to counsel of record.

/s/ Sigmund D. Schutz
Sigmund D. Schutz, BBO # 568608

PRETI, FLAHERTY, BELIVEAU,
  & PACHIOS, LLP
One City Center
P.O. Box 9546
Portland, ME  04112-9546
Tel: 207-791-3000
Fax: 207-791-3111



12916152.1