## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS
## BOSTON DIVISION

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC.,<br><br>                        Plaintiff,<br><br>        v.<br><br>PRESIDENT AND FELLOWS OF HARVARD<br>COLLEGE (HARVARD CORPORATION),<br><br>                        Defendant. | No. 1:14-cv-14176-ADB |

## NOTICE OF INTEREST IN PUBLIC ACCESS
## TO SUMMARY JUDGMENT BRIEFING AND MATERIALS

The United States respectfully notifies the Court of its substantial interest in this suit and in public access to the summary judgment briefing and materials in this case.  Plaintiff Students for Fair Admissions, Inc. ("SFFA") alleges that Harvard College has engaged in intentional discrimination against Asian Americans in its admissions process in violation of federal civil rights law.  The public funds Harvard at a cost of millions of dollars each year, and thus has a paramount interest in any proof of these allegations, Harvard's responses to them, and the Court's resolution of this dispute.  The Court therefore should ensure that these proceedings are open and accessible to the public consistent with the requirements of governing law.

Moreover, the United States has authority and responsibility to investigate alleged violations of, and to enforce, Title VI and other federal civil rights statutes.  Under that authority, the United States is currently conducting an independent Title VI investigation into whether Harvard's admissions policy discriminates against Asian-American applicants to Harvard College.  Given the overlap between this suit and the United States' investigation, this Court's

resolution of issues presented here may bear on the scope and resolution of the United States' investigation and enforcement of federal civil rights laws.  Accordingly, the United States may exercise its statutory authority to file a statement of interest at the summary judgment phase of this case.  *See* 28 U.S.C. § 517.[1]

The United States therefore has a strong interest in public access to the parties' summary judgment briefing and materials.  The United States agrees that applicants to Harvard, their families, and the general public have a presumptively paramount right to access the summary judgment record in this civil rights case.  Moreover, the United States and any *amici* can participate meaningfully in summary judgment only if they can access the summary judgment materials and familiarize themselves with the legal issues and portions of the voluminous discovery record that the parties present to the Court.  Indeed, any undue limitation on or delay in public access to the summary judgment materials would, at a minimum, create substantial obstacles to the participation of non-parties on the Court's current schedule and, more likely, may even eliminate entirely the opportunity of non-parties to participate in summary judgment.

Accordingly, the United States requests that the Court adhere to the well-established legal framework for protecting the presumptive right of public access to summary judgment materials and the legitimate privacy interests of parties to litigation.  In particular, the Court should preserve public access to the summary judgment materials in this case unless a party first carries its burden of making a particularized showing that the most compelling reason overcomes the presumption of such access to specific information.  Thus, the Court should reject Harvard's

---

[1] The United States' exercise of its statutory authority to file a statement of interest does not constitute intervention under Federal Rule of Civil Procedure 24 or require leave of court.  *See* 28 U.S.C. § 517.  Nonetheless, the United States would file any statement of interest at the summary judgment phase on the schedule that the Court has set for *amicus* filings.  *See* March 14, 2018, Electronic Order, ECF No. 387.

invitation to flip the presumption; the Court should not allow "briefs and supporting documents [to] be filed provisionally under seal on the established schedule" and consider unsealing documents only on some unspecified timeline after the parties have filed all of their summary judgment materials.  *See* Harvard March 30, 2018, Ltr. at 1-2, ECF No. 389.

### THE COURT SHOULD PRESERVE APPROPRIATE PUBLIC ACCESS TO THE SUMMARY JUDGMENT BRIEFING AND MATERIALS IN THIS CASE

Title VI of the Civil Rights Act of 1964 imposes anti-discrimination obligations on recipients of federal funding, including a prohibition on discrimination "on the ground of race, color, or national origin" in "any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  Congress has directed "[e]ach Federal department and agency which is empowered to extend Federal financial assistance . . . to effectuate the provisions of" Title VI. 42 U.S.C. § 2000d-1.  The taxpaying public provides Harvard with millions of dollars in federal financial assistance each year, *see* Answer ¶ 32, ECF No. 17, including financial assistance from the Department of Justice.  The Department of Justice is currently conducting an investigation into, among other things, a complaint filed by more than 60 Asian-American organizations alleging—similar to SFFA in this case—that Harvard has violated Title VI by discriminating against Asian-American applicants to Harvard College on the basis of race.  *See* 28 C.F.R. §§ 42.101-42.112 (Department of Justice regulations implementing the nondiscrimination provisions of Title VI).

