UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

STUDENTS FOR FAIR ADMISSIONS,
INC.,

               Plaintiff,

      v.

PRESIDENT AND FELLOWS OF
HARVARD COLLEGE (HARVARD
CORPORATION),

               Defendant.

Civil Action No. 1:14-cv-14176-ADB

**BRIEF FOR WALTER DELLINGER AS AMICUS CURIAE IN SUPPORT OF
DEFENDANT ON THE ISSUE OF STANDING**

# TABLE OF CONTENTS

Page

INTEREST OF AMICUS CURIAE ............................................................................... 1

ARGUMENT ................................................................................................................ 1

I.      Article III's Standing Requirement Limits Federal Courts To Adjudicating
        Concrete Disputes And Precludes Them From Resolving Individuals'
        Generalized, Ideological Grievances ............................................................... 2

II.     These Important Limits On Federal Court Jurisdiction Cannot Be Avoided
        Through Artificial Means ................................................................................. 6

III.    SFFA Is A Transparent And Novel Attempt to Assert A Generalized Grievance
        Through An Organization Created Solely For the Purpose of Litigation, Unlike
        Other Organizations Granted the Benefit Of Associational Standing .............. 8

CONCLUSION ........................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Wright,*
468 U.S. 737 (1984).................................................................................... 2, 7

*Ariz. Christian Sch. Tuition Org. v. Winn,*
563 U.S. 125 (2011)....................................................................................... 3

*Arizonans for Official English v. Arizona,*
520 U.S. 43 (1997)......................................................................................... 3

*Automobile Workers v. Brock,*
477 U.S. 274 (1986)..................................................................................... 10

*Camel Hair & Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp.,*
799 F.2d 6 (1st Cir. 1986)........................................................................ 8, 10

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013)....................................................................................... 3

*DaimlerChrysler Corp. v. Cuno,*
547 U.S. 332 (2006)....................................................................................... 3

*Diamond v. Charles,*
476 U.S. 54 (1986)........................................................................... 1, 4, 5, 11

*Duke Power Co. v. Carolina Envtl. Study Grp., Inc.,*
438 U.S. 59 (1978)......................................................................................... 5

*Fisher v. Univ. of Texas at Austin,*
570 U.S. 297 (2013).................................................................................. 8, 11

*Hollingsworth v. Perry,*
570 U.S. 693 (2013)............................................................................... passim

*Hunt v. Wash. State Apple Advert. Comm'n,*
432 U.S. 333 (1977).................................................................................. 9, 10

*Ill. Dep't of Transp. v. Hinson,*
122 F.3d 370 (7th Cir. 1997) ........................................................................ 4

*Kowalski v. Tesmer,*
543 U.S. 125 (2004)....................................................................................... 6

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992).............................................................................. 4, 5, 7

*Massachusetts v. Mellon*,
   262 U.S. 447 (1923) ................................................................................................ 5

*NAACP v. State of Ala. ex rel. Patterson*,
   357 U.S. 449 (1958) ................................................................................................ 9

*Schlesinger v. Reservists Comm. to Stop the War*,
   418 U.S. 208 (1974) ........................................................................................... 3, 5

*Simon v. E. Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976) ................................................................................................. 4

*Singleton v. Wulff*,
   428 U.S. 106 (1976) .............................................................................................. 5

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ................................................................................................. 5

*United States v. SCRAP*,
   412 U.S. 669 (1973) .............................................................................................. 5

*Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*,
   454 U.S. 464 (1982) ..................................................................................... 4, 5, 10

*Warth v. Seldin*,
   422 U.S. 490 (1975) ........................................................................................... 5, 6

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) .............................................................................................. 6

**Constitutional Provisions**
U.S. Const. art. III, § 2 ............................................................................................ 2

**Other Authorities**
13A Wright & Miller, Federal Practice and Procedure § 3531.9.5 (3d ed. 2012) ...................... 10

4 Papers of John Marshall 95 (C. Cullen ed., 1984) ................................................... 3

Anemona Hartocollis, *He Took On The Voting Rights Act and Won.  Now He's Taking On
   Harvard*, N.Y. Times, Nov. 19, 2017 ................................................................. 8

**INTEREST OF AMICUS CURIAE**

Walter Dellinger is the Douglas B. Maggs Professor Emeritus of Law at Duke University, and a partner at O'Melveny & Myers LLP.[1]  Professor Dellinger has throughout his career studied the scope of the Article III jurisdiction of federal courts, including issues relating to Article III standing, and filed a brief of amicus curiae related to standing in *Hollingsworth v. Perry*, 570 U.S. 693 (2013).  He is committed to the public interest and to the enforcement of proper limits on the scope of judicial power.  Based on his study of the applicable precedent and principles, he believes that Students for Fair Admissions ("SFFA") has no standing to bring this suit in federal court.

