# EXHIBIT 275

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

BOSTON DIVISION

Civil Action No. 1:14-cv-14176-ADB

---

DEPOSITION OF: [REDACTED] - June 16, 2017

---

STUDENTS FOR FAIR ADMISSIONS, INC.,

Plaintiff,

v.

PRESIDENT AND FELLOWS OF HARVARD COLLEGE

(HARVARD CORPORATION),

Defendant.

---

PURSUANT TO NOTICE AND SUBPOENA, the deposition of [REDACTED] was taken on behalf of the Defendant at [REDACTED] [REDACTED], on June 16, 2017, at 8:54 a.m., before Sherry Wallin, Certified Realtime Reporter, Registered Merit Reporter and Notary Public within [REDACTED]

Q. Did you write this document?

MR. PARK: Objection. I'm going to instruct the witness not to answer that.

MR. DULBERG: On what grounds?

MR. PARK: Attorney-client privilege, work product doctrine.

Q. (BY MR. DULBERG) Do you know whether this document was drafted by counsel?

MR. PARK: Same objection. Same instruction.

Q. (BY MR. DULBERG) Did counsel provide this document to you for you to sign?

MR. PARK: Same instruction.

Q. (BY MR. DULBERG) Did you review this document before you signed it?

MR. PARK: You can answer that.

A. I did.

Q. (BY MR. DULBERG) Did you make any changes to this document before you signed it?

MR. PARK: Objection, and instruct the witness not to answer that.

MR. DULBERG: On attorney-client privilege and work product?

MR. PARK: Yeah. Yes.

Q. (BY MR. DULBERG) Sitting here today, is

everything in this declaration true and accurate?

A. Yes.

Q. So if we look at the very first line of the declaration, it begins, "I, pursuant to 28 U.S.C. Section 1746, declare the following." Did I read that correctly?

A. Yes.

Q. Do you know what 28 U.S.C. Section 1746 is?

A. I do not.

Q. Did you ask anyone what that language referred to before you signed this document?

MR. PARK: Objection. You can answer.

A. No.

Q. (BY MR. DULBERG) Does it concern you at all that you signed this without making that inquiry?

MR. PARK: Objection. You can answer.

A. It didn't really concern me, no.

Q. (BY MR. DULBERG) Are there any other parts of this declaration that you do not understand?

MR. PARK: Objection.

A. No. I understand everything else.

Q. (BY MR. DULBERG) Okay. And we've already talked about your plan to enroll at ████ in the fall. It's discussed in paragraph 5. Do you see

that?

A. Um-hum -- yes.

Q. We've also discussed paragraph 4. And so that's true, correct, the statements in paragraph 4 are true?

MR. PARK: Objection. You can answer.

A. Yes.

Q. (BY MR. DULBERG) Okay. Let's look at paragraph 6. Can you read that out loud for the record?

A. "I am able and ready to apply to transfer to Harvard were it to cease the use of race or ethnicity as an admissions preference and to cease its intentional discrimination against Asian Americans."

Q. Is that a true statement as of May 26, 2017, when you signed this declaration?

A. Yes.

Q. Is it a true statement today?

A. Yes.

Q. What does this statement mean?

A. What it means to me is that if Harvard were to stop using its use of race and ethnicity in admissions, I would think my chances of being admitted had risen enough, because of that change, that I would

apply again for transfer to see if I could get in under the new system.

Q. But under the current system you have no intent to apply to transfer; is that correct?

A. That's correct.

Q. Is it just if Harvard were to cease the use of race as an admissions process, then you would intend to apply to transfer to Harvard?

A. Yes.

Q. This statement also contains a reference, as you just read, to ceasing its intentional discrimination against Asian Americans. Do you see that?

A. Yes.

Q. Do you believe that Harvard intentionally discriminates against Asian Americans in its college admissions process?

A. I do believe so.

Q. Do you believe that admissions officers are biased against Asian Americans?

MR. PARK: Objection. You can answer.

A. I don't know what the mental process is behind it, but I am fairly sure that they set a higher bar for Asian Americans. I don't know if they have any personal dislike for Asian Americans or not, but

you've had with other SFFA members?

MR. PARK: Objection. Instruct the witness not to answer.

Q. (BY MR. DULBERG) You mentioned an email in which you asked Mr. Blum whether you could assist with the standing issue. Was that the first time you had corresponded with SFFA regarding your possible service as a standing member?

MR. PARK: Objection.

A. Yes. That was -- I'm sorry. Could you repeat that?

Q. (BY MR. DULBERG) You described an email to Mr. Blum in which you asked whether you could help provide SFFA with standing, correct?

A. Um-hum -- yes.

Q. And my question is, was that the first time you corresponded with anyone from SFFA regarding your possible role as a standing member in this litigation?

MR. PARK: Objection.

A. Yes. That was the first time.

Q. (BY MR. DULBERG) You write in paragraph 9 of your declaration, which is Exhibit 1, "They have answered my questions and afforded me the opportunity to have input and direction on SFFA's

case." Do you see that?

A. Yes.

Q. And what does that mean?

A. So what that means to me is obviously they have answered my questions. I've been very curious about this, asked a lot of questions, and they've answered them thoroughly.

And having input and direction, I have suggested things to them about, like, possible arguments to make in the lawsuit or -- I've actually had more input -- I've given them more input about future lawsuits to bring.

I haven't had to, like, give them much input, because I think SFFA is doing a very good job in representing its interests and my interests in the case. So I haven't had to, like, tell them what I would do differently.

MR. PARK: Thank you. I again caution the witness not to disclose contents of communications with lawyers.

Q. (BY MR. DULBERG) Setting aside your communications with lawyers, which Mr. Park and I agree are off limits, what input have you provided SFFA with respect to this case, if any?

A. I don't remember giving them a specific

A. I don't know of anyone who I know is a member. There may be people who I know who happen to be members, but I don't know that they're members.

Q. (BY MR. DULBERG) Have you ever attended a meeting of SFFA?

MR. PARK: You can answer that. You can answer.

A. No, I have not. Actually, I should revise that. I was on a phone conference for SFFA this past December.

Q. (BY MR. DULBERG) Is that a phone conference that was open to all SFFA members, to the best of your knowledge?

A. It was. All SFFA members received an email a couple days before that stating there will be this phone conference, dial in if you want to attend it, and so I did.

Q. Was that the only time you were invited to participate in a phone conference that all SFFA members were invited to?

A. Yes.

Q. Do you know whether there have been any other phone conferences of SFFA members as a whole?

A. I don't think there have been any because, as I said, I have been a member since