**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF MASSACHUSETTS**
**BOSTON DIVISION**

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 1:14-cv-14176-ADB |
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE (HARVARD CORPORATION), | |
| Defendant. | |

## HARVARD'S MOTIONS IN LIMINE

I.     **HARVARD'S MOTION IN LIMINE TO EXCLUDE EVIDENCE CONCERNING ITS EARLY TWENTIETH-CENTURY ADMISSIONS PRACTICES**

This Court has twice ruled that Harvard's admissions practices in the first half of the twentieth century—specifically, discrimination against Jewish applicants at that time—are irrelevant to SFFA's claims.  *See* Dkt. 181 ¶ 6; Dkt. 193 at 15:17-17:18.  Nevertheless, SFFA has indicated that it will seek to introduce evidence concerning Harvard's admissions practices from nearly 100 years ago at the upcoming trial, and has included no fewer than a dozen documents on its exhibit list dating from this period.  SFFA's focus on ancient history is an obvious attempt to distract the Court from the dearth of evidence showing intentional discrimination in this case.  But SFFA should not be permitted to confuse the issues and waste the Court's time by presenting evidence that, as this Court has recognized, has nothing to do with its claims.  In light of the Court's prior rulings and pursuant to Federal Rules of Evidence 402 and 403, Harvard respectfully requests that the Court preclude SFFA from introducing this irrelevant evidence at trial.[1]

A.     **Legal Standard**

Federal Rule of Evidence 401 states that evidence is relevant if it makes a fact "of consequence" "more or less probable," and under Rule 402 "[i]rrelevant evidence is not admissible."  It is within a court's discretion to "limit[] the scope of [a] bench trial to [relevant] incidents."  *Bissell v. United States*, 321 F. App'x 549, 551 (9th Cir. 2008); *see also, e.g., Hernandez v. Cook Cty. Sheriff's Office*, 2016 WL 10821957, at *1 (N.D. Ill. May 25, 2016) (excluding from bench trial evidence of 1980 consent decree because it was "so remote in time and substance"); *Abbott Labs. v. TorPharm, Inc.*, 2003 WL 22462614, at *15 (N.D. Ill. Oct. 29,

_____

[1]     This includes SFFA Exhibits P060, P061, P343, P348, P353, P491-P504, P557, and P560.

2

2003) (finding plaintiff's "argument regarding the relevance" of certain evidence "still applie[d]" in bench trial and excluding irrelevant evidence).

Rule 403 enables courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Courts presiding over bench trials routinely exercise their discretion to exclude evidence that violates Rule 403.  *See, e.g., Keller v. United States*, 38 F.3d 16, 32 n.10 (1st Cir. 1994) (affirming exclusion of evidence from a bench trial pursuant to Rule 403); *Ramos-Melendez v. Valdejully*, 960 F.2d 4, 6 (1st Cir. 1992) (holding that it "was well within [the district court's] discretion under Fed. R. Evid. 403" to exclude evidence that would have resulted in a significant focus on collateral issues from a bench trial); *United States v. Foley*, 871 F.2d 235, 238 (1st Cir. 1989) (upholding court's exclusion of evidence in bench trial because, among other reasons, "it would not have been an abuse of discretion to exclude the evidence solely on the basis of the quoted language from Fed. R. Evid. 403" and "a court's refusal to introduce collateral issues at trial has been characterized by Holmes as a 'concession to the shortness of life'" (quoting *Reeve v. Dennett*, 11 N.E. 938, 944 (Mass. 1887)).

**B.      Allegations Of Decades-Old Discrimination Have No Probative Value**

Unable to find evidence of intentional discrimination within the present century, SFFA reaches back nearly 100 years, arguing that Harvard's admissions policies and practices in the 1920s are relevant to this case on the ground that a policy's "historical background" may provide information about whether the policy is intentionally discriminatory.  *See* Dkt. 413 at 23-26 (quoting *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 267 (1977)).  But as the Court observed when it rejected SFFA's request for discovery into

3

Harvard's treatment of Jewish applicants during the early twentieth century, that issue "is a red herring." Dkt. 193 at 17:8-12. "[U]nless historical evidence is reasonably contemporaneous with the challenged decision, it has little probative value." *McCleskey v. Kemp*, 481 U.S. 279, 298 n.20 (1987); *see also, e.g.*, *Watkins v. Angelone*, 1998 WL 2861, at *6 n.3 (4th Cir. Jan 7, 1998) (per curiam) (actions of "local officials in the 1960s" were not "reasonably contemporaneous" under *McCleskey* so as to "support a challenge to a 1998 jury").

