# UNITED STATES DISTRICT COURT FOR
## THE DISTRICT COURT OF MASSACHUSETTS
### BOSTON DIVISION

|  |  |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC, <br><br> Plaintiff, <br><br> v. <br><br> PRESIDENT AND FELLOWS OF HARVARD COLLEGE (HARVARD CORPORATION), <br><br> Defendant. | Civil Action No. 1:14-cv-14176-ADB <br><br> **Leave to file granted on September 26, 2018** |

## REPLY OF *STUDENT AMICI CURIAE* REGARDING ITS MOTION TO PARTICIPATE IN TRIAL

In opposing *Students*' motion to participate in trial, SFFA does not dispute the critical importance of this case, nor does it dispute that *Students* offer a unique perspective that would not otherwise be represented.  SFFA does not deny that this Court has ample authority to permit the testimony of students of color at trial.  Instead, SFFA willfully ignores this Court's prior Order inviting *Students* to request permission to participate in trial, mischaracterizes Harvard's concern for student privacy as a lack of interest in calling students, and trivializes *Students'* perspectives, which are crucial to ensure a full and fair airing of the relevant factual and legal issues.

Contrary to SFFA's assertions, Harvard does not raise concerns about judicial expediency with regard to *Students*' proposal of offering eight witnesses along with opening and closing arguments.  Harvard agrees that *Students*' participation as witnesses would aid this court.

Harvard expresses only one such disagreement: it opposes *Students*' request to cross-examine Dr. Arcidiacono because it risks being duplicative. But *Students* intend to probe distinct and important issues regarding Dr. Arcidiacono's analysis, namely whether Harvard's "ALDC" preferences explain any negative effect observed in Asian American admission rates. This issue has not been raised by either party in their briefs, is not likely to be raised at trial, and cannot be scrutinized through written submissions alone.

The question for the Court is whether—in this case of national importance that will have a profound impact on diversity at campuses across the country for the foreseeable future—it would further the interests of justice to actually hear the testimony of those students in the courtroom. *Students* believe that the answer to that question is undoubtedly "yes." *Students* therefore respectfully request the opportunity to participate in trial in the limited manner set forth in their motion.

### A. *Students'* limited participation at trial is squarely within this Court's discretion and *Students'* proffered testimony would meaningfully assist the Court

When this Court denied intervention in 2015, this Court expressly invited *Students* to file a motion to participate in trial proceedings. (Dkt. 52 at 23.) SFFA glosses over this invitation entirely, instead trying to recast this Court's prior Order as predetermining *Students'* exclusion from trial. But SFFA's premature conclusion is unwarranted. This Court recognized the importance of revisiting the issue of *Students'* participation at this juncture. While SFFA claims that "[n]othing has changed since that ruling [in 2015] that would warrant the *Students'* participation at trial," (Dkt. 543 at 1), SFFA is plainly mistaken. Numerous developments since 2015 make *Students'* participation desirable and compelling. SFFA levies three primary arguments against *Students'* participation—none is availing.

First, SFFA argues that "[p]ermitting amici to participate in trial" is "rare relief." (Dkt. 543 at 2, 4.) However, SFFA fails to acknowledge that this Court has "wide latitude to regulate the conduct of trial." *Borges v. Our Lady of the Sea Corp.*, 935 F.2d 436, 442 (1st Cir. 1991). The Federal Rules of Civil Procedure do not contain provisions governing the restrictions that should be put on amicus appearances. *Animal Protection Inst. v. Martin*, No. CV-06-128 BW, 2007 WL 647567, *1 (D. Me. Feb. 23, 2007). Therefore, this Court has discretion to decide the extent of *Students'* participation in the trial. *State v. Dir., U.S. Fish & Wildlife Svc.*, 262 F.3d 13, 14 (1st Cir. 2001) (granting amici-plus a "limited right to call and cross-examine witnesses"); *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 991-92 (2d Cir. 1984) (discussing the "amici-plus" status offered to parties by the district court, including the ability "to call their own witnesses and cross-examine [opposing] witnesses"); *see also Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982) (allowing amici to "participate fully in the discovery, trial, and appeal" of the case), *overruled on other grounds in Sandin v. Connor*, 515 U.S. 472 (1995).

Second, SFFA mischaracterizes Harvard's position when it claims Harvard "decided it was unnecessary to call any students." (Dkt. 543 at 3.) Not so. Harvard agrees that *Students'* witnesses "can offer important and distinctive perspectives on the importance of a racially diverse student body" and that such testimony "would be of use to the Court." (Dkt. 541 at 2.) Far from finding *Students'* testimony to be "unnecessary," Harvard supports *Students'* participation and merely declined to call students to respect their privacy. (Dkt. 541 at 2.) Of note, SFFA references this Court's prior observation that Harvard could "offer the testimony of the proposed intervenors." (Dkt. 543 at 3-4 (citing to Dkt. 52 at 17).) Indeed, that is precisely the situation here: Harvard welcomes the *Students'* participation. SFFA's contention that *Students* "quibble with Harvard's strategic choices" likewise falls apart. In fact, *Students* are aligned with Harvard in proffering live student testimony at trial.

