UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

)
STUDENTS FOR FAIR ADMISSIONS, INC.,   )
                                      )
                          Plaintiff,  )
                                      )
              v.                      )
                                      )   Case No.  1:14-cv-14176-ADB
PRESIDENT AND FELLOWS OF              )
HARVARD COLLEGE (HARVARD CORPORATION),)
                                      )
                          Defendants. )
                                      )

**MOTION OF THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS
FOR RECONSIDERATION OF DECEMBER 19 MINUTE ORDER**

The Reporters Committee for Freedom of the Press ("Reporters Committee") respectfully moves for reconsideration of the Court's December 19 order denying its motion to intervene and finding that portions of the sidebar transcripts from the 2018 trial in this matter should remain sealed.  *See* Minute Order, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, No. 1:14-cv-14176 (D. Mass. Dec. 19, 2022).  Consistent with Federal Rule of Civil Procedure 54(b), "a district court has the inherent power to reconsider its interlocutory orders," and the First Circuit has "encourage[d] [courts] to do so where error is apparent."  *Fernandez-Vargaz v. Pfizer*, 552 F.3d 55, 61 n.2 (1st Cir. 2007).  The Minute Order is inconsistent with the standards governing intervention and the public's right of access to judicial records.

**I.     The Reporters Committee's motion to intervene is not moot because the Minute Order did not grant the relief sought or otherwise make effective relief impossible.**

With respect to the Reporters Committee's proposed intervention for the limited purpose of opposing restrictions on the public's right to access the sidebar transcripts, the Minute Order

1

concludes that the motion is moot because the order "essentially provides the relief" the Reporters Committee requested.  Minute Order, *supra*.  Not so.  The Reporters Committee requested an opportunity to respond in writing to the parties' proposed redactions, in context, before this Court ruled on the propriety of continued sealing.  *See* Motion of the Reporters Committee for Freedom of the Press to Intervene at 4 (ECF No. 703) (moving the Court for access to proposed redactions to which the public could "meaningfully respond in writing," a "*subsequent* hearing," and "*thereafter*" a ruling on the merits of permitting continued sealing of the transcripts (emphases added)).  And with good reason:  The right to be heard that the First Amendment guarantees is a right to "a meaningful opportunity to be heard before a contrary decision is made."  *United States v. Edwards*, 823 F.2d 111, 119 (5th Cir. 1987); *accord United States v. Kravetz*, 706 F.3d 47, 59 (1st Cir. 2013).  Indeed, fundamental principles of due process make clear that a court may not require litigants to "resort to a motion to reconsider" as a substitute for "arguments [they] might have made before dismissal."  *Miller v. Sam Houston State Univ.*, 986 F.3d 880, 890 (5th Cir. 2021); *see also In re Wash. Post Co.*, 807 F.2d 383, 392 (4th Cir. 1986) (availability of motion to unseal improperly sealed judicial records "does not cure the lack of an opportunity for a hearing with respect to the original decision to seal them").[1]

Here, the Court announced its disposition of the merits at the *beginning* of the public hearing—a disposition the Court reached after hearing arguments only from counsel for Plaintiff

---

[1] For much the same reason, applying a heightened reconsideration standard to arguments that the Reporters Committee could not have advanced before this Court's order issued—for lack of information about the redactions under consideration and the asserted justifications for them— would compound the due process violation.  This Court can and should avoid that difficulty by instead reconsidering the governing standards for public access *de novo*. *Cf. Davis v. Lehane*, 89 F. Supp. 2d 142, 147 (D. Mass. 2000) (court's approach to reconsideration should "balance the need for finality against the duty to render just decisions").  But, in any event, the arguments herein also satisfy any heightened bar to demonstrate that the order "would work a manifest injustice."  *Id.* (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)).

and Defendant behind closed doors. And despite the parties' apparent agreement, the terms of the Minute Order do not square with the standards governing the right of access to judicial records for the reasons discussed below. That was a denial of the relief requested by the Reporters Committee, not a decision to "essentially" grant it. Minute Order, *supra*. And even if the Minute Order's provisions had overlapped in part with the Reporters Committee's requested relief, a matter becomes moot "only when it becomes impossible for a court to grant any effectual relief whatever," not when the relief ordered is similar or related to what a party requested. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal citation omitted) (emphasis added). Because the Minute Order relies exclusively on mootness to justify the denial of the Reporters Committee's motion to intervene and does not provide any other basis for denying intervention, the denial merits reconsideration.

