```
 1                    UNITED STATES DISTRICT COURT

 2                     DISTRICT OF MASSACHUSETTS

 3    _____

 4    STUDENTS FOR FAIR ADMISSIONS, INC.,

 5                     Plaintiff,          Civil Action
                                           No. 14-14176-ADB
 6    v.
                                           October 26, 2018
 7    PRESIDENT AND FELLOWS OF HARVARD
      COLLEGE, et al.,                     Pages 1 to 134
 8                                         SEALED TRANSCRIPT
                     Defendants.
 9    _____

10

11

12

13
                  TRANSCRIPT OF BENCH TRIAL - DAY 10
14            BEFORE THE HONORABLE ALLISON D. BURROUGHS
                    UNITED STATES DISTRICT COURT
15                 JOHN J. MOAKLEY U.S. COURTHOUSE
                        ONE COURTHOUSE WAY
16                       BOSTON, MA  02210
                             REDACTED
17

18

19

20

21
                     JOAN M. DALY, RMR, CRR
22                 KELLY MORTELLITE, RMR, CRR
                      Official Court Reporter
23                 John J. Moakley U.S. Courthouse
                   One Courthouse Way, Room 5507
24                       Boston, MA  02210
                       joanmdaly62@gmail.com
25
```

1         THE COURT:  We're going to recess for the day but
2    for the sidebar.  We'll resume at 9:30 on Monday.  We
3    actually have a quick status conference in here at 9:15 which
4    we will not do at your tables.  We'll do it out back or
5    someplace so you can all get set up.
6         Monday is going to basically be Amici day.  They
7    are eight witnesses limited to a half hour of direct each.
8    You all both have the opportunity to cross-examine to the
9    extent that you want to.  I'm hoping those direct
10   examinations will be done by younger lawyers, but we'll see
11   how that plays out.
12        Then I assume given some of the rulings yesterday,
13   we'll have some other issues to discuss before you rest.
14   Assuming you do rest or we work out some other arrangement,
15   you all will begin your presentation on Tuesday.  Does that
16   seem right?
17        MR. LEE:  That seems right.
18        MR. HUGHES:  Sounds like it to us, too, Your Honor.
19        THE COURT:  Okay.  Excellent.  The case is recessed
20   for the day but for sidebar.
21        (The following was held at sidebar.)
22        THE COURT:  Do you want to make an argument about
23   plaintiff's Exhibits 221, 512 and 513?
24        MR. HUGHES:  What I'd like to do is make an offer
25   of proof for why they should be admitted as part of the

1  record in the case.  If not, I guess it would become my offer
2  of proof along with argument I'll make at the end.
3          THE COURT:  Okay.
4          MR. HUGHES:  I'm going to begin by explaining the
5  background of how we came into possession of P512 and P513.
6  During discovery Harvard produces P221 which is a December 1,
7  2012, email that Your Honor has, email chain between Dean
8  Fitzsimmons and Thomas.  As Your Honor knows from the record,
9  Thomas Hibino oversaw the OCR investigation that resulted in
10 the 1990 statement of findings and that's Exhibit P555.
11 Harvard's production did not include the attachment to P221.
12         As Your Honor knows from the prior sidebar and
13 reading this document, Mr. Hibino provided Dean Fitzsimmons
14 an attachment that we'll get to in a minute.  And then Dean
15 Fitzsimmons responded, and Your Honor can see the response
16 there in P221.  We asked Harvard to produce the attachment in
17 March of 2017.  Harvard informed us in July of 2017 that they
18 did not have the attachment even though they had produced
19 emails from Dean Fitzsimmons before and after this
20 December 1, 2012 date.
21         Meanwhile in June of 2017, we made a FOIA request
22 to the Department of Education for all communications between
23 Dean Fitzsimmons and Mr. Hibino.  In March of 2018 the
24 Department of Education produced some of those
25 communications, but it redacted the attachment to the

1    December 1 email.  So we appealed that decision in June 2018.
2    And at long last on October 1, 2018, the Department of
3    Education agreed to produce the attachment to the December 1,
4    2012, email.
5         We received the attachment by itself that day.  A
6    couple days later on October 3, we asked the Department of
7    Education to produce the full email chain which is I think
8    P513 or 512.  We identified P512 and P513 to Harvard on
9    October 5, 2018, as a trial exhibit for this case.
10        So then I'd like to go through P513 and discuss why
11   we think it is relevant.  P513 is the document we received
12   from the FOIA request that has the exchange between Dean
13   Fitzsimmons and Mr. Hibino on the first page that is included
14   in P221.  And then if we go to the second page of P513, we've
15   got a handwritten note from -- it says "To Fitz, From Tom",
16   and it's on Department of Education letterhead.  And it says,
17   "In gratitude for your late night efforts, I am returning the
18   'smoking gun' obtained during our review.  Besides, counsel
19   tells me that stolen evidence might not be usable in court.
20   I'm sure you'll agree that the document should be destroyed!"
21        Then we've got the other part of the attachment,
22   which is on Harvard Admissions Office and Financial Aids
23   letterhead and under the name of ████████████, who at
24   one time was the associate director of admissions.  And then
25   we've got a typed out message that says, "Note to WRF", and