This case thus overlaps with the legal and factual bases undergirding the United States' investigation and could directly bear on that investigation and the interpretation and scope of Title VI and other anti-discrimination laws that the United States enforces.  *See*, *e.g.*, 42 U.S.C. § 2000c-6 (enforcement of Equal Protection Clause in the context of institutions of higher learning); 20 U.S.C. § 1681 *et seq*. (Title IX of the Education Act Amendments of 1972); *Barnes*

*v. Gorman*, 536 U.S. 181, 185 (2002) ("[The Supreme] Court has interpreted Title IX consistently with Title VI.").  Indeed, any construction or application of Title VI here could implicate a host of federally-funded programs and activities:  Title VI reaches well beyond the education context with federal agencies across the spectrum extending federal financial assistance and issuing regulations implementing Title VI's anti-discrimination mandate.[2]  The Executive Branch has charged the Department of Justice with a unique federal government-wide coordination function for Title VI and similar anti-discrimination laws to ensure consistent application and enforcement.  Executive Order 12250, 28 C.F.R. pt. 41, app. A; *see also* 28 C.F.R. § 0.50 (delegating to the Civil Rights Division the responsibility for "[e]nforcement of all Federal statutes affecting civil rights"); 28 C.F.R. § 0.51 (delegating to the Civil Rights Division the responsibility "for coordinating the implementation and enforcement by Executive agencies" of Title VI and other anti-discrimination laws); *United States v. Maricopa Cnty.*, 915 F. Supp. 2d 1073, 1080 (D. Ariz. 2012) ("The DOJ coordinates government-wide compliance with Title VI and its interpretation of Title VI is entitled to special deference.") (citations omitted).

Given the significant interests of the United States potentially implicated by this case, the United States may exercise its statutory authority to file a statement of interest at the summary judgment phase.  *See* 28 U.S.C. § 517.  If the United States exercises this authority, it plans to file a statement of interest on the schedule this Court already has set for filing *amicus* briefs— *i.e.*, 28 days after the party being supported files a motion and 18 days after the party files an opposition.  *See* March 14, 2018, Electronic Order, ECF No. 387.

---

[2] *See*, *e.g.*, 7 C.F.R. § 15.3 (Agriculture); 15 C.F.R. § 8.4 (Commerce); 10 C.F.R. § 1040.13 (Energy); 45 C.F.R. § 80.3 (Health and Human Services); 24 C.F.R. § 1.4 (Housing and Urban Development); 43 C.F.R. § 17.3 (Interior); 29 C.F.R. § 31.3 (Labor); 22 C.F.R. § 141.3 (State); 49 C.F.R. § 21.5 (Transportation).

The Department of Justice therefore has a significant interest in preserving public access to the parties' summary judgment briefing and materials.  The United States agrees that past, present, and prospective applicants to Harvard, their families, and the general public have "a profoundly important interest in observing and understanding how the Court resolves this case" and the parties' competing assertions regarding whether Harvard College's admissions process comports with Title VI's anti-discrimination mandate.  SFFA March 30, 2018, Ltr. at 1, ECF No. 388.  Even Harvard agrees that "there is a public interest in this case."  Harvard March 30, 2018, Ltr. at 2.

Moreover, public access is essential to guaranteeing a meaningful opportunity for non-parties such as the United States and any *amici* to participate in the summary judgment phase. The United States and any *amici* can identify, understand, and contribute to the legal arguments and factual support that the parties present to the Court only if they can access the summary judgment briefs and materials.  While the Department of Justice has secured most of the discovery materials in this case through its Title VI investigative authority, *see* 28 C.F.R. § 42.106, those materials alone do not disclose the legal arguments the parties will advance, or which parts of the vast record the parties will rely upon, in their summary judgment briefs and statements of material facts.  Thus, the United States, like any *amici*, must have access to the parties' briefs, statements of material facts, and supporting exhibits in order to decide whether to file a brief and aid the Court's consideration of any summary judgment motions.

Harvard's letter to the Court makes no mention of the Court's scheduling order recognizing the right of non-parties to participate in summary judgment or of non-parties' need for access to summary judgment materials in order to make that right meaningful.  *See generally* Harvard March 30, 2018, Ltr.  Rather, "Harvard proposes that the briefs and supporting

documents be filed provisionally under seal on the established schedule, and that the Court set a schedule for the parties to assess the filings, confer to identify areas of disagreement concerning the sealing of those documents, and submit any disagreements to the Court for prompt resolution." *Id.* at 1-2. But that proposal, if accepted by the Court, would create substantial obstacles to the ability of non-parties to participate in summary judgment—and, more likely, might even eliminate that opportunity entirely.

Indeed, non-parties must be able to access the parties' summary judgment filings immediately in order to draft briefs within the 28-day and 18-day periods provided in the Court's scheduling order. *See* March 14, 2018, Electronic Order. Harvard, however, does not specify how long it would take "for the parties to assess the filings, confer to identify areas of disagreement concerning the sealing of those documents, and submit any disagreements to the Court" for its "resolution." Harvard March 30, 2018, Ltr. at 1-2. This process might not even start until after the parties have submitted all of their summary judgment filings, including the reply briefs. In that scenario, the United States and any *amici* would have no opportunity to access the parties' filings before the deadlines to file non-party briefs—and, thus, would be entirely shut out of participating in the summary judgment phase. Alternatively, the process could be conducted in multiple stages after each round of summary judgment filings. But such a piecemeal process would unduly tax the Court's scarce resources, and each stage of that process could last up to 28 days or even longer, again shutting non-parties out of the opportunity to timely access the parties' filings and to file briefs on the Court's schedule. Thus, under either scenario, Harvard's proposal would foreclose the United States and any *amici* from meaningful participation in the summary judgment phase.