**ARGUMENT**

Article III's standing requirement serves to ensure that the remedial power of federal courts is "placed in the hands of those who have a direct stake in the outcome," rather than "inthe hands of concerned bystanders, who will use it simply as a vehicle for the vindication of value interests."  *Diamond v. Charles*, 476 U.S. 54, 62 (1986) (quotations and citations omitted).

Edward Blum is an admitted ideological opponent of race-conscious university admissions policies.  But because he is not a college student or applicant, he indisputably has no standing to challenge such policies in court.  Blum instead formed SFFA with the avowed, exclusive purpose of pursuing his own ideological interests through litigation, in defiance of Article III's limits on his own ability to bring such lawsuits.  In particular, he identified Asian-American Harvard applicants, made them SFFA "members," and brought this lawsuit purportedly on their behalf.  Amicus understands, however, that discovery has in fact revealed

---

[1] Amicus files this brief pursuant to this Court's July 24, 2018 order granting "leave for any interested party to file an amicus brief on the pending dispositive motions."  Institutional affiliations are listed for identification purposes only.

that SFFA provides its "standing members" no remotely meaningful role in the governance of the organization and, in turn, no remotely meaningful role in the litigation supposedly being conducted on their behalf.

Amicus is aware of no similar organization created for the exclusive purpose of litigation, which provides no other benefits or services to its "members," but that has nevertheless been granted the ability to sue in its own name.  These unique circumstances call for heightened skepticism and scrutiny of the nature of the relationship between SFFA and its "standing members" to protect the core Article III interest in ensuring that federal lawsuits are litigated by those with an actual, concrete stake in the outcome.  Allowing such transparent efforts to side-step Article III requirements to pass without scrutiny would drain of all practical meaning the Article III principle that federal courts cannot serve as a forum for the airing of generalized grievances.

That rule is one of substance, not simply of labels:  It ensures that federal courts stay within their constitutionally prescribed role.  Mr. Blum's transparent attempt to draw federal courts into resolving one of the most divisive questions of recent years is as troubling as it is novel.  The maneuver should not be permitted, and Article III's prohibition on the litigation of generalized grievances—as Mr. Blum is attempting to do here—should be enforced.

I.      **Article III's Standing Requirement Limits Federal Courts To Adjudicating Concrete Disputes And Precludes Them From Resolving Individuals' Generalized, Ideological Grievances**

The Constitution does not give federal courts an unrestrained power to decide every constitutional question that a party wishes to have them resolve.  Rather, Article III limits the federal judicial power to deciding "Cases" and "Controversies."  U.S. Const. art. III, § 2.  This limitation "defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded."  *Allen v. Wright*, 468 U.S. 737, 750 (1984).  "No principle

2

is more fundamental to the judiciary's proper role in our system of government…" *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976).  Permitting federal courts to decide legal questions outside the context of cases or controversies "would be inimical to the Constitution's democratic character," *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011), because "the federal courts might take possession of 'almost every subject proper for legislative discussion and decision,'" *id*. (quoting 4 Papers of John Marshall 95 (C. Cullen ed., 1984)). "Continued adherence to the case-or-controversy [limitation] of Article III maintains the public's confidence in an unelected but restrained Federal Judiciary." *Id*.

An "essential aspect" of the cases-or-controversies limitation is that "any person invoking the power of a federal court must demonstrate standing to do so." *Hollingsworth*, 570 U.S. at 704.  The standing requirement "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). The standing requirement takes on heightened significance in cases implicating constitutional adjudication—a court's "most important and delicate" responsibility—because it helps ensure that such questions are not decided unnecessarily. *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221-22 (1974).  To allow a litigant without standing to "require a court to rule on important constitutional issues in the abstract would create the potential for abuse of the judicial process." *Id*. at 222.[2]  Where standing is lacking, in short, "the dispute is not a proper case or controversy, [and] the courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006).

---

[2] Although SFFA bases its challenge on Title VI, SFFA has argued that the statutory standard is equivalent to the constitutional standard under the Equal Protection Clause.  *See* Dkt. 413 at 3.

As relevant here, to establish standing, a party must show the invasion of a legally cognizable interest that is "concrete and particularized," *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997), meaning that the injury must affect the plaintiff "in a personal and individual way," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 n.1 (1992).  In expounding upon that injury requirement, the Supreme Court has recognized two limits on the class of individuals who can invoke the decisional and remedial powers of federal courts that are especially pertinent here.