As the Court noted, the history that SFFA seeks to introduce "is old," and there are "many miles between the history and now." Dkt. 193 at 15:23-24. Indeed, SFFA concedes, as it must, that Harvard's early twentieth-century admissions practices are "more distant than [the evidence] in many cases in which history is used as an *Arlington Heights* factor." Dkt. 413 at 25; *see also, e.g.*, *Burton v. City of Belle Glade*, 178 F.3d 1175, 1195 (11th Cir. 1999) (evidence of discrimination that "ended almost twenty years before the decision at issue" and was "wholly unconnected" was "far too remote and attenuated to be probative of any discriminatory purpose"); *Hall v. Holder*, 117 F.3d 1222, 1226-27 (11th Cir. 1997) (rejecting reliance on 1912 legislation in challenge to voting practices); *Laramore v. Ill. Sports Facilities*, 1996 WL 153672, at *12-13 (N.D. Ill. Apr. 1, 1996) (rejecting plaintiff's assertion that racial discrimination beginning in 1945 resulted in an intentionally discriminatory zoning decision in the 1980s because, "given the change in the political realities, plaintiffs simply cannot rely on a past climate of racial discrimination ... as evidence that [a municipal] decision was racially motivated as well").

Further, just as the Court predicted, Harvard's early twentieth-century admissions practices are "so old and so remote" that SFFA has been unable "to link [them] to what's happening now" in a way that would yield "probative evidence." Dkt. 193 at 17:9-12. That is

unsurprising, for no such link exists.  The Dean of the Office of Admissions and Financial Aid,

William Fitzsimmons, testified that "the holistic admissions process" SFFA now challenges

"certainly is not like" the one SFFA seeks to interject into these proceedings.  Dkt. 421-9 at

410:4-9.  Because SFFA cannot connect the history it seeks to introduce to its current claims, the

Court should preclude the introduction of that evidence as irrelevant.  *See TBS Grp., LLC v. City*

*of Zion, Illinois*, 2017 WL 5129008, at *7 (N.D. Ill. Nov. 6, 2017) (series of historical events

between 1982 and the early twenty-first century could not support a claim of intentional racial

discrimination because "invoking 'historical background' to prove race discrimination does not

necessarily mean stretching indefinitely back in time" and "[e]ven with the benefit of all

reasonable inferences …[plaintiff] does not connect the dots").

SFFA claims that Harvard's treatment of Jewish applicants in the early twentieth century

is the "original sin" that condemns all whole-person review of applicants, even a century later.

*See* Dkt. 413 at 23.  But SFFA has not claimed that Harvard currently discriminates against

Jewish applicants, and its focus on long-repudiated admissions policies from almost 100 years

ago cannot conceal the absence of evidence showing intentional discrimination in this case.  In

any event, "past discrimination cannot, in the manner of original sin, condemn" present conduct;

"[t]he ultimate question remains whether a discriminatory intent has been proved in a given

case."  *City of Mobile v. Bolden*, 446 U.S. 55, 74 (1980) (plurality opinion).  In this case,

documents reflecting the treatment of Jewish applicants in the 1920s have no bearing on SFFA's

claims of discrimination against Asian-American applicants today.  This Court has already

recognized as much.  *See* Dkt. 181 ¶ 6 ("It is not clear how prior instances of discrimination

against Jewish applicants in the 1920s, 30s, 40s, and 50s is relevant to the invidious

discrimination claims in this case, which allege that Harvard is presently discriminating against Asian-American applicants.").

### C. Evidence About Harvard's Twentieth-Century Admissions Practices Will Result In Satellite Litigation, Waste Time, And Unfairly Prejudice Harvard

Even if evidence about Harvard's decades-old admissions practices did have any marginal probative value—which it does not—it would properly be excluded under Rule 403. *See Foley*, 871 F.2d at 238.  Rule 403 "has a role to play whether the case is to be tried to a jury or to a judge." *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 2015 WL 685153, at *3 (S.D.N.Y. Feb. 18, 2015).  Evidence is properly excluded under Rule 403 if it is "of limited value at best and unduly confusing at worst," *United States v. Lupton*, 620 F.3d 790, 800 (7th Cir. 2010), or if it has "minimal probative value [that] would be substantially outweighed by the prejudicial effect," *Dunn v. Marquette Transportation Co.*, 2017 WL 2910990, at *2 (E.D. La. July 7, 2017).  A court also may exercise its discretion to exclude evidence under Rule 403 if it can "reasonably conclude that such evidence would not be helpful to the court, but would cause undue delay and would waste time." *United States v. Sullivan*, 575 F. App'x 793, 794 (9th Cir. 2014).  The evidence that SFFA seeks to introduce does all of the above—it will confuse the issues, cause undue delay, and cause Harvard unfair prejudice.