Moreover, it is now clear—unlike in 2015—that *Students'* participation at trial is essential for providing first-hand testimony that supports Harvard's stated interest in race-conscious admissions.  To justify its consideration of race, Harvard has expressed its belief that such diversity enhances students' experiences during and after college.  But absent *Students'* participation, there will be *no* witnesses offering first-hand testimony of such benefits, or the harms that flow from a reduction in racial diversity.  Rather, Harvard's trial testimony will be limited to administrators, staff, and its statistical expert.  (*See* Dkt. 541 at 2; Dkt. 546, Ex. 1 at 2.) As Harvard recognizes, (*id.*), *Students'* participation is necessary to develop a full record on several issues central to this case including: (i) that ethno-racial identity is an integral and inextricable aspect of fully appreciating an applicant's prior achievements, future potential, and perspective, (*see* Dkt. 435 at 41; Dkt. 419, Ex. 45 at 6); (ii) that racial diversity exposes students to "new ideas, new ways of understanding, and new ways of knowing" and "prepares [Harvard students] to assume leadership roles in the increasingly pluralistic society," (Dkt. 419, Ex. 45 at 8, 23); (iii) that a reduction in African-American and Hispanic students risks exacerbating "ongoing feelings of isolation and alienation among racial minorities in [its] community" and also risks decreasing application rates among underrepresented ethno-racial minority students, (Dkt. 419, Ex. 47 at 9; Dkt. 419, Ex. 33 at 101); and (iv) that the benefits flowing from racial diversity are distinct from those flowing from socioeconomic diversity.  (Dkt. 419, Ex. 33 at 102-104, 107-115.)  None of the parties' proposed witnesses can offer first-hand testimony on these points.  But *Students* can and, thus, their participation will result in a more comprehensive trial record in a case of utmost significance.

Third, SFFA attempts to preclude *Students'* participation by invoking this Court's prior concerns with "expediency and judicial economy" when denying intervention.  (Dkt. 543 at 5.) But the concerns expressed by this Court in 2015 no longer apply as, once again, SFFA ignores

the substantial developments since this Court's prior Order.   At this juncture, *Students'* participation does not risk miring the Court in discovery disputes or slowing the discovery process.   (*Cf.* Dkt. 52 at 20-21.)   Nor does *Students'* participation risk delaying the ultimate resolution, merely extending the trial by a matter of hours.   Indeed, SFFA's complaints about the number of *Students'* proffered witnesses ignores the fact that such testimony is limited in time (approximately 45 minutes each), involves no expert testimony, and is critical to the issues at the heart of this case.   Of over 20 witnesses that have been identified by the parties,[1] *Students* have only proposed cross-examining one.   Altogether, any additional costs are minimal at best, and greatly outweighed by the supreme significance of this case.   *Students'* participation will help ensure "a complete and plenary presentation of difficult issues so that the court may reach a proper decision." *Students for Fair Admissions, Inc. v. President and Fellows of Harvard Coll.*, 308 F.R.D. 39, 52 (D. Mass 2015); *see also Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 115 (1st Cir. 1999) (Lynch, J. concurring) ("[C]oncerns that the case be decided on the basis of a fully developed factual record and briefing, or at least as full as the circumstances permit, may carry similar weight [as concerns about judicial efficiency]").

Notably, SFFA does not argue that it would be prejudiced by *Students'* participation in trial.   Indeed, no such argument would be possible.   Since this Court's intervention order in 2015, SFFA has been on notice that *Students* might participate in any eventual trial.   Moreover, the identities of the individual *Student* witnesses have long been known, and each of the intended *Student* witnesses has filed detailed declarations, outlining the factual bases for their testimony.

---

[1] Harvard's "List of Witnesses to be Called Live or By Deposition," by itself, includes at least twenty individuals and several more redacted names. (Dkt. 546-1 at 2.)  SFFA has not provided *Students* with their witness list, nor filed it in the public record, but presumably it will also include their expert Dr. Arcidiacono.  Clearly, the number of individuals identified between the parties exceeds 20.

Indeed, SFFA admitted as much by stating in a prior filing that *Students* "are differently situated than [other amici]" because *Students* "moved to intervene over three years ago . . . and gave SFFA the option of seeking discovery . . . ." (Dkt. 479 at 4-5.)  In light of this procedural history, no claim of prejudice or undue surprise would be possible.