## II. The redactions to the transcripts required by the Minute Order are not narrowly tailored to a compelling interest as the First Amendment requires.

The Reporters Committee also urges reconsideration of the substance of the Court's decision to maintain portions of the transcripts under seal, which was reached without the benefit of full, adversarial briefing. As the Minute Order correctly recognizes, the common law and First Amendment presumptions of access attach to the sidebar transcripts. *See Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.* 404 F. Supp. 3d 486, 512 n.16 (D. Mass. 2018) (applying presumption of access in unsealing sidebar transcript concerning recusal).[2] And because the

---

[2] *See also, e.g.*, *United States v. Smith*, 787 F.2d 111, 115 (3d Cir. 1986) (presumption of access attaches to sidebar transcripts under the common law); *United States v. Edwards*, 823 F.2d 111, 118 (5th Cir. 1987) (presumption of access attaches to transcript of chambers conferences under the First Amendment because "the availability of the transcript is the key to satisfying the constitutional values of public scrutiny" where the public is excluded in real time from the conference itself); *NBC Subsidiary (KNBC-TV), Inc. v. Superior Court*, 980 P.2d 337, 363 (Cal. 1999) (explaining that the "assertion that chambers proceedings are categorically 'not part of the trial process'—and hence are not subject to the First Amendment right of access—is

First Amendment presumption attaches to the transcripts, any redactions can be justified—if at all—only "by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *In re Providence Journal Co., Inc.*, 293 F.3d 1, 11 (quoting *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984)).

The justifications offered by the Minute Order do not satisfy that standard.  For one, the fact that the parties have agreed on the sealing of an undefined category called "applicant information," Minute Order, *supra*, does not demonstrate that those redactions are warranted; on the contrary, "when the parties are mutually interested in secrecy, the judge is [the public interest's] *only* champion," *Binh Hoa Le v. Exeter Finance Corp.*, 990 F.3d 410, 421 (5th Cir. 2021).  The Minute Order does not explain the boundaries of 'applicant information;' identify the specific privacy interests allegedly at stake (either in general or with respect to any particular redaction); or weigh the role any particular piece of information played in the judicial process.

The Reporters Committee is aware of no authority for the proposition that any information concerning a college application is—in and of itself, without reference to any particular personal details—sensitive enough to overcome the presumption of access.  *Cf. Brown v. Univ. of Kansas,* 599 F. App'x 833, 839 (10th Cir. 2015) (sealing only those portions of the record containing information about law school applicants who "disclose[d] criminal or disciplinary records").  The issue is made worse by the types of information the Minute Order and parties appear to group under the general heading of 'applicant information.'[3]

---

erroneous").  As the Reporters Committee understands it, neither party disputes that the First Amendment presumption attaches.  *See* Students for Fair Admissions Ltr. Br. at 1–2 (ECF No. 702) (arguing that the presumption of access attaches to sidebar transcripts); Harvard Ltr. Br. at 2 (ECF No. 701) (arguing only that the presumption is overcome in part on the facts of this case).

[3]     It is difficult to tell from the unsealed redacted transcripts filed by the parties whether the agreement to seal 'applicant information' was ultimately relied upon to seal anything other than a