1  Your Honor knows those are the initials of Dean Fitzsimmons,
2  and the note says, "I must protest the favored treatment
3  afforded to a typical AA applicant from the unwashed masses
4  by some of my soft-hearted or is it soft-headed colleagues on
5  A docket.
6        "There's nothing special here.  Sure, Jose has been
7  his sole support of his family of 14 since his father, a
8  Filipino farm worker, got run over by a tractor.  But
9  remember, how high can their standard of living be?  Besides,
10 it can't be that difficult on his part-time job as a senior
11 cancer researcher.  Sounds to me like just another AA CJer."
12       And Your Honor knows that AA refers to
13 Asian-American, and we just heard on the video from Dean
14 Fitzsimmons about what CJer means.  That means an applicant
15 who intends to study biology and has medicine as a further
16 career.
17       It then goes to on to say, "As for the rest of the
18 folder, nothing.  While he was California's Class AAA Player
19 of the Year, it won't translate.  We just don't need a
20 132-pound defensive lineman.  He'll probably take the offer
21 from the Rams anyway.
22       "Lastly, I have to discount the Nobel Peace Prize
23 he received.  This is politics, not achievement.  After all,
24 they gave one to Martin Luther King, too.  No doubt just
25 another example of giving preference to minorities.  A clear

1    4."
2             The reason that we think this is relevant, and I
3    think we need to go back to P221, which is where we started
4    because this has the full unredacted response by Dean
5    Fitzsimmons to receiving the joke.  And his reaction is, "I'm
6    stunned.  ██████ passed away a few years ago, and I'd
7    forgotten that she had such a sense of humor.  We'll
8    deconstruct at lunch.  Where should we go?"
9             For the sake of completeness, P512 is Mr. Hibino's
10   response back to Dean Fitzsimmons.  "No, no.  I did that from
11   purloined stationery from your system.  Pretty convincing,
12   huh?  I forgot.  Are we getting together here or there?"
13            Why we think it is relevant and why it should come
14   in is because we think the typed-up joke that Mr. Hibino sent
15   to Dean Fitzsimmons contains stereotypical racial language
16   regarding Asian-Americans.  The comment about "just another
17   AA CJer" is exactly the kind of stereotypical language that
18   was identify by OCR in Exhibit P555 that Dean Fitzsimmons
19   testified that he abhorred.  And then the comment about the
20   "132-pound lineman" we also think is stereotypical language.
21            The reason that all of this is relevant is for the
22   response in 221 that he's stunned and that he had forgotten
23   that his colleague had such a sense of humor.
24            Our view is that's him laughing along with a joke
25   that includes stereotypical language that he says he abhors.

1  I understand there's a different way that you can interpret
2  that response.  But I do think there are two fair
3  interpretations of that response, and that at a minimum these
4  exhibits should come in so that the fact that people looking
5  at the record can make their own judgment based on that.
6        And I'll stop there, but I'd have more to say about
7  why I would have liked to have confronted him on the stand.
8        MR. LEE:  So just three points, Your Honor.  I told
9  Mr. Hughes if Your Honor doesn't allow this in, then we would
10 have no objection to an offer of proof so it's part of the
11 record, including his explanation here.
12        The three points I would make is that, I can tell
13 you our reaction when we got the typewritten version finally
14 I think about a week before the trial or so.  It was
15 basically "What is this?"  And then we figured out exactly
16 what it was when we dug this out.  The first thing is it's
17 hearsay, particularly the very bad joke that Mr. Hibino did.
18 And without the substance, as Mr. Hughes just described to
19 you, you can't make the connection to what Dean Fitzsimmons
20 said.
21        The second thing, Your Honor, is there's a real
22 relevance question here.  How does this show his intent?  Now
23 that we know from Professor Arcidiacono what their
24 discrimination claim is, how does this relate to the animus
25 that they now claim?  And I think that it doesn't.

1         And equally, Your Honor, on that point, if you look
2    at his response, he gets the email at about 6:30 on a Friday
3    night.  He responds to it at 8:30 on a Friday night and
4    Mr. Hibino writes back two minutes later and says, No, no.
5    You're not reading this correctly.  By this point in time
6    ███ has died several years ago.  We're 23 years after the
7    OCR investigation.
8         Why Mr. Hibino is doing it at this point in time,
9    we have no idea because he's not going to testify.  So it's
10   irrelevant, I think, as a single matter.
11        The last thing I would say is as a 403 matter,
12   given everything that's come flying in in this case, this is
13   so tangentially related to anybody's credibility and more
14   important to anybody's discriminatory animus, it should be
15   excluded.
16        MR. HUGHES:  If I may, starting with the hearsay.
17   What we're offering this for is really -- P221 is his
18   reaction to the joke.  Of course the joke has to be included
19   in order to put the reaction in context.  We're obviously not
20   offering the joke for the truth of the matter, but his
21   reaction is directly relevant evidence in a case where we
22   have a finding from OCR about using racial stereotypes just
23   like the ones that are included in here.
24        And Mr. Hibino explains in 221 why he's forwarding
25   it along, because there's been a FOIA request in 2012, the

1   same month as the Unz article about Asian-American

2   discrimination.  He's sending it along at that time to Dean

3   Fitzsimmons, and we're getting his reaction at that time

4   which goes to whether he's got implicit bias.