To be sure, there is a weighty interest in protecting the private identities of students and applicants, as both SFFA and Harvard agree.  *See* Harvard March 30, 2018, Ltr. at 3; SFFA March 30, 2018, Ltr. at 2-3.  But neither that interest nor any of Harvard's other generalized arguments warrant adoption of Harvard's proposal to file all summary judgment materials under seal.  In fact, Harvard's proposal contravenes the governing law and should be rejected for that reason as well.

Both the First Amendment and the common law require courts to preserve the presumptively paramount public access to judicial records, including summary judgment materials, and this Court should give full weight to this well-established presumption.  *Fed. Trade Comm'n v. Standard Fin. Mgmt. Corp.,* 830 F.2d 404, 408 (1st Cir. 1987); *Bradford & Bigelow, Inc. v. Richardson*, 109 F. Supp. 3d 445, 447-48 (D. Mass. 2015).  The presumption "stems from the premise that public monitoring of the judicial system fosters the important values of 'quality, honesty and respect for our legal system.'"  *Siedle v. Putnam Investments, Inc.*, 147 F.3d 7, 9-10 (1st Cir. 1998) (quoting *Standard Fin. Mgmt. Corp.*, 830 F.2d at 410).  The public-access right applies to the trial record as well as summary judgment evidence because they both involve "materials on which a court relies in determining the litigants' substantive rights."  *In re Providence Journal Co., Inc.*, 293 F.3d 1, 9-10 (1st Cir. 2002) (citation omitted).  The burden of persuasion rests with the party "seeking to keep the datum hidden" who must provide "a particular factual demonstration of potential harm."  *Standard Fin. Mgmt. Corp.*, 830 F.2d at 411-12 (cited by Harvard March 30, 2018, Ltr. at 2-3).  This Court must "weigh the presumptively paramount right of the public to know against the competing private interest at stake," keeping in mind that "[t]he citizens' right to know is not lightly to be deflected" and "[o]nly the most compelling reasons can justify non-disclosure."  *Id.* at 410.

Harvard's proposal flips these controlling legal rules into a presumption in favor of a sealed summary judgment record.  Harvard's proposal would allow the parties to file *all* summary judgment materials under seal (thereby imperiling the right of the United States and any *amici* to participate in the summary judgment phase), would allow the parties to keep information under seal by agreement, and would permit the Court to enforce the presumption of public access only if the parties raise "disagreements."  Harvard March 30, 2018, Ltr. at 1-2. Harvard offers no justification for this approach other than generalized assertions regarding student privacy and a purportedly proprietary admissions process.  *See id.*  The United States, of course, shares the weighty interest in protecting the privacy of applicants and students.  But Harvard's generalized assertions are insufficient to carry its burden to make a particularized showing that the Court should allow any information—let alone the entire summary judgment record—to be filed under seal and to remain under seal until the Court resolves any disagreements between the parties in favor of public access.  *See id.* at 3; SFFA March 30, 2018, Ltr. at 2-4; *see also Standard Fin. Mgmt. Corp.*, 830 F.2d at 410-12.

This is especially true here.  In the first place, Harvard has already redacted personal identifying information from the student and applicant records that it has produced in discovery. *See* Harvard March 30, 2018, Ltr. at 3.  SFFA therefore does not have that information and cannot include it in its summary judgment materials.  *See* SFFA March 30, 2018, Ltr. at 2-4 & n. 1.  In any event, SFFA has represented that it will redact personal information from the "few, if any" individual student or applicant records it may file at summary judgment.  *Id.* at 2. And, finally, Harvard's concern about public disclosure of the particulars of its admissions process is belied by its own prior public disclosure of many of those particulars.  *See*, *e.g.*, SFFA March 30, 2018, Ltr. at 10-11.

In short, Harvard's proposal contravenes the law and imperils the interest of the public,

the United States, and any *amici* in full, fair, and open proceedings.  This Court should instead

apply the well-settled law construing the presumption of public access to judicial records and

leave summary judgment (and any trial) materials available to the public unless a party first

makes a particular factual demonstration of potential harm from disclosure of each piece of

information that the party wishes to file under seal.


Respectfully submitted,


John M. Gore
Acting Assistant Attorney General


  */s/ Matthew J. Donnelly  -*
Matthew J. Donnelly (IL Bar #6281308)
Sean R. Keveney (TX Bar #24033862)
Hilary F. Pinion (VA Bar #46872)
Attorneys
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
202-616-2788
matthew.donnelly@usdoj.gov

DATED:  April 6, 2018

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF"), and paper copies will be sent to non-registered participants as indicated on the NEF.

*/s/ Matthew J. Donnelly*
Matthew J. Donnelly
Attorney for the United States