First, the Supreme Court has made clear that courts must "refrain[] from adjudicating abstract questions of wide public significance which amount to generalized grievances, pervasively shared and most appropriately addressed in the representative branches."  *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 475 (1982) (quotations omitted).  As explained in *Lujan*, "a plaintiff raising only a generally available grievance . . . claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large . . . does not state an Article III case or controversy." 504 U.S. at 573-74.  "Refusing to entertain generalized grievances ensures that . . . courts exercise power that is judicial in nature and ensures that the Federal Judiciary respects the proper—and properly limited—role of courts in a democratic society."  *Hollingsworth*, 570 U.S. at 715 (quotations and citations omitted).  This prohibition "prevent[s] kibitzers, bureaucrats, publicity seekers, and 'cause' mongers from wresting control of litigation from the people directly affected . . . ."  *Ill. Dep't of Transp. v. Hinson*, 122 F.3d 370, 373 (7th Cir. 1997).  It embodies the notion that "the decision to seek review must be placed in the hands of those who have a direct stake in the outcome" rather than with "concerned bystanders, who will use it

simply as a vehicle for the vindication of value interests." *Diamond*, 476 U.S. at 62 (quotations and citations omitted).

The rule applies regardless of the level of ideological commitment individuals have to the law whose enforcement they seek, and no matter how "zealous their advocacy." *Hollingsworth*, 570 U.S. at 707 (alteration and quotation omitted); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). As the Court has explained, the role of federal courts is not to referee debates between ideological opponents or to serve as a neutral forum "for the vindication of . . . value interests." *United States v. SCRAP*, 412 U.S. 669, 687 (1973). Instead, a federal court's sole constitutional role is to resolve real disputes between parties who have a *personal* stake in the outcome. *See Valley Forge*, 454 U.S. at 472. The Court has applied the rule that a generalized grievance does not establish Article III standing across the ideological spectrum, denying standing to taxpayers opposed to federal laws for the protection of mothers and infants, *Massachusetts v. Mellon*, 262 U.S. 447, 488-89 (1923); environmentalists committed to enforcement of laws protecting endangered species, *Lujan*, 504 U.S. at 573-76; antiwar activists opposed to members of Congress serving as reservists, *Schlesinger*, 418 U.S. at 217, 220; doctors ethically opposed to abortion, *Diamond*, 476 U.S. at 63-68; and proponents of a California ballot initiative precluding same-sex marriage, *Hollingsworth*, 570 U.S. at 706.

Second, and closely related, is the rule disfavoring third-party standing. The Supreme Court has explained that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). The rule provides "the assurance that the most effective advocate of the rights at issue is present to champion them." *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 80 (1978). In most cases, that advocate is the third party itself. *Singleton v.*

5

*Wulff*, 428 U.S. 106, 114 (1976) (plurality opinion of Blackmun, J.).  Like the generalized grievances prohibition, third-party standing restrictions help ensure that federal courts avoid deciding "abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions . . ."  *Warth*, 422 U.S. at 500.

The Supreme Court accordingly has "not looked favorably upon third-party standing." *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004).  In *Whitmore v. Arkansas*, 495 U.S. 149 (1990), for example, the Court adopted stringent requirements for "next friend" standing—a species of third-party standing—in the habeas context.  The Court explained that absent such constraints, "the litigant asserting only a generalized interest in constitutional governance could circumvent the jurisdictional limits of Art. III simply by assuming the mantle of 'next friend.'"  *Id*. at 164.

## II.     These Important Limits On Federal Court Jurisdiction Cannot Be Avoided Through Artificial Means

Because the assertion of generalized grievances or the claims of third parties is prohibited by Article III itself, courts have properly rejected attempts to circumvent that rule.  In *Hollingsworth*, the Court confronted a rule of California law conferring on an initiative's proponents the authority to represent the state's own interest in the enforcement of an initiative when state officials decline to defend it.  570 U.S. at 703.  The proponents of Proposition 8, which amended the California Constitution to ban recognition of same-sex marriages, relied on that conferral of authority to appeal to the Ninth Circuit and eventually the Supreme Court.  But the Supreme Court held that the proponents did not have Article III standing.  California's decision to transfer its valid interest in enforcing its laws to the proponents could not transform their generalized grievance into a concrete and particularized one.  *Id*. at 714-15.  As the majority opinion succinctly noted, "States cannot alter [the limited role of courts] simply by issuing to

private parties who otherwise lack standing a ticket to the federal courthouse." *Id*.; *see also id.* at 713 (citing Brief for Walter Dellinger as Amicus Curiae).