Allowing SFFA to introduce information about Harvard's admissions practices from the 1920s will inevitably lead to satellite litigation as SFFA attempts to introduce unauthenticated hearsay evidence about conduct that no living witnesses can corroborate or rebut.  That would be a needless waste of the Court's time, particularly where the Court has already said the evidence at issue is not probative of SFFA's claims.  Dkt. 181 ¶ 6; Dkt. 193 at 15:17-17:18.

Furthermore, SFFA's attempt to analogize ancient history to its current claims is unfairly prejudicial to Harvard.  SFFA's accusations that Harvard previously discriminated against Jewish applicants are inherently (and intentionally) inflammatory and serve no legitimate purpose.  *See Figures v. Bd. of Pub. Utilities of City of Kansas City, Kan.*, 967 F.2d 357, 360-61 (10th Cir. 1992) (affirming district court's exclusion of "anecdotal evidence of discrimination" because plaintiff could not link comments to the conduct at issue and therefore they were "highly prejudicial") (quotation omitted).  That is particularly true where SFFA has nothing to tie its accusations about century-old conduct involving Jewish applicants to its current claims concerning Asian Americans.  *See Jana-Rock Const., Inc. v. New York State Dep't of Econ. Dev.*, 438 F.3d 195, 212–13 (2d Cir. 2006) (evidence showing discrimination against "Hispanics in general" did not answer "more particular question" of whether "Spanish persons suffer the same kind and degree of discrimination"); *Swiatek v. Bemis Co.*, 2011 WL 4753417, at *5-7 (D.N.J. Oct. 7, 2011) (excluding evidence that defendant had history of discrimination against African Americans where court had previously limited discovery on that topic and "the danger of unfair prejudice to [defendant] greatly outweighs any probative value the introduction of the remote evidence … would have"); *supra* at 2-3.

To ensure a fair trial based on the relevant facts—and to prevent SFFA from attempting instead to try its case based on inflammatory and ancient history—the Court should preclude SFFA from introducing evidence or argument regarding Harvard's early twentieth-century admissions practices.

II.     **HARVARD'S MOTION IN LIMINE TO PRECLUDE EVIDENCE OR ARGUMENT REGARDING HARVARD'S INVOCATION OF THE ATTORNEY-CLIENT PRIVILEGE**

SFFA insinuates that Harvard's invocations of the attorney-client privilege during discovery in this case were improper and designed to shield evidence that would support SFFA's unfounded theories.  This Court has already carefully assessed Harvard's invocation of the attorney-client privilege after full briefing and a lengthy in camera review.  *See* Dkt. 383.  The Court should not permit SFFA to relitigate that issue at trial by introducing exhibits or evidence about Harvard's privilege assertions or arguing for negative inferences based on those invocations.

SFFA has persistently attempted to manufacture arguments out of Harvard's proper invocation of the attorney-client privilege.  For example, in its summary judgment filings SFFA chides Harvard for having "refused to produce emails and documents," and Harvard's witnesses for having "refused to answer questions . . . on grounds of attorney client privilege."  Dkt. 414 (Plaintiff's Statement of Undisputed Material Facts ("SMF")) ¶ 370.  SFFA also gratuitously laments that "[i]t is unknown what happened" at a meeting organized by Harvard's general counsel regarding "Fisher v. University of Texas" because "Harvard has asserted the attorney-client privilege."  Dkt. 413 (Plaintiff's Memorandum Of Reasons In Support Of Its Motion For Summary Judgment) at 16 n.3; *see also* Dkt. 414 ¶ 535 ("[w]hat happened . . . remains a secret" because of Harvard's assertion of the privilege).