      **B. *Students'* cross-examination of Dr. Arcidiacono would probe distinct and important issues which neither party would raise**

Harvard only objects to *Students'* proposal to cross-examine Dr. Arcidiacono.  (Dkt. 541 at 3.)  Harvard presumes that *Students'* examination "would likely be duplicative" of Harvard's. (*Id.*)  But *Students'* interests diverge from both parties with regard to SFFA's intentional discrimination claim, and their cross-examination would likewise solicit important testimony which otherwise may not surface in trial.  Namely, *Students* have an interest in probing whether Harvard's preferences for "ALDC" applicants—recruited athletes, legacy applicants, those on the Dean's/Director's lists, and children of Harvard faculty/staff—substantially impact Asian Americans' overall admission rate *vis a vis* white students'.  As *Students* highlighted in their August brief, Dr. Arcidiacono's own data suggest that any disadvantage faced by Asian Americans is most attributable to "ALDC" preferences, not race-conscious admissions.  (Dkt. 509 at 29-30.)[2]  Neither party meaningfully engages with this inquiry, despite its relevance to SFFA's discrimination claim and any possible remedy.  SFFA's expert Dr. Arcidiacono deliberately excludes the consideration of "ALDC" applicants when analyzing whether a disparate effect exists for Asian American admission rates.  (Dkt. 419, Ex. 31 at 25-26).  By removing such applicants, Dr. Arcidiacono does not consider whether any observed differential

---

[2] Harvard argues that *Students'* limited participation in expert discovery should preclude *Students'* from cross-examination.  (Dkt. 541 at 3-4.)  But this argument is unpersuasive since *Students'* had sufficient access to Dr. Arcidiacono's expert reports to raise substantial doubt about the conclusions SFFA draws by honing in on preferences based on race as opposed to other preferences afforded in the admissions process and their impact on Asian Americans.

in admissions may be attributable to these other preferences, not race-conscious admissions. *Students* propose interrogating Dr. Arcidiacono on the limitations of his analysis and its indication that "ALDC" preferences may better explain differences in admission rates for Asian Americans.

Contrary to Harvard's contention, *Students'* cross-examination does not risk being duplicative given that neither Harvard, nor its expert has ever acknowledged that "ALDC" preferences may disadvantage Asian Americans in the overall admissions process.  Rather, Harvard's position has been that any differences in admission rates between Asian Americans and whites is solely attributable to Asian Americans having "weaker" characteristics, ignoring the impact of "ALDC" preferences.  (*See, e.g.,* Dkt. 484 at 13.)  Harvard's silence on this issue risks overlooking an alternative explanation for any observed bias against Asian Americans.  By questioning Dr. Arcidiacono on this issue, *Students'* cross-examination could smoke out the true source of any bias against Asian Americans, if it does exist.  By extension, such questioning would ensure a more robust defense of race-conscious admissions and, if any violation were found, a more appropriate remedy.

Because *Students* intend to present distinct arguments, *Students'* participation at trial will not lead to duplicative examinations and will meaningfully develop the factual record on key issues.  *See Daggett v. Webster*, 190 F.R.D. 12, 13-14 (D. Me. 1999); *see also Capacchione v. Charlotte-Mecklenburg Bd. of Educ.*, 179 F.R.D. 505, 509-10 (W.D.N.C. 1998) (allowing the presentation of evidence with "common issues of fact and law" as the claims before the court will help the court to understand the issues before it).  Wherefore, *Students* respectfully request that the Court grant them leave to make opening and closing statements, present student declarant testimony, and cross-examine SFFA's expert witness Dr. Arcidiacono.

Respectfully Submitted,

/s/ Oren M. Sellstrom
Oren M. Sellstrom (BBO #569045)
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
AND ECONOMIC JUSTICE
61 Batterymarch Street, Fifth Floor
Boston, MA 02110
Tel: 617-988-0608
osellstrom@lawyerscom.org

/s/ Genevieve Bonadies Torres
Genevieve Bonadies Torres (*pro hac vice*)
Kristen Clarke
Jon M. Greenbaum (*pro hac vice*)
Brenda Shum (*pro hac vice*)
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K Street, NW
Washington, DC 20005
Tel: (202) 662-8600
gbonadies@lawyerscommittee.org

/s/ Nicole K. Ochi
Nicole K. Ochi (*pro hac vice*)
ASIAN AMERICANS ADVANCING JUSTICE
1145 Wilshire Boulevards
Los Angeles, CA 90017
Tel: (213) 241-0211
nochi@advancingjustice-la.org

/s/ Lawrence Culleen
Lawrence Culleen (*pro hac vice*)
Nancy Perkins (*pro hac vice*)
Steven Mayer (*pro hac vice*)
Emma Dinan (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
Tel: (202) 942-5477
Lawrence.Culleen@arnoldporter.com

Dated:  September 26, 2018          COUNSEL FOR *AMICI CURIAE*

## **CERTIFICATE OF SERVICE**

In accordance with Local Rule 5.2(b), I hereby certify that this document filed through the ECF system on September 26, 2018 will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Lawrence Culleen
Lawrence Culleen