The category apparently extends, for instance, to information identifying "those challenging the admissions process," Students for Fair Admissions Ltr. Br., *supra*, at 2—presumably the members that SFFA invoked to establish its standing. But those individuals are not mere third parties; they are voluntary participants in the litigation who stepped forward to submit declarations to bolster their organization's advocacy goals. *See* Plaintiffs' Opposition to Defendant's Motion to Dismiss at 2–6 (ECF No. 204).[4] Sealing that information is thus more akin to permitting a plaintiff to pursue litigation pseudonymously than to imposing redactions to protect "[t]hird-party privacy," Minute Order, *supra*, and the First Circuit has already extensively explained why there is a strong presumption that participants in litigation be identified, *see Doe v. Massachusetts Institute of Technology*, 46 F.4th 61, 68–70 (1st Cir. 2022). SFFA's countervailing justification for secrecy falls well short of the only authority it cites for it. *See id.* at 71–72 (characterizing "cases in which anonymity is necessary to forestall a chilling effect on future litigants" as exceptional instances involving, for instance, "intimate issues such as sexual

---

discussion of the *Court*'s application and its related determination on the issue of recusal—but the Reporters Committee addresses the broader issue for the sake of clarity.

[4]   That information was apparently sealed in the first instance by a minute order containing no findings of any kind, *see* Order Granting Motion to Seal Document (ECF No. 6), on the strength of an uncontested motion whose only rationale was that the information had been designated confidential under a stipulated protective order, *see* Pls.' Assented-to Motion to File Under Seal at 1–2 (ECF No. 201). There can be no serious dispute that such a showing is insufficient to overcome the presumption of access. *See Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) ("[T]he presumption of access is not rebutted where . . . documents subject to a protective order are filed under seal *as attachments to a dispositive motion*." (alterations in original) (emphasis added)); *Rushford v. New Yorker Magazine, Inc.*, 846 F.3d 249, 252–53 (4th Cir. 1988) (same); *Taylor v. Grunigen*, No. 19-11947, 2022 WL 313970, at *2 (D. Mass. Feb. 2, 2022) ("Beyond citing the protective order and noting the parties' agreement, defendant fails to identify a sufficient factual basis of potential harm to seal the material."). And, in the filings sealed as a result, the 'applicant information' concealed includes not only genuinely personally identifying information but also standardized test scores and other facially non-sensitive matter.

5

activities" or a risk that "a potential party may be implicated in illegal conduct" (internal citations omitted)).  There can be no serious comparison between the fear of being identified as a critic of college admissions practices and the fear of being identified as a perpetrator or victim of sexual violence.  *See id.* at 73.  It isn't difficult to see, either, how information about individuals "challenging the admissions process," Students for Fair Admissions Ltr. Br., *supra*, at 2, would be key to the public's ability to evaluate the merits of the case, including Harvard's argument that SFFA "is a vehicle designed to advance the policy preferences of its controlling founder" rather than "a genuine membership organization," Br. in Opposition at 37, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, No. 20-1199 (U.S. May 17, 2021).

      The generic sealing of all "applicant information" and the "agreement of the parties" also is the only rationale offered in the Minute Order for sealing a discussion of this Court's consideration of—and determination on—whether to recuse.  But the same balance of interests cannot plausibly govern a passing discussion of the personal information of a third-party and an extended colloquy concerning recusal, an issue that goes to the core logic of the right of access: the public's right to know that proceedings have been conducted "fairly to all concerned," without "secret bias or partiality."  *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569 (1980) (plurality opinion).  As courts in this District have recognized in the precise context at issue here—unsealing of a transcript of a sidebar relevant to the potential need for a judge's recusal—the public availability of that material is keenly relevant to "respect for the legal system," and the presumption of access to judicial records therefore has special force.  *Arkansas Tchr. Ret. Sys.*, 404 F. Supp. 3d at 512 n.16.  Further, any privacy interests otherwise at stake, for their part, are diminished by the fact that the sidebar colloquy discusses this Court's performance

of its "public capacity," *In re L.A. Times Commc'ns LLC*, 28 F.4th 292, 298 (D.C. Cir. 2022),[5] and by the fact that the information is already public, *see* Anemona Hartocollis, *Presiding Over the Harvard Admissions Trial: A Judge Rejected From Harvard*, N.Y. Times (Oct. 22, 2018), https://perma.cc/K965-ASDD.  And Congress's decision to exclude the educational information of unsuccessful college applicants from the scope of the Federal Educational Rights and Privacy Act (FERPA), *see* 20 U.S.C. § 1232g(a)(6), only underlines that the Minute Order cannot rest on a free-floating compelling interest in sealing information that relates in some way to a college application, *see Jennings v. Univ. of N. Carolina at Chapel Hill*, 340 F. Supp. 2d 670, 682 (M.D.N.C. 2004) (fact that information falls within a FERPA exception counsels against sealing); *cf. Massachusetts Institute of Technology*, 46 F.4th at 76 (public access analysis should be guided by "the background confidentiality regime," including the scope of FERPA).