5               One of the questions I would like to have

6   confronted him with on the stand is the same question that

7   Mr. Mortara confronted Director McGrath with when we read the

8   racist email from the alum which is, Would you have had the

9   same response if it had been referring to, for example, it

10  had racial stereotypes about African-Americans.

11              That's why we think this is relevant and it goes to

12  this issue of whether there is bias on the part of the

13  admissions office.  And this is, at least, some evidence

14  interpreted in the way that I think it should be interpreted.

15  And it certainly could be interpreted that goes to that,

16  which is why it should be part of the record in this case.

17              MR. LEE:  Your Honor, just two points, not to

18  belabor it.  The first thing is given what you heard the last

19  two days that their claim is based upon statistics, and the

20  statistical claim is that we discriminated against some

21  groups but not others.  So the question is what's the

22  evidence or the animus that demonstrates we discriminated

23  against one group of Asian-Americans but not another.

24              The question of whether implicit bias or

25  unconscious action could ever provide the evidence of the

1     animus is what we all question.  This is so far removed, even
2     if you assume that connection, this is so far removed.
3                 The second thing is this is a little bit like when
4     Director McGrath was asked about those two emails.  They are
5     calculated to be handed to the press and to embarrass people
6     who have come and tried to do their best on the stand on the
7     issues Your Honor has to decide.  This is something that's
8     intended to embarrass Dean Fitzsimmons.
9                 The fact that someone writes, "I'm stunned", no
10    matter which interpretation you take, he was stunned.  The
11    idea that he's trying to blow it off on a Friday night, which
12    is exactly what happens, is not something that should come
13    into the record both as a matter of relevance but also as a
14    403 issue.
15                MR. HUGHES:  I think you've heard me on the
16    relevance, and I won't belabor the point.  We don't have a
17    plan to provide this to the press if it comes in.  We got it
18    from a FOIA request.  Anyone can go ask for it and get it.
19                THE COURT:  If they have a year and a half to
20    spare.
21                MR. HUGHES:  Now they've coughed it up, so they've
22    got to keep coughing it up if asked.  You've heard me on the
23    relevance.  I do think it goes to an important issue in the
24    case.  So that's what I have to say on the admissibility of
25    the evidence.  I'd offer them at this point into evidence.

1      THE COURT: I, at this point, am going to keep them
2 out. I think that his response is of extremely limited
3 relevance. And that the prejudice, whatever relevance there
4 is, is outweighed by the prejudice.
5      The only circumstance under which I would revisit
6 it is if Mr. Fitzsimmons ends up on the stand again. Even if
7 that happens, this part of it is not going to be presented in
8 open court in any way.
9      I think that the relevance is so tangential that
10 it's not worth admitting, it's not worth calling him back
11 for. But if he happens to come back on the other issue, I
12 may consider it again.
13      MR. HUGHES: Then I'm going to save my further
14 offer of proof on what I would do if I were able to confront
15 him about it if in case that happens because I don't want to
16 tell them all my secrets. So we'll reserve on that.
17      And then the other thing is I want to make these
18 part of the record in the sense of an offer of proof, but I'm
19 trying to think of a way I can do that without creating the
20 publicity concern that you have. It's very hard for us to
21 seal, to agree to sealing a document that, quite frankly, we
22 could do anything we want with, which we haven't done and
23 don't have a plan to do, but you understand the position
24 we're in on that issue.
25      THE COURT: We can kick the can down the road on

```
 1   this.  Let me just clarify.  In terms of relevance I think
 2   that it is not relevant because what the Dean responds is
 3   wholly ambiguous, and the passage of time, and the fact that
 4   Mr. Hibino is not testifying.  Why don't you call him?  Where
 5   is he?
 6            MR. HUGHES:  I don't know.  Again all we think is
 7   relevant is the Dean's reaction to the joke.  That's what's
 8   relevant.  I don't think Mr. Hibino has anything to add to
 9   that.
10            THE COURT:  I don't see much relevance to it for
11   the reasons that Mr. Lee gives but honestly because the
12   statement itself is so ambiguous, the passage of time, and
13   the fact that he's dealing with a regulator who he may feel
14   like he has to kind of jolly along.  So I see it as having
15   very limited relevance.
16            I'm the decisionmaker here, so I don't have to
17   speculate what relevance a jury might assign to it.  I'm just
18   telling you that I see it to be irrelevant on that basis.
19   I'm going to keep it out.
20            MR. HUGHES:  It was never going to be part of my
21   closing.  I can assure you that.
22            THE COURT:  I'll hold onto these.
23            MR. HUGHES:  That's fine.  You can hold onto those.
24   We've got copies of those.  Now that we've concluded the
25   discussion of that issue, I think we're done for the day, I
```