Similarly, in *Lujan*, the Court held that Congress could not, by enacting a "citizen suit" provision to make citizens "private attorneys general," give every citizen a right to seek enforcement of the Endangered Species Act. The Court rejected the view that "the public interest in proper administration of the laws . . . can be converted into an individual right by a statute that denominates it as such." 504 U.S. at 576-77.

Although those cases involve congressional or state attempts to circumvent Article III requirements, courts should treat private attempts at circumvention—like Mr. Blum's effort in this case—with at least the same skepticism. In *Hollingsworth* and *Lujan*, a governmental entity sought to confer authority to bring suit in federal court on concerned bystanders who would otherwise lack it. Here, a concerned bystander has taken steps to confer standing *on himself*. Treating the latter situation any differently would drain the prohibition against generalized grievances of its practical significance: Any individual would be able to transform a generalized, non-personal grievance into a cognizable injury simply by recruiting "members" to an organization that then performs no function outside of litigation and gives those "members" no meaningful role in the litigation process.

Take, for instance, *Allen v. Wright*, where the Court held that stigmatic injury from racial discrimination could not form the basis for standing without further showing that the plaintiffs themselves were "personally denied equal treatment." 468 U.S. at 755. The Court reasoned that if abstract stigmatic injury were cognizable, "[a] black person in Hawaii could challenge the grant of a tax exemption to a racially discriminatory school in Maine," *id*. at 756—exactly the kind of generalized grievance that standing doctrine was designed to avoid. It would defy

common sense, then, to permit that same Hawaiian standing to air his grievance merely because he succeeds in creating an organization of affected "members" from Maine that has no other purpose than to further his own litigation agenda.  In that scenario, the harm done to standing principles is at least the same as if one had allowed the abstract stigmatic harm to proceed in the first place.  No plausible conception of Article III would allow its strictures to be so easily undermined.

**III.    SFFA Is A Transparent And Novel Attempt to Assert A Generalized Grievance Through An Organization Created Solely For the Purpose of Litigation, Unlike Other Organizations Granted the Benefit Of Associational Standing**

Students for Fair Admissions is an organization founded and run by Edward Blum, an individual with no personal stake in the issues central to this case.  Standing prerequisites prohibit Blum from bringing his own suit challenging race-conscious admissions.  In the past, Blum has identified individuals who would sue in their own name to challenge such policies. *See, e.g.*, *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297 (2013); Anemona Hartocollis, *He Took On The Voting Rights Act and Won.  Now He's Taking On Harvard*, N.Y. Times, Nov. 19, 2017 (noting that Mr. Blum financed *Fisher*).  This time, however, Blum created SFFA as a workaround.  Blum recruited potential plaintiffs to become "members" of SFFA so that he could effectively adopt their claims as his own, while simultaneously precluding them from any meaningful control over the litigation.  Harvard's Statement of Material Facts, Dkt. 420 ("SMF") ¶ 243; Deposition of Edward J. Blum, Dkt. 419-2 at 166:13-19 ("I needed plaintiffs; I needed Asian plaintiffs . . . so I started . . . HarvardNotFair.org.").

When individuals organically form an association by "pool[ing] their interests, activities and capital under a name and a form that will identify collective interests," *Camel Hair & Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp.,* 799 F.2d 6, 11 (1st Cir. 1986), courts may permit the association to sue on the individuals' behalf because the association "and

its members are in every practical sense identical," *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 459 (1958).  But as Harvard has explained, that is far from the case here.  The "standing members" of SFFA—along with other members—exert minimal control over the organization and its litigation.  SFFA Bylaws, Dkt. 419-89 at 10 (permitting members to elect only one of five board members).  These "standing members" have not attended any SFFA meetings and refuse to testify whether they voted in any SFFA election.  SMF ¶¶ 249-50. Although SFFA has a formal membership dues policy, Blum's own outside fundraising efforts provide almost all of the organization's funds.  SMF ¶¶ 253-55 (indicating that membership dues amount to $430 in 2015 and $300 in 2016, while unidentified donors provided SFFA with nearly $2 million in 2015 and 2016).  Unlike in past cases where the Supreme Court has blessed associational standing, SFFA is *not* "in every practical sense identical" to the standing members—its only purpose is to further the ideological identity of Edward Blum.  The organization, in short, is concededly a mechanism designed solely to grant Blum standing through the rights and interests of third party plaintiffs so that he can litigate his generalized grievance about race-conscious admissions in federal court.

SFFA claims, and this Court ruled in denying Harvard's Motion to Dismiss, that this Court's standing inquiry should end if SFFA can show that it meets the requirements of the *Hunt* test for associational standing.  In particular, SFFA claims that it has standing here, purportedly on behalf of its "members," if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342-43 (1977).