SFFA complains that notes of counsel from meetings of the Committee to Study Race-Neutral Alternatives "have been withheld as privileged," and that Harvard withheld "most documents relating to the Ryan Committee on attorney-client privilege grounds," Dkt. 413 at 43; *see also* Dkt. 414 ¶¶ 820-821, 836—and then accuses Harvard of using its attorneys "to cloak"

8

the deliberations of its Committee to Study Race-Neutral Alternatives "with the attorney-client privilege," Dkt. 413 at 43, even though the Chair of that Committee was deposed and testified about the Committee's conclusions.  And SFFA has previewed its intent to press these arguments at trial, having included Harvard's privilege logs on its Exhibit List.

SFFA has already challenged Harvard's invocation of the attorney-client privilege and lost.  *See* Dkt. 383 ("Defendant has established that" several categories of documents including "documents concerning . . . the race-conscious admissions committee . . . are privileged").  No longer able to challenge the merits of Harvard's proper invocation of the privilege, SFFA pivots, suggesting instead that the mere assertion of the privilege proves that Harvard has something to hide.

SFFA's arguments are improper and foreclosed by law.  "The court cannot draw adverse inference from the proper assertion of an attorney-client privilege."  *Astra Pharm. Prod., Inc. v. Beckman Instruments, Inc.*, 1983 WL 51933, at *4 (D. Mass. Mar. 24, 1983), *aff'd*, 718 F.2d 1201 (1st Cir. 1983); *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 614 F. Supp. 2d 90, 110 n.20 (D. Mass. 2009) ("[Defendant] asserts that the court may draw a negative inference from this invocation of attorney-client privilege.  This is incorrect."), *rev'd on other grounds,* 797 F.3d 1020 (Fed. Cir. 2015).

Indeed, "[i]f the assertion of attorney client privilege could produce an adverse inference persons would be discouraged from seeking opinions, or lawyers would be discouraged from giving honest opinions.  Such a penalty for invocation of the privilege would have seriously harmful consequences."  *United States ex rel. Barko v. Halliburton Co.*, 241 F. Supp. 3d 37, 55 (D.D.C. 2017), *aff'd*, 709 F. App'x 23 (D.C. Cir. 2017) (internal quotation and citation omitted).  Accordingly, it is proper for this Court "to bar any adverse inference from defendant's

invocation of the attorney-client privilege." *Smith & Nephew, Inc. v. Interlace Med., Inc.*, 2012 WL 3560811, at *4 (D. Mass. Aug. 17, 2012).

Despite SFFA's desire to fill its void of actual evidence with inferences, it cannot distort Harvard's appropriate invocation of the attorney-client privilege to Harvard's detriment. Harvard respectfully requests that SFFA be prohibited from introducing any evidence or advancing any argument at trial related to Harvard's assertion of the attorney-client privilege.

Dated:  September 17, 2018

Respectfully submitted,

/s/ Seth P. Waxman
Seth P. Waxman (*pro hac vice*)
Paul R.Q. Wolfson (*pro hac vice*)
Danielle Conley (*pro hac vice*)
Brittany Amadi (*pro hac vice*)
Daniel Winik (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
Tel: (202) 663-6800
Fax: (202) 663-6363
seth.waxman@wilmerhale.com
paul.wolfson@wilmerhale.com
danielle.conley@wilmerhale.com
brittany.amadi@wilmerhale.com
daniel.winik@wilmerhale.com

William F. Lee (BBO #291960)
Felicia H. Ellsworth (BBO #665232)
Andrew S. Dulberg (BBO #675405)
Elizabeth Mooney (BBO #679522)
Sarah R. Frazier (BBO #681656)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6687
Fax: (617) 526-5000

10

william.lee@wilmerhale.com
felicia.ellsworth@wilmerhale.com
andrew.dulberg@wilmerhale.com
elizabeth.mooney@wilmerhale.com
sarah.frazier@wilmerhale.com

Debo P. Adegbile (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 295-6717
Fax: (212) 230-8888
debo.adegbile@wilmerhale.com

*Counsel for Defendant President and
Fellows of Harvard College*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(a), counsel for Harvard conferred with counsel for Plaintiff on September 14, 2018 to attempt in good faith to resolve or narrow the issues presented herein.

/s/ Seth P.Waxman
Seth P. Waxman

## CERTIFICATE OF SERVICE

I hereby certify that this document and attachments will be sent electronically to counsel of record for SFFA.

/s/ Seth P. Waxman
Seth P. Waxman