Finally, the Minute Order's justification for sealing an anti-Asian-American joke that a federal official made to Dean Fitzsimmons likewise falls short of what the common law and First Amendment require.  The public cannot reasonably understand "the Dean's response," Minute Order, *supra*, without knowing what the Dean was responding to, and it should go without saying that Harvard's approach to Asian-American applicants goes to the heart of this litigation. The possibility that unsealing the proposed *exhibit* could risk confusion because of the use of Harvard stationery, *see* Minute Order, *supra*, has no relevance to whether or not the words used

---

[5]   It is likewise difficult to understand how "the privacy rights of third parties" could justify non-disclosure of the *Court*'s characterization of a witness's demeanor.  Minute Order, *supra*. That material's "relevance or value to the public" is in evaluating how the Court managed an emotionally charged line of questioning at trial, as well as one counsel's objection that counsel for the opposing party had behaved inappropriately—the performance of an official function that squarely implicates the public's right to superintend the judiciary.  *Id.*  Moreover, no third-party privacy interest is at stake in the Court or counsel's characterization of a witness's demeanor if members of the public could just as well have witnessed it for themselves by attending the trial.

should be unsealed where they appear in the *transcripts*.  And the fact that the same document proposed as an exhibit can be obtained via a public records request, *see* Students for Fair Admissions Ltr. Br., *supra*, at 3, vitiates any need for secrecy because "[p]ublicly available information cannot be sealed"—full stop, *June Medical Servs., LLC v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022).  Even if that weren't the case, any third-party privacy interests at stake are undercut by the reality that the 'joke' speaks to misconduct by a federal official whose performance the public is entitled to evaluate.  For just the same reason, its apparent offensiveness makes it more—not less—important that the public be able to see it.  *See In re L.A. Times Commc'ns LLC*, 28 F.4th at 298.  None of the justifications offered in the Minute Order, then, satisfy the First Amendment or common law standards governing access to judicial records.

## CONCLUSION

For the reasons given above, the Reporters Committee respectfully requests that the Court reconsider the Minute Order, grant the motion to intervene for the limited purpose of unsealing judicial records, and unseal the portions of the sidebar transcripts discussed above.

Respectfully submitted,

Date:   December 29, 2022

/s/ *Robert A. Bertsche*
Robert A. Bertsche (BBO #554333)
KLARIS LAW PLLC
6 Liberty Square #2752
Boston, MA 02109
Telephone: 857-303-6938
rob.bertsche@klarislaw.com

*Counsel of Record for Reporters Committee for Freedom of the Press*

Katie Townsend*
Grayson Clary*
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020

8

        Washington, D.C. 20005
        Telephone: 202-795-9300
        Facsimile: 202-795-9310
        ktownsend@rcfp.org
        gclary@rcfp.org

*\* Admitted pro hac vice*

**LOCAL RULE 7.1 CERTIFICATION**

Counsel for the Reporters Committee for Freedom of the Press hereby certifies that counsel for the Reporters Committee have conferred with counsel to Harvard and Students for Fair Admissions, Inc., in a good-faith attempt to resolve or narrow the issues raised by this motion. Harvard opposes this motion. Students for Fair Admissions takes no position on this motion, except to the extent it seeks any information sufficient to identify a non-consenting applicant to Harvard, the release of which SFFA opposes.

/s/ Robert A. Bertsche
Robert A. Bertsche

**CERTIFICATE OF SERVICE**

I hereby certify that on December 29, 2022, the within document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Robert A. Bertsche
Robert A. Bertsche