But the *Hunt* test in fact makes clear why groups like SFFA—created for the exclusive purpose of manufacturing federal cases while denying their "members" any meaningful control over that litigation—have no standing to sue.  After all, the *Hunt* test on its face contemplates organizations whose purpose and activities—unlike SFFA's—extend beyond the mere initiation of litigation.  The inclusion of the germaneness prong in particular implies that the *Hunt* test applies to organizations who have an independent interest and function *beyond* simply pressing an ideological litigation agenda.  *Cf.* 13A Wright & Miller, Federal Practice and Procedure § 3531.9.5 (3d ed. 2012) ("Inquiry into the purpose of the organization also suggests that some inquiry be made into the nature of the organization.").  The Apple Advertising Commission in *Hunt*, for example, acted like a traditional trade association by engaging in "advertising, market research and analysis, public education campaigns, and scientific research."  *Hunt*, 432 U.S. at 344.

Other organizations held to have properly invoked associational standing have also had established functions beyond filing suits.  In *Automobile Workers v. Brock*, the Supreme Court emphasized that the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America passed the *Hunt* test in part because the litigation was connected to the organization's separate and broader purpose of lobbying Congress for specific legislation. 477 U.S. 274, 286 (1986).  And in *Camel Hair*, the First Circuit similarly noted the plaintiff's efforts to "educat[e] the public, retail dealers and garment makers about what was or was not a legitimate cashmere or camel hair product."  799 F.2d at 7.

By contrast, SFFA exists purely to sue Harvard and other universities to challenge consideration of race in university admissions.  The organization's only apparent function is to bring lawsuits to advance its founder's ideological interest pressing the unconstitutionality of

universities' admissions policies—an issue of "wide public significance," *Valley Forge*, 454 U.S. at 474-75—in federal courts.  For example, SFFA's website states that its mission is "to support and participate in litigation that will restore the original principles of our nation's civil rights movement: *A student's race and ethnicity should not be factors that either harm or help that student to gain admission to a competitive university*."  *About*, Students for Fair Admissions, https://studentsforfairadmissions.org/about/ (last visited July 30, 2018).  And the organization's only publicly advertised "legal issue" of interest is that "Harvard, UNC and most competitive universities are not in compliance with the Supreme Court's instructions" in *Fisher v. University of Texas at Austin*, 570 U.S. 297 (2013).  *Legal Issues*, Students for Fair Admissions, https://studentsforfairadmissions.org/legal-issues/ (last visited July 30, 2018).  SFFA, in other words, is an organization transparently designed by a "concerned bystander" to be "a vehicle for the vindication of [his] value interests," *Diamond*, 476 U.S. at 62—i.e., an organization designed to evade the strictures of Article III.

Amicus is aware of no similar organization that has been granted the ability to sue in its own name when it was created for the exclusive purpose of litigation and provides no other benefits or services to its "members."  Indeed, there is no plausible reason why lawsuits should be brought by this organization rather than by its individual "standing members," *except* to deny those affected individuals control over the litigation of their own claims and perhaps to avoid procedural requirements in multi-plaintiff litigation or Rule 23 class actions.  Such a transparent attempt to end-run Article III should not be countenanced.

In these unusual circumstances, this Court should apply the "indicia of membership" test from *Hunt* to probe the relationship between the supposed "standing members" and the organization, as Harvard has urged.  *See* Dkt. 190; Dkt. 418 at 12 & n.8.  If the rule were

otherwise, then concerned bystanders will have a ready blueprint to conscript federal courts into resolving generalized ideological grievances—including over constitutional issues of widespread importance—without themselves having any personal or concrete injury related to the issue. Such a result would undermine the principles animating Article III's standing requirement, and would necessarily force the judiciary into resolving precisely the types of general political disputes that Article III is meant to preclude.

**CONCLUSION**

For all of these reasons, the Court should dismiss SFFA's suit against Harvard for lack of jurisdiction.

Dated:  July 30, 2018

APALLA U. CHOPRA
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071
(213) 430-6000

Respectfully submitted,

/s/ Joanne L. Wisner
BRADLEY N. GARCIA
JOANNE L. WISNER (BBO #646301)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
(202) 383-5300

ANTON METLITSKY
PATRICK D. MCKEGNEY
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036
(212) 326-2000

*Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that, on July 30, 2018, a true and correct copy of the foregoing was filed

through the ECF system, which will send notification of such filing to all counsel of record.

*/s/ Joanne L. Wisner*
Joanne L